JUDGE SCHEINDLIN

12 CIV 7948

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT PORZIO, Individually and On Behalf of All Others Similarly Situated, | No. _____ |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| v. | **JURY TRIAL DEMANDED** |
| OVERSEAS SHIPHOLDING GROUP, INC., MORTEN ARNTZEN, and MYLES R. ITKIN, | |
| Defendants. | |

RECEIVED
OCT 25 2012
U.S.D.C. S.D.N.Y.
CASHIERS

## I.    INTRODUCTION

1.      Plaintiff Robert Porzio ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters, based on the investigation conducted by and through Plaintiff's counsel, which included, among other things, a review of Defendants' public documents, conference calls and announcements issued by Overseas Shipholding Group, Inc. ("OSG" or the "Company"), wire and press releases published by and regarding the Company, and advisories about the Company, and other information readily obtainable in the public domain.

## II.    NATURE OF THE ACTION

2.      This is a federal securities class action on behalf of all investors who purchased or otherwise acquired OSG's common stock between April 28, 2008 and October 22, 2012 inclusive (the "Class" and "Class Period," respectively) alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC").

1

3.      OSG is a major international shipping company incorporated in Delaware and headquartered in New York City.  It is focused on global energy transportation markets.  The Company has leading positions in the crude oil tanker, product carrier and U.S. Flag markets and is a recent entrant in the liquefied natural gas ("LNG") business.

4.      On October 3, 2012, OSG filed a Form 8-K with the Securities and Exchange Commission ("SEC") that issues relating to its treatment of a tax issue had come to the Company's attention and that "[u]pon completion of the review process, which involves consultation with its professional advisors, the Company will make any additional disclosures deemed appropriate."

5.      On this news, the Company's share price fell from a close of $7.08 on October 2, 2012 to close at $6.82 on October 3, 2012.

6.      Then, on October 22, 2012, OSG filed with the SEC a Form 8-K, containing an entry entitled *Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review*.

7.      In the October 22, 2012 Form 8-K, OSG announced "***that the Company's previously issued financial statements for at least the three years ended December 31, 2011 and associated interim periods, and for the fiscal quarters ended March 31 and June 30, 2012, should no longer be relied upon***."  This determination was made by the Audit Committee of the Board of Directors of OSG after an analysis of the tax treatment and implications of various domiciliary and international operations tax code procedures and was made at the recommendation of Company management.  OSG also announced that "the Company is evaluating its strategic options, including the potential voluntary filing of a petition for relief to reorganize under Chapter 11 of the Bankruptcy Code."

2

8.      Though OSG has announced that the financial review is not yet complete, the Company's Form 8-K announced that OSG already is considering the nature and amount of the financial restatement that may be required to rectify its previously issued, materially misleading, financial statements.

9.      Based on the October 22, 2012 announcements, OSG's stock price plummeted over 62 percent from a closing price of $3.25 on October 19, 2012 to close at $1.23 per share on October 22, 2012.  Trading in the Company's securities reached its heaviest volume in *at least five years* on October 22, 2012.

10.     Based on the information provided by OSG on October 22, 2012, OSG's previously reported financial statements for at least the prior three years ended December 31, 2011 and associated interim periods, and for the fiscal quarters ended March 31 and June 30, 2012 will require restatement in order to properly account for tax issues and other false and misleading statements made during the Class Period.  As a result, Plaintiff and other members of the Class purchased OSG common stock at artificially inflated prices and thereby suffered significant losses and damages.

### III.    JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

13.    Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

14.    In connection with the acts alleged herein, Defendants, directly or indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## IV.    **PARTIES**

15.    Plaintiff Robert Porzio, as set forth in the accompanying certification incorporated by reference herein, purchased OSG common stock during the Class Period and has been damaged thereby.

16.    Defendant OSG is a Delaware corporation with its principle place of business at 666 Third Avenue, New York, NY, 10017.  OSG is a major international shipping company focused on global energy transportation markets.  The Company has leading positions in the crude oil tanker, product carrier and U.S. Flag markets and is a recent entrant in the LNG business.

17.    Defendant Morten Arntzen ("Arntzen") has been Chief Executive Officer ("CEO") and President of OSG since his appointment in January 2004.  Arntzen signed the Sarbanes Oxley ("SOX") certifications during the Class Period attesting that OSG's financial statements were accurate and that its systems of internal controls were adequate.

18.    Defendant Myles R. Itkin, Jr. ("Itkin") has been Chief Financial Officer and Treasurer of OSG since 1995 and was promoted to Executive Vice President in 2006.  Itkin is responsible for the Company's overall financial and capital allocation strategy as well as treasury, financial planning, tax, internal audit, investor relations and investments.  Itkin signed

4

the SOX certifications during the Class Period attesting that OSG's financial statements were accurate and that its systems of internal controls were adequate.

19.     Defendants Arntzen and Itkin are referred to as the Individual Defendants.

20.     Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about OSG's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

21.     It is appropriate to treat Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above.  Each of the Individual Defendants, by virtue of their high-level positions with the Company, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein.  Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

22.     As officers and directors of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was and is traded on the New York Stock Exchange ("NYSE"), and governed by the provisions of the federal securities laws, Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information.   Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

23.     Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.   Accordingly, each of the Defendants is responsible for the accuracy of the public reports and releases detailed herein and are therefore primarily liable for the representations contained therein.

24.     Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of OSG common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme:  (i) deceived the investing public regarding OSG's business, operations,

management and the intrinsic value of its common stock and (ii) caused Plaintiff and other shareholders to purchase OSG common stock at artificially inflated prices.

## V.      CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of all those who purchased or otherwise acquired the common stock of OSG during the Class Period and who were damaged thereby.  Excluded from the Class are Defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

26.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, OSG common shares were actively traded on the NYSE exchange.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by OSG or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

29.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of OSG; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of those damages.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## VI.     SUBSTANTIVE ALLEGATIONS

### A.     False and Misleading Statements

31.     The Class Period in this action begins on April 28, 2008.  On that day, OSG issued a press release entitled "Overseas Shipholding Group Reports First Quarter 2008 Results".  Within the April 28 release, the Company announced in relevant part that:

- TCE revenues were $375.8 million, a 45% increase from $259.2 million quarter-over-quarter[1];
- Net income was $112.4 million, a 33% increase from $84.7 million quarter-over-quarter;
- Diluted EPS was $3.60 per share, a 67% increase from $2.16 quarter-over-quarter;
- Shares repurchased during the first quarter totaled 400,000; and
- Bond redemption announced to repurchase all $176,115,000 outstanding of 8.25% Senior Notes due March 2013.

32.     The April 28, 2008 press release also contained the following false and misleading statements from Defendant Arntzen:

> As anticipated, superior first quarter results reflect the strength of the crude oil tanker market and the strong performance of our product tanker business. We are building long-term sustainable value for shareholders by taking a portfolio approach to running this business. While we have continued to strengthen and grow our spot-oriented crude transportation business, we have diversified our fleet, built a substantial book of locked-in future revenue and expanded in businesses providing for earnings and cash flow stability.
>
> It is based on OSG's quality, scalable platform that we are able to expand into new, higher margin businesses and win projects such as the U.S. Gulf shuttle tanker business and the FSO charter for one of our ULCCs. Embarking on my fifth year at OSG, *I've never felt better about how the business looks than I do today*. Looking at what we've achieved and seeing the commercial and technical platform we have in place to support our growth plans makes me confident about what OSG can achieve going forward and the results we can deliver for our shareholders.

Emphasis added.

33.     On May 1, 2008, OSG filed a Form 10-Q with the SEC reporting its first quarter 2008 financial results, which repeated the same revenue numbers as set forth in the April 28, 2008 press release. The Company's May 1, 2008 Form 10-Q, certified by Defendants Arntzen and Itkin, falsely stated:

---

[1] TCE stands for Time Charter Equivalent, a standard shipping industry performance measure primarily used for comparing period-to-period changes in a shipping company's performance despite changes in the mix of charter types under which the vessels may be employed between the periods. TCE revenue is a non-GAAP measure.

**CONTROL AND PROCEDURES**.

As of the end of the period covered by this Quarterly Report on Form 10-Q, an evaluation was performed under the supervision and with the participation of the Company's management, including the Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), of the effectiveness of the design and operation of the Company's disclosure controls and procedures pursuant to Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act"). Based on that evaluation, the Company's management, including the CEO and CFO, concluded that the Company's current disclosure controls and procedures are effective to ensure that information required to be disclosed by the Company in the reports the Company files or submits under the Exchange Act is (i) recorded, processed, summarized and reported, within the time periods specified in the Securities and Exchange Commission's rules and forms and (ii) accumulated and communicated to the Company's management, including the CEO and CFO, as appropriate to allow timely decisions regarding required disclosure.  There have been no material changes in the Company's internal controls or in other factors that could materially affect these controls during the period covered by this Quarterly Report.

34.    The Company's May 1, 2008 10-Q also contained, attached to the filing as Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and Itkin.  These certifications stated:

> 1.    I have reviewed this quarterly report on Form 10-Q of Overseas Shipholding Group, Inc.
>
> 2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> 3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the Registrant as of, and for, the periods presented in this report;
>
> 4.    The Registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures

(as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the Registrant and we have:

    a.    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the Registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

    b.    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c.    Evaluated the effectiveness of the Registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d.    Disclosed in this report any change in the Registrant's internal control over financial reporting that occurred during the Registrant's most recent fiscal quarter that has materially affected, or is reasonably likely to materially affect, the Registrant's internal control over financial reporting; and

5.    The Registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the Registrant's auditors and the audit committee of Registrant's board of directors (or persons performing the equivalent functions):

    a.    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the Registrant's ability to record, process, summarize and report financial information; and

         b.      Any fraud, whether or not material, that involves management or other employees who have a significant role in the Registrant's internal control over financial reporting.

35.     On July 29, 2008, OSG issued a press release entitled "Overseas Shipholding Group Reports Second Quarter 2008 Results". Within the July 29 release, the Company announced in relevant part that:

- TCE revenues increased more than 40% to $386.1 million from $274.2 million quarter-over-quarter;
- Net income increased 10% to $86.9 million from $79.0 million quarter-over-quarter;
- Diluted EPS was $2.81 per share, up 23% from $2.28 quarter-over-quarter;
- Diluted EPS was $2.81 per share, up 23% from $2.28 quarter-over-quarter;
- Diluted EPS in the current quarter included a $0.76 per share gain on sale of vessels, a $0.20 per share expense related to a bond redemption in the period and a $0.92 per share expense related to unrealized losses on freight derivative positions;
- Annual dividend raised 40% to $1.75 per share;
- New $250 million stock repurchase program authorized by Board; 23.8% stock repurchased since June 2006; and
- Two newbuild VLCCs purchased.

36.     Additionally, the July 29, 2008 press release contained the following false and misleading statements from Defendant Arntzen:

The crude oil tanker market saw unprecedented levels of strength in the first half of 2008, primarily due to OPEC production increases. This resulted in a significant pick-up in long haul movements at the same time as single hull discrimination increased, creating a strong freight rate environment. On the product tanker side, rates were lifted by a surge in diesel movements worldwide.

Market conditions continue to create a very strong outlook for our crude tankers and the prospects for our other two main businesses are equally compelling. Our investments in the U.S. Flag segment and its 14-vessel newbuild program will nearly double the unit's revenues in three years. In the next 12 months our International Flag Product Carrier business will transform as 13 bareboat chartered-in, non-double hull ships are replaced with modern double hull ships having much greater earnings capacity and the LR1 fleet expands. Our world-class technical and commercial platform, fleet portfolio and ample opportunities to further scale our business gives me and the OSG management team a lot to be excited about.

12

37.    On August 1, 2008, OSG filed a Form 10-Q with the SEC reporting its second quarter 2008 financial results, which repeated the same revenue numbers as set forth in the July 29, 2008 press release.  The Company's Form 10-Q also contained substantially similar Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and Itkin substantially similar to the certifications referenced in ¶34, supra.

38.    On October 30, 2008, OSG issued a press release entitled "Overseas Shipholding Group Reports Record Third Quarter 2008 Results".   Within the October 30 release, the Company announced in relevant part that:

- TCE revenues increased 71% to $434.7 million from $254.0 million quarter-over-quarter;
- Net income increased 7-fold to $197.8 million from $26.6 million quarter-over-quarter;
- Diluted EPS increased 8-fold to $6.69 per share, up from $0.83 quarter-over-quarter;
- Diluted EPS in the quarter included a $1.45 per share gain on vessel sales, net of asset impairment, and $0.77 per share related to the positive change in the mark-to-market balance of unrealized derivative positions; and
- 2.0 million shares repurchased during the quarter; total shares outstanding at the end of the period were 28.3 million.

39.    Additionally, the October 30, 2008 press release contained the following false and misleading statements from Defendant Arntzen:

> It is with pride that we report record third quarter results - the best third quarter in the company's history. When we outlined our balanced growth strategy to our shareholders more than four years ago, we stated that we wanted to build a company that would outperform its peers in both weak and strong markets and that could handle the unexpected world events that shape the shipping industry.
>
> We can face the challenges and opportunities the financial crisis throws our way in the coming year with a strong balance sheet, abundant liquidity, young fleet, heavily back-loaded liability structure, excellent banking relationships and a strong book of locked-in and hedged revenue for 2009. We have no need to raise new debt today so we can focus instead on running our business well and responding to opportunities that come up.

40.    On November 1, 2008 OSG filed a Form 10-Q with the SEC reporting its third quarter 2008 financial results, which repeated the same revenue numbers as set forth in the October 30, 2008 press release. The Company's Form 10-Q also contained substantially similar Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and Itkin substantially similar to the certifications referenced in ¶34, supra.

41.    On March 2, 2009, OSG issued a press release entitled "Overseas Shipholding Group Reports Fourth Quarter and Fiscal 2008 Results". Within the March 2 release, the Company announced in relevant part that:

- Full year 2008 TCE revenues1 of $1,545 million increased 49% year-over-year, the highest TCE revenues recorded in the Company's history;
- Full year 2008 net income was $317.7 million or $10.65 per diluted share, compared with $211.3 million, or $6.16 per share in the same period of 2007;
- Fiscal 2008 net income and diluted EPS were reduced by a goodwill impairment charge on the Company's U.S. Flag unit and asset write-down charges of $168.0 million or $5.04 per diluted share, on four ATBs under construction at Bender Shipbuilding & Repair Co., Inc. (Bender), among other items;
- Fourth quarter TCE revenues of $348.7 million were up 39% from $251.8 million quarter-over-quarter;
- Fourth quarter net loss, including special items, was $79.5 million, or $2.89 per diluted share compared with net income of $21.0 million, or $0.67 per diluted share in the same period of 2007;
- Regular quarterly dividend of $0.4375 per share announced February 11, 2009; and
- 1.6 million shares repurchased during the quarter at an average price of $36.26 per share.

42.    Additionally, the March 2, 2009 press release contained the following false and misleading statements from Defendant Arntzen:

OSG had strong financial performance in the crude and products units in 2008, along with the best commercial and technical fleet performance since I joined the Company five years ago. The extraordinary volatility and unpredictability of the year reinforced our long-held view that balanced growth, active asset

14

management, strong in-house technical and commercial management capabilities, and a tenacious focus on the balance sheet are critical to long-term success. As we face headwinds in the coming year, cash flow visibility, financial flexibility, an undiminished commitment to quality and broad cost management efforts will further differentiate OSG from our peers.

43.    On March 2, 2009 OSG filed a Form 10-K with the SEC reporting its fourth quarter and fiscal 2008 financial results, which repeated the same revenue numbers as set forth in the March 2, 2009 press release.  The Company's Form 10-K also contained substantially similar Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and Itkin substantially similar to the certifications referenced in ¶34, supra.

44.    On May 4, 2009, OSG issued a press release entitled "Overseas Shipholding Group Reports First Quarter 2009 Results".  Within the May 4 release, the Company announced in relevant part that:

- First quarter TCE revenues were $292.8 million, down from $375.8 million in the first quarter of 2008, driven by VLCC spot TCE rates of $47,228 per day compared with $98,588 per day;
- Net income attributable to the Company (Earnings)1 was up 8% to $121.8 million from $112.4 million in the same quarter last year;
- Diluted EPS increased 26% to $4.53 per share from $3.60 per share;
- Diluted EPS in the current quarter included $4.83 per share gain on sale of vessels offset by $1.34 per share shipyard and contract termination costs;
- G&A expenses decreased 27% to $27.3 million due to Companywide cost control efforts;
- Regular quarterly dividend of $0.4375 per share announced April 23, 2009; and
- With cash balances of $588 million, $278 million in fixed revenue remaining in 2009 and liquidity of $1.7 billion, the Company is well-positioned to weather near-term uncertain freight rate markets and expects to end 2009 in a similar liquidity position as 2008.

45.    Additionally, the May 4, 2009 press release contained the following false and misleading statements from Defendant Arntzen:

Our first quarter financial performance was solid. Earnings were up quarter-over-quarter, cash balances increased by $244 million to $588 million from year end and EBITDA was at similar levels to last year's first quarter. In these challenging times OSG's solid financial position and strong operating platform enable us to focus on running the business well day-to-day and position us to exploit opportunities that will arise in these turbulent markets.

46.    On May 6, 2009 OSG filed a Form 10-Q with the SEC reporting its first quarter 2009 financial results, which repeated the same revenue numbers as set forth in the May 4, 2009 press release. The Company's Form 10-Q also contained substantially similar Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and Itkin substantially similar to the certifications referenced in ¶34, supra.

47.    On August 5, 2009, OSG issued a press release entitled "Overseas Shipholding Group Reports Second Quarter 2009 Results". Within the August 5 release, the Company announced in relevant part that:

- Second quarter TCE revenues were $248.4 million, down from $386.1 million, driven predominantly by VLCC spot TCE rates of $32,020 per day compared with $98,747 per day in the second quarter of 2008
- Fifty-two percent of quarterly TCE revenues were generated from fixed earnings and included synthetic time charters on VLCCs, which earned an average TCE rate of $45,864 per day
- Net loss attributable to the Company was $8.8 million, or $0.33 per diluted share, compared with net income attributable to the Company of $86.9 million, or $2.81 per diluted share in the same period a year ago
- Continued cost cutting efforts resulted in 16% quarter-over-quarter decline in G&A expense
- OSG's product carrier fleet will be fully double hull following the redelivery of one non-double hull MR product carrier in early August
- Regular quarterly dividend of $0.4375 per share announced June 9, 2009
- Cash generated from operations totaled $184.6 million in the first half of 2009
- With cash and cash equivalents of $571.4 million, remaining 2009 fixed revenue of $156 million and liquidity of $1.8 billion, the Company is well-positioned to weather near-term uncertainty in freight rates.

48.     Additionally, the August 5, 2009 press release contained the following false and

misleading statements from Defendant Arntzen:

> As we expected, a convergence of events caused tanker markets to deteriorate in
> the first half of 2009. The global economic contraction led to a sharp decline in
> world demand for oil, notably in OECD countries, which in turn resulted in
> significant OPEC production cuts. This situation was exacerbated by an increase
> in vessel deliveries across our core segments. We expect the trend toward an
> oversupplied vessel market to moderate as very tight ship finance markets and the
> weakening financial condition of less well-capitalized ship owners and shipyards
> result in a contracting tanker orderbook. The single hull phase-out over the next
> eighteen months will further benefit the economics of the global tanker trading
> fleet.
>
> For the remainder of 2009, we remain focused on controlling costs and managing
> projects that can deliver attractive returns in both the short and long-term.  The
> core of our long-term strategy (conservative financial management and balanced
> growth (remains intact, and we have ample liquidity to manage the turmoil ahead
> and take advantage of opportunities as they arise.

49.     On August 10, 2009 OSG filed a Form 10-Q with the SEC reporting its second

quarter 2009 financial results, which repeated the same revenue numbers as set forth in the

August 5, 2009 press release.  The Company's Form 10-Q also contained substantially similar

Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as

Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and

Itkin substantially similar to the certifications referenced in ¶34, supra.

50.     On November 2, 2009, OSG issued a press release entitled "Overseas Shipholding

Group Reports Third Quarter and Year-To-Date 2009 Results".  Within the November 2 release,

the Company announced in relevant part that:

- Third quarter TCE revenues were $207.3 million, down from $434.7
  million in the year ago period driven by declines in spot rates across all
  international flag segments
- Net loss attributable to the Company was $19.6 million or $0.73 per diluted
  share compared with net income attributable to the Company of $197.8
  million, or $6.69 per diluted share in the same period a year ago

- Cost cutting efforts and the redelivery of 13 vessels quarter-over-quarter resulted in significant reductions in G&A and vessel expenses, down 13% and 16%, respectively
- Cash and short-term deposit balances increased, liquidity increased and commitments on construction contracts decreased, all compared with June 30, 2009 levels
- New $389 million secured financing facility to finance/refinance five vessels constructed in China

51.     Additionally, the November 2, 2009 press release contained the following false

and misleading statements from Defendant Arntzen:

> As expected, we faced very tough market conditions during the third quarter. Year-over-year contractions in global oil demand and oil production, notably by Saudi Arabia, were exacerbated by continued poor refining environments. New tanker deliveries year-to-date increased vessel supply, which was partially offset by slippage in the tanker orderbook and by use of tankers for storage of both crude oil and refined petroleum products. These elements combined to drive shipping rates down significantly, at times into negative territory. While our quarterly financial results were disappointing on an absolute basis, our relative commercial performance was positive as we again outperformed average rates in the period. We continue to stay focused on tightening our belts with significant quarter-over-quarter reductions in G&A, charter-hire and vessel expenses.
>
> Although the near-term tanker market looks challenging, our diversified portfolio of modern assets, book of term business, fortress balance sheet and conservative financial management ensures that we will weather this storm and be better positioned than our competitors to benefit from a rebound in the tanker markets.

52.     On November 6, 2009 OSG filed a Form 10-Q with the SEC reporting its third

quarter 2009 financial results, which repeated the same revenue numbers as set forth in the

November 2, 2009 press release.   The Company's Form 10-Q also contained substantially

similar Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as

Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and

Itkin substantially similar to the certifications referenced in ¶34, supra.

53.     On March 1, 2010, OSG issued a press release entitled "Fourth Quarter and Fiscal

2009 Results".  Within the March 1 release, the Company announced in relevant part that:

- Fiscal year 2009 TCE revenues of $952.6 million declined 38% from 2008 driven by declines in spot rates across all of the Company's vessel classes;
- Fiscal year 2009 Earnings were $70.2 million, or $2.61 per diluted share, compared with Earnings of $317.7 million, or $10.65 per diluted share, a year ago;
- Fourth quarter TCE revenues were $204.1 million, down 41% from $348.7 million in the year ago period;
- Fourth quarter Loss was $23.2 million, or $0.86 per diluted share, compared with a Loss of $79.5 million, or $2.89 per diluted share in the same period a year ago;
- Cash and short-term investments totaled $524.7 million; and
- Tender for OSG America L.P. completed.

54.     Additionally, the March 1, 2010 press release contained the following false and misleading statements from Defendant Arntzen:

> 2009 was one of the most difficult tanker markets of the last 20 years. The slowdown in worldwide economic activity that began in 2008 continued throughout 2009. As a result, global oil demand was down, notably in North America, and refinery utilization levels were painfully low in Europe, Japan and the U.S. This combined with substantial OPEC production cuts and a 6% increase in the global tanker fleet, combined to produce a very tough rate environment.
>
> While market conditions were tough last year, the commercial, financial and operational platforms of OSG performed well and enabled OSG to enter 2010 in solid shape. Indeed, we commenced the year with a fully financed newbuilding program, a modern fleet, a cash and short-term investments position of $525 million and liquidity of approximately $1.6 billion. Shareholders, creditors, customers and employees can count on us to continue prudent financial discipline and to maintain our long standing commitment to operate the safest, cleanest and most reliable fleet in the industry.

55.     On March 1, 2010, OSG filed a Form 10-K with the SEC reporting its fourth quarter and fiscal 2009 financial results, which repeated the same revenue numbers as set forth in the March 1, 2010 press release. The Company's Form 10-K also contained substantially similar Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and Itkin substantially similar to the certifications referenced in ¶34, supra.

56.     On May 4, 2010, OSG issued a press release entitled "Overseas Shipholding Group Reports First Quarter 2010 Results". Within the May 4 release, the Company announced in relevant part that:

- First quarter TCE revenues were $229.9 million, down 21% from $292.8 million in the year ago period;
- First quarter Loss was $9.4 million, or $0.34 per diluted share and included Special Items that increased the Loss by $6.8 million, or $0.25 per diluted share;
- Adjusted for Special Items, first quarter 2010 Loss was $2.5 million, or $0.09 per diluted share;
- Debt and equity market transactions during the quarter strengthened the Company's capital structure and generated nearly $450 million, net of expenses;
- The Company repaid $400 million on its unsecured credit facility; and OSG 350 and Overseas Cascade delivered and commenced long-term contracts.

57.     Additionally, the May 4, 2010 press release contained the following false and misleading statements from Defendant Arntzen:

Continued weak spot rates in all our core markets, except for VLCCs, resulted in a disappointing quarter. On the positive side, we raised nearly $450 million in new capital to enhance our liquidity and strengthen the balance sheet, continued progress on cost control efforts on shore and at sea, and completed three of our more challenging newbuilding/conversion projects.

I believe the scale of OSG, with leading positions in the Crude, Products and U.S. Flag markets, built-in growth from our 17-ship newbuild program, combined with our consistent, conservative financial strategy, differentiates us from our direct peers. As a consequence, I feel more comfortable about our relative competitive position in our three main operating segments than at any time since I joined the Company. OSG is well-positioned to benefit from the recovery in the world economy and oil demand that has begun.

58.     On May 7, 2010 OSG filed a Form 10-Q with the SEC reporting its first quarter 2010 financial results, which repeated the same revenue numbers as set forth in the May 4, 2010 press release. The Company's Form 10-Q also contained substantially similar Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as Exhibits 31.1 and

31.2, respectively, SOX certifications executed by Defendants Arntzen and Itkin substantially similar to the certifications referenced in ¶34, supra.

59.     On August 3, 2010, OSG issued a press release entitled "Overseas Shipholding Group Reports Second Quarter 2010 Results".   Within the August 3 release, the Company announced in relevant part that:

- Second quarter 2010 TCE revenues were $231.7 million, down 7% from $248.4 million in the year ago period;
- Second quarter Loss was $37.9 million, or $1.26 per diluted share and included Special Items that increased the Loss by $27.8 million, or $0.92 per diluted share;
- Adjusted for Special Items, second quarter Loss was $10.1 million, or $0.34 per diluted share;
- Special Items included an impairment charge of $25.2 million on three single hull U.S. Flag vessels, a U.S. Flag ATB and two single hull International Flag lightering vessels;
- Two recent transactions increased the amount of the Company's unencumbered assets and lowered the net book value of the Company's vessels pledged as collateral to 32.5%; and
- Vessel deliveries during the quarter included Overseas Martinez, Overseas Santorini, Aegean Wave and Adriatic Wave.

60.     Additionally, the August 3, 2010 press release contained the following false and misleading statements from Defendant Arntzen:

While the second quarter rate environment was mixed, the markets we serve are showing signs of recovery.  Our products business is seeing improving rates as the use of product carriers as floating storage has fallen 75% and refinery utilization in the United States has increased to 90% in some areas.  For the same reasons, our spot ships in the U.S. Flag market are spending less time waiting for cargoes.  In general, despite current market weakness, our crude fleet continues to earn in excess of market expectations and FFA levels. I am confident that the improving market conditions we are seeing, combined with our continued cost vigilance, will lead to improving results from our balanced growth model.

In taking the non-cash impairment charge this quarter we are putting behind us the difficulty of employing single hull assets in our markets and recognizing the profound impact the U.S. Gulf of Mexico oil spill is having and will have on our industry and the tanker markets in particular.  Over the last five years, we have made significant investments through a companywide commitment to strive for best-in-class technical performance from our fleet.  We believe a combination of

21

more stringent U.S. regulations and oil industry vetting requirements are likely to result from the oil spill, elevating the importance of quality operations and favoring companies committed to delivering this.

61.     On August 6, 2010 OSG filed a Form 10-Q with the SEC reporting its second quarter 2010 financial results, which repeated the same revenue numbers as set forth in the August 3, 2010 press release.  The Company's Form 10-Q also contained substantially similar Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and Itkin substantially similar to the certifications referenced in ¶34, supra.

62.     On November 2, 2010, OSG issued a press release entitled "Overseas Shipholding Group Reports Third Quarter 2010 Results".  Within the November 2 release, the Company announced in relevant part that:

- Third quarter 2010 TCE revenues were $208.6 million, up marginally from $207.3 million in the year ago period;
- Third quarter Loss was $31.8 million, or $1.06 per diluted share compared with a loss of $19.6 million, or $0.73 per diluted share;
- Adjusted for special items, third quarter Loss was $26.8 million, or $0.89 per diluted share.  Special items included a loss on vessel sales and other assets and the Company's share of the mark-to-market loss on certain interest rate swaps in its FSO joint venture;
- The bareboat charter on an International Flag MR was cancelled and the vessel purchased;
- Two LR1s scheduled for delivery in 2011 were swapped for two Aframaxes delivering in 2013;
- The FSO Africa commenced a three-year service contract during the quarter;
- Overseas Kythnos and Overseas Anacortes delivered during the quarter; and
- Regular quarterly dividend of $0.4375 per share announced September 21, 2010.

63.     Additionally, the November 2, 2010 press release contained the following false and misleading statements from Defendant Arntzen:

Our financial results reflect the continuing challenges facing the global tanker industry in 2010. Although world oil demand is recovering from the trough of 2009, high levels of vessel deliveries, sluggish ton-mile growth and modest North America oil demand have negatively impacted our results. In this difficult spot market, we are focused on strengthening our businesses and taking all measures within our control that enhance our long-term prospects. We continue to improve and execute our newbuilding and conversion program and took delivery of Overseas Anacortes which began a three-year charter to Tesoro at an attractive level. We completed another round of restructuring our Products newbuilding contracts resulting in a win for OSG. The FSO Africa commenced a three-year service contract, which will significantly improve the results on this vessel in the fourth quarter and beyond. I am pleased that we continue to control expenses both ashore and at sea without diminishing the quality of service to our customers or the technical performance of our fleet.

The pace of the global economic recovery remains uncertain, thus continued financial discipline is critical. I am confident that our market-leading commercial and technical platforms in Crude, Products and U.S. Flag, combined with our strong balance sheet and liquidity position, will enable OSG to emerge at the head of the pack when our markets recover.

64.     On November 5, 2010 OSG filed a Form 10-Q with the SEC reporting its third quarter 2010 financial results, which repeated the same revenue numbers as set forth in the November 2, 2010 press release. The Company's Form 10-Q also contained substantially similar Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and Itkin substantially similar to the certifications referenced in ¶34, supra.

65.     On February 28, 2011, OSG issued a press release entitled "Overseas Shipholding Group Reports Fourth Quarter and Fiscal 2010 Results". Within the February 28 release, the Company announced in relevant part that:

- Fiscal year 2010 TCE revenues of $853.3 million declined 10% from 2009, driven by weak spot market rates, particularly in the latter half of the year;
- Fiscal year 2010 Loss was $134.2 million, or $4.55 per diluted share, compared with Earnings of $70.2 million, or $2.61 per diluted share in fiscal year 2009;

- Fourth quarter TCE revenues were $183.2 million, down 10% from $204.1 million in the year ago period, primarily driven by increased spot exposure and lower spot rates for VLCCs;
- Fourth quarter Loss was $55.3 million, or $1.83 per diluted share, compared with a Loss of $23.2 million, or $0.86 per diluted share in the same period a year ago;
- Adjusted for special items, fourth quarter Loss was $59.0 million, or $1.96 per diluted share. Special items included a gain on vessel sales and the Company's share of the mark-to-market gain on certain interest rate swaps in its FSO joint venture;
- Liquidity totaled approximately $1.3 billion, including cash and short-term investments of $274 million;
- Overseas Chinook, which is being converted to a shuttle tanker, and Carina (MR) delivered during the quarter; and
- Regular quarterly dividend of $0.4375 per share declared on February 2, 2011.

66.     Additionally, the February 28, 2011 press release contained the following false and misleading statements from Defendant Arntzen:

> 2010 was clearly a disappointing year financially as a result of very depressed rates in all tanker segments in the last two quarters of the year. Nevertheless, we made substantial progress on a number of fronts that will benefit the Company in 2011 and beyond. We made further strides forward in our G&A reduction campaign; we kept ship operating costs in check; we put the two state-of-the-art FSOs we have in joint venture with Euronav to work in Qatar on long-term charters; we equipped our U.S. Flag business unit with the assets, contracts and cost base to return to profitability; and we continued to enhance our already strong commercial platforms.
>
> We will continue to focus on internal actions that can enhance our competitive position and improve our margins in 2011. With critical mass in our three main businesses, Crude, International Products and U.S. Flag, in 2011 we will concentrate on flawless execution of our balanced growth strategy.

67.     On March 1, 2011, OSG filed a Form 10-K with the SEC reporting its fourth quarter and fiscal 2010 financial results, which repeated the same revenue numbers as set forth in the February 28, 2010 press release. The Company's Form 10-K also contained substantially similar Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as

Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and

Itkin substantially similar to the certifications referenced in ¶34, supra.

68.     On May 3, 2011, OSG issued a press release entitled "Overseas Shipholding

Group Reports First Quarter 2011 Results". Within the May 3 release, the Company announced

in relevant part that:

- First quarter TCE revenues were $206.6 million, a reduction of $23.3 million, or 10%, from $229.9 million in the prior year period, primarily driven by increased spot exposure and lower spot rates for most of the Company's international vessel classes;
- First quarter Loss was $34.6 million, or $1.15 per diluted share, compared with a Loss of $9.4 million, or $0.34 per diluted share in the prior year period;
- Liquidity totaled approximately $1.1 billion, including cash and short-term investments of $278 million;
- OSG 351 and Overseas Chinook delivered and are chartered out under long-term contracts; and
- Regular quarterly dividend of $0.4375 per share declared on April 14, 2011.

69.     Additionally, the May 3, 2011 press release contained the following false and

misleading statements from Defendant Arntzen:

> While our markets continue to show weakness, particularly crude freight rates, and our results remain disappointing, we believe our business is moving in the right direction. Our International Products fleet is now booking higher rates than we have seen since early 2009, and we believe the demand and supply outlook in this segment portends a multi-year rebound. Our LNG carriers and FSOs are delivering the earnings and cash flows we expect. Expenses on shore and at sea remain under control. The turnaround in our U.S. Flag fleet has taken hold; our Delaware Bay lightering volumes have picked up nicely and both of our shuttle tankers are on charter to Petrobras. Even though our Crude business will likely remain supply-challenged through the rest of 2011, we expect continued global recovery to increase the call on Middle East OPEC crude, leading to more activity in the second half of 2011 than in the first.

70.     On May 5, 2011 OSG filed a Form 10-Q with the SEC reporting its first quarter

2011 financial results, which repeated the same revenue numbers as set forth in the May 3, 2011

press release. The Company's Form 10-Q also contained substantially similar Control and

Procedures disclosures referenced in ¶33, supra, and, attached to the filing as Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and Itkin substantially similar to the certifications referenced in ¶34, supra.

71.    On August 2, 2011, OSG issued a press release entitled "Overseas Shipholding Group Reports Second Quarter 2011 Results".  Within the August 2 release, the Company announced in relevant part that:

- Second quarter TCE revenues were $207.3 million, a reduction of $24.3 million, or 11%, from $231.7 million in the prior year period, primarily driven by lower average spot rates earned in the Company's international crude classes;
- Second quarter Loss was $37.3 million, or $1.24 per diluted share, compared with a Loss of $37.9 million, or $1.26 per diluted share in the prior year period;
- Adjusted for special items, second quarter Loss was $36.1 million, or $1.20 per diluted share;
- Liquidity totaled approximately $1.0 billion, including cash and short-term investments of $230 million;
- Signed a $900 million unsecured forward start revolving credit agreement, extending OSG's access to committed unsecured revolving credit through the end of 2016;
- OSG 351 and Overseas Tampa delivered and are currently operating on term contracts; and
- Reduced the annual dividend rate to $0.875 per share from $1.75 and declared a quarterly dividend of $0.21875 per share payable on November 22, 2011 to stockholders of record on November 7, 2011.

72.    Additionally, the August 2, 2011 press release contained the following false and misleading statements from Defendant Arntzen:

International flag tanker rates remained under pressure in the second quarter, generating a disappointing quarterly result for OSG.  The closure of Japanese refineries in the aftermath of the March earthquake and tsunami reduced crude imports into Japan as well as activity in the regional products trade, while an unexpectedly high and persistent level of refinery maintenance activity in the Atlantic basin refineries further impacted rates negatively.  The surprise decision by the IEA to release 60 million barrels from global strategic petroleum reserves temporarily took the wind out of the tanker markets and further delayed the recovery in our International markets.  On a positive note, our U.S. Flag business is delivering improved results.

The tanker industry continues to face extremely poor market conditions, exacerbated by events in Japan and Libya and, more recently, by the release of oil from the U.S and European strategic petroleum reserves. Given this environment, the Board has decided to reduce the annual dividend rate to 87.5 cents per year. We believe that reducing the dividend to this level strikes the right balance among our goals of preserving the strength of our balance sheet, investing for long-term growth and returning cash to shareholders, while delivering a payout level that is more appropriate for today's market. OSG has paid a dividend for 150 consecutive quarters, and the Board recognizes the importance of the dividend to our shareholders; however, we believe this is the prudent action to take now to further strengthen our Company for the long-term.

The Company continues to execute well operationally, and we have taken important steps to ensure the ongoing financial strength of our balance sheet, including the successful completion of our forward start facility in late May, pushing back our major refinancing needs to the end of 2016. We continue to reduce G&A even further, control costs at sea and improve the performance of our portfolio of chartered-in International Flag tankers. I am confident that OSG is extremely well positioned to remain one of the strongest-performing companies in the sector, both during a prolonged downturn and throughout the eventual recovery in the shipping market.

73.     On August 5, 2011 OSG filed a Form 10-Q with the SEC reporting its second quarter 2011 financial results, which repeated the same revenue numbers as set forth in the August 2, 2011 press release. The Company's Form 10-Q also contained substantially similar Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and Itkin substantially similar to the certifications referenced in ¶34, supra.

74.     On November 1, 2011, OSG issued a press release entitled "Overseas Shipholding Group Reports Third Quarter 2011 Results". Within the November 1 release, the Company announced in relevant part that:

- Third quarter TCE revenues were $186.2 million, a reduction of $22.4 million, or 11%, from $208.6 million in the prior year period, primarily driven by lower average spot rates earned in the Company's International Crude classes;

- Third quarter Loss was $71.1 million, or $2.35 per diluted share, compared with a Loss of $31.8 million, or $1.06 per diluted share in the prior year period;
- Adjusted for special items, third quarter Loss was $66.5 million, or $2.20 per diluted share; and
- New deliveries in the third quarter included the Overseas Milos, a newbuild MR product carrier, and the Valorous Queen, a time chartered-in chemical carrier.

75. Additionally, the November 1, 2011 press release contained the following false and misleading statements from Defendant Arntzen:

> Our International flag tanker markets deteriorated further in the third quarter as new deliveries outpaced the market's ability to absorb them and our Asian customers continued to substitute shorter-haul Middle East crudes at the expense of West African crudes. Economic and political uncertainty continue to run high across the globe, with European sovereign debt issues and an uncertain fiscal and monetary picture in Washington impacting consumer and business confidence. The potential fallout has prompted analysts to trim their global growth and oil demand forecasts. This has also resulted in much tighter lending markets for the shipping industry. As a result, new tanker orders have fallen dramatically this year and the orderbook is now at its lowest level in six years. This is encouraging, as continued ordering discipline combined with earlier scrapping of vintage double hull tankers will be required to bring about a recovery in our crude transportation markets."

> In the midst of the weakest markets in decades, we remain focused on strengthening the Company on a number of fronts. We continue to control costs at sea and ashore, and are redelivering or renegotiating higher cost charters-in wherever possible. Our joint ventures are now producing a steady stream of earnings and our U.S. Flag unit continues to perform ahead of plan. Our employees remain focused on taking all actions within their power to improve the competitiveness of the Company, while providing safe, clean and reliable service to our customers.

76. On November 4, 2011 OSG filed a Form 10-Q with the SEC reporting its third quarter 2011 financial results, which repeated the same revenue numbers as set forth in the November 1, 2011 press release. The Company's Form 10-Q also contained substantially similar Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as

Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and

Itkin substantially similar to the certifications referenced in ¶34, supra.

77.    On February 28, 2012, OSG issued a press release entitled "Overseas Shipholding

Group Reports Fourth Quarter and Fiscal 2011 Results".   Within the February 28 release, the

Company announced in relevant part that:

- Fiscal year 2011 TCE revenues of $790.2 million declined 7% from 2010, largely as a result of continued weakness in the Crude spot markets;
- Fiscal year 2011 Loss was $192.9 million, or $6.39 per diluted share, compared with a Loss of $134.2 million, or $4.55 per diluted share in 2010;
- Fourth quarter TCE revenues were $190.1 million, a 4% increase from $183.2 million in the year ago period, primarily driven by an increase in revenue days and higher realized TCEs for International Products and U.S. Flag, as partially offset by weakness in Crude rates;
- Fourth quarter Loss was $50.0 million, or $1.65 per diluted share, compared with a Loss of $55.3 million, or $1.83 per diluted share in the prior year quarter;
- Adjusted for special items, fourth quarter Loss was $52.1 million, or $1.72 per diluted share; and
- As previously announced, the Board of Directors has suspended the payment of quarterly dividends until further notice.

78.    Additionally, the February 28, 2012 press release contained the following false

and misleading statements from Defendant Arntzen:

2011 was a challenging year for the global tanker industry and for OSG, primarily because of very depressed spot markets throughout the year and especially the last six months of the year.   Nevertheless, we made progress on a number of fronts that will position us well for the future.   We reduced G&A costs by an additional $17 million in 2011, part of a long-term transformation that has seen G&A costs fall to $83 million in 2011 from $144 million for 2008.   Our U.S. Flag business returned to profitability and is now generating the steady and dependable cash flows we expected from it.   With the delivery of four newbuildings over the last 12 months, our International Products fleet renewal program is now complete, and our fleet of 43 owned and chartered-in product carriers ideally positions us to participate in the cyclical recovery in the Products market that we believe is already underway.   Our LNG and FSO joint ventures performed well and provide a solid source of locked-in earnings for the Company.   And finally, our sea staff delivered another year of safe, dependable, incident-free shipping services."

29

Looking ahead to 2012, we expect rates in our major International markets, including our crude business, to improve somewhat this year, as reflected in our first quarter performance so far. Nevertheless, we will continue to run the Company conservatively. We are actively pursuing a range of near-term initiatives that will improve the financial flexibility of the Company and position us to capitalize on the recovery in our International markets.

79. On February 29, 2012 OSG filed a Form 10-K with the SEC reporting its fourth quarter and fiscal 2011 financial results, which repeated the same revenue numbers as set forth in the February 28, 2012 press release. The Company's Form 10-K also contained substantially similar Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and Itkin substantially similar to the certifications referenced in ¶34, supra.

80. On May 1, 2012, OSG issued a press release entitled "Overseas Shipholding Group Reports First Quarter 2012 Results". Within the May 1 release, the Company announced in relevant part that:

- First quarter 2012 TCE revenues were $214.0 million, a 4% increase from $206.6 million in the prior year quarter;
- First quarter 2012 Loss was $34.8 million, or $1.15 per diluted share, compared with a Loss of $34.6 million, or $1.15 per diluted share in the first quarter of 2011;
- Adjusted for special items, first quarter Loss was $37.0 million, or $1.22 per diluted share;
- First quarter 2012 cash flow from operations was $9.5 million; and
- Cash and short-term investments was $227 million and availability under an unsecured revolving credit facility was $344 million as of March 31, 2012.

81. Additionally, the May 1, 2012 press release contained the following false and misleading statements from Defendant Arntzen:

Rates in our International Flag segments continue to be weak and volatile, but have improved from the last six months of 2011, which we believe was the bottom of the tanker cycle. The first quarter results for our International Products business were negatively impacted by an unseasonably warm winter, while the Crude market continues to struggle with excess supply. We began this quarter

30

with healthier crude rates and a more balanced products market as the driving season in the U.S. approaches.  At the same time, we are getting satisfying contributions from our U.S. Flag, LNG and FSO businesses.

We remain intensely focused on executing a number of actions to strengthen the Company operationally and financially.  These include further expense reduction initiatives on shore, a fleetwide effort to reduce fuel consumption at sea and a number of initiatives to increase liquidity.  In this volatile environment, we will continue our patient approach to acquisitions, charter-in opportunities and newbuilding projects.

82.    On May 7, 2012 OSG filed a Form 10-Q with the SEC reporting its first quarter 2012 financial results, which repeated the same revenue numbers as set forth in the May 1, 2012 press release.  The Company's Form 10-Q also contained substantially similar Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and Itkin substantially similar to the certifications referenced in ¶34, supra.

83.    On August 1, 2012, OSG issued a press release entitled "Overseas Shipholding Group Reports Second Quarter 2012 Results".  Within the August 1 release, the Company announced in relevant part that:

- Second quarter 2012 TCE revenues were $210.0 million, a 1% increase from $207.3 million in the prior year quarter;
- Second quarter 2012 Loss was $55.3 million, or $1.83 per diluted share, compared with a Loss of $37.3 million, or $1.24 per diluted share in the second quarter of 2011;
- Adjusted for special items, second quarter Loss was $46.0 million, or $1.52 per diluted share;
- Second quarter 2012 cash flow from operations was $10.1 million; and
- Cash was $227 million as of June 30, 2012.  The Company subsequently borrowed $343 million, the full remaining availability under its unsecured revolving credit facility, and currently holds cash and cash equivalents in excess of $550 million.

84.    Additionally, the August 1, 2012 press release contained the following false and misleading statements from Defendant Arntzen:

Following on the slowdown of the world economy, all our International Flag markets turned down during the second half of the second quarter, with rates in our MR segment being under particular pressure, resulting in a disappointing quarter. Rates remain challenging today. On a bright note, our U.S. Flag unit continued to perform ahead of plan and the prospects for this business improved following the announcement of the sale of Conoco's Trainer refinery to Delta Air Lines and Sunoco's transfer of its Philadelphia refinery to a joint venture with Carlyle

In July we drew down the full remaining availability under our revolving credit facility and now have cash reserves of over $550 million. We believe this was a prudent step given the ongoing difficult market conditions. We are in discussions with our main banks to put in place long-term financing that provides sufficient liquidity to manage through an extended downturn in our International Flag tanker markets. At the same time, we are pursuing other liquidity raising options available to the Company.

85.     On August 7, 2012 OSG filed a Form 10-Q with the SEC reporting its second quarter 2012 financial results, which repeated the same revenue numbers as set forth in the August 1, 2012 press release. The Company's Form 10-Q also contained substantially similar Control and Procedures disclosures referenced in ¶33, supra, and, attached to the filing as Exhibits 31.1 and 31.2, respectively, SOX certifications executed by Defendants Arntzen and Itkin substantially similar to the certifications referenced in ¶34, supra.

86.     Each of the foregoing statements regarding OSG's revenues, losses and internal controls were materially false and misleading when made. In violation of generally accepted accounting principles ("GAAP"), OSG improperly recognized revenue and improperly understated losses in the quarters in which they were recorded and thereby materially overstated the Company's revenues, earnings and earnings per share. OSG further misrepresented its internal controls as being adequate when, in fact, they were inadequate and permitted the improper recordation of profit, loss and customer incentives.

### B.    OSG Discloses Improper Accounting

87.    On October 3, 2012 OSG filed a Form 8-K with the SEC noting that issues relating to its treatment of a tax issue had come to the Company's attention and that "[u]pon completion of the review process, which involves consultation with its professional advisors, the Company will make any additional disclosures deemed appropriate." On this news, OSG's share price dropped from a close of $7.08 on October 2, 2012 to close at $6.82 on October 3, 2012.

88.    Then, on October 22, 2012, OSG announced in a Form 8-K, that the Company's previously issued financial statements for at least the three years ended December 31, 2011 and associated interim periods, as well as for the fiscal quarters ended March 31 and June 30, 2012, should no longer be relied upon. This determination was made by the Audit Committee of the Board of Directors after an analysis of tax treatment and implications and was made at the recommendation of management. In part, the SEC filing stated:

**Item 4.02 – Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review**

As previously disclosed in a Current Report on Form 8-K filed on October 3, 2012, Overseas Shipholding Group Inc. (the "Company") is in the process of reviewing a tax issue arising from the fact that the Company is domiciled in the United States and has substantial international operations, and relating to the interpretation of certain provisions contained in the Company's loan agreements. As a result of that continuing process, on October 19, 2012, the Audit Committee of the Board of Directors of the Company, on the recommendation of management, concluded that the Company's previously issued financial statements for at least the three years ended December 31, 2011and associated interim periods, and for the fiscal quarters ended March 31 and June 30, 2012, should no longer be relied upon. The Audit Committee and authorized officers have informed the Company's independent registered public accountants of this conclusion. The Company is continuing its review processes, including determining whether a restatement of those financial statements may be required, and the nature and amount of any potential restatement. In connection with these matters and other matters, including negotiations with its bank creditors, the Company is evaluating its strategic options, including the potential voluntary filing of a petition for relief to reorganize under Chapter 11 of the Bankruptcy Code.

89.     On October 22, 2012, as the market absorbed the disclosures about OSG's lack of confidence in and need to restate previously issued financial statements, OSG's stock price plummeted.  The stock closed at $3.25 on October 19, 2012, the last day of trading prior to the announcement of the need for financial restatement.  OSG stock closed on October 22, 2012 at $1.23, trading at its highest volume in at least *five years* as the Company's shares lost over 62% of their value on October 22, 2012 alone.

## VII.   LOSS CAUSATION / ECONOMIC LOSS

90.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's common stock.  As detailed above, when the truth about OSG's accounting misconduct and its lack of operational and financial controls was revealed, the Company's common stock declined precipitously as the prior artificial inflation no longer propped up its stock price.  The decline in OSG's common stock price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct.  The economic loss, *i.e.,* damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's common stock price and the subsequent significant decline in the value of the Company's common stock when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

91.     At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff

and other Class members.  Those statements were materially false and misleading through their failure to disclose a true and accurate picture of OSG's business, operations and financial condition, as alleged herein.  Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing OSG's common stock price to be artificially inflated. Plaintiff and other Class members purchased OSG's common stock at those artificially inflated prices, causing them to suffer the damages complained of herein.

## VIII.   NO SAFE HARBOR

92.     The statutory safe harbor under the Private Securities Litigation Reform Act of 1995, which applies to forward-looking statements under certain circumstances, does not apply to any of the allegedly false and misleading statements plead in this complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not adequately identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor is intended to apply to any forward-looking statements plead herein, Defendants are liable for those false forward-looking statements because, at the time each of those forward-looking statements was made, the particular speaker had actual knowledge that the particular forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized and/or approved by an executive officer of OSG who knew that those statements were false, misleading or omitted necessary information when they were made.

**COUNT I**
**(Against All Defendants)**
**Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5**

93.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

94.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder.

95.     During the Class Period, Defendants, singly and in concert, directly engaged in a common plan, scheme and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and course of business which operated as fraud and deceit upon Plaintiff and the other members of the Class, and failed to disclose material information in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiff and the other members of the Class.  The purpose and effect of said scheme, plan and unlawful course of conduct was, among other things, to induce Plaintiff and the other members of the Class to purchase OSG's common stock during the Class Period at artificially inflated prices.

96.     As a result of the failure to disclose material facts, the information Defendants disseminated to the investing public was materially false and misleading as set forth above, and the market price of OSG's common stock was artificially inflated during the Class Period.  In ignorance of the false and misleading nature of the statements described above and the deceptive and manipulative devices and contrivances employed by Defendants, Plaintiff and other members of the Class relied, to their detriment, on the integrity of the market price of OSG's common stock in purchasing shares of the Company.  Had Plaintiff and the other members of the

Class known the truth, they would not have purchased said shares or would not have purchased them at the inflated prices that were paid.

97.     Plaintiff and other members of the Class have suffered substantial damages as a result of the unlawful conduct alleged herein in an amount to be proved at trial.

98.     By reason of the foregoing, Defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they:  (a) employed devices, schemes and artifices to defraud; (b) failed to disclose material information; or (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class in connection with their purchases of OSG's common stock during the Class Period.

**COUNT II**
**(Against the Individual Defendants)**
**Violations of Section 20(a) of the Exchange Act**

99.     Plaintiff repeats and re-alleges each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

100.    The Individual Defendants, by virtue of their positions, stock ownership and/or specific acts described above, were, at the time of the wrongs alleged herein, controlling persons within the meaning of Section 20(a) of the Exchange Act.

101.    The Individual Defendants had the power and influence – and exercised such power and influence – as to cause OSG to engage in the unlawful conduct and practices complained of herein.

102.    By reason of the conduct alleged in Count I of this Complaint, the Individual Defendants are jointly and severally liable to the same extent as the Company for the aforesaid unlawful conduct, and are liable to Plaintiff and to the other members of the Class for the

substantial damages which they suffered in connection with their purchases of OSG common stock during the Class Period.

## IX.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for judgment as follows:

(a)    Determining this action to be a proper class action and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other members of the Class against Defendants, jointly and severally, for the damages sustained as a result of the wrongdoings of Defendants, together with interest thereon;

(c)    Awarding Plaintiff the fees and expenses incurred in this action including reasonable allowance of fees for Plaintiff's attorneys and experts;

(d)    Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e)    Granting such other and further relief as the Court may deem just and proper.

## X.    JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  October 24, 2012

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**

By:_____

Gregory M. Nespole
Malcolm T. Brown
270 Madison Avenue
New York, NY 10016
Tel:  (212) 545-4600
Fax:  (212) 545-4653

**BLOCK & LEVITON LLP**
Jeffrey C. Block
Jason M. Leviton
Steven P. Harte
155 Federal Street, Suite 1303
Boston, MA  02110
Telephone:  (617) 398-5600
Facsimile:  (617) 507-6020
Jeff@blockesq.com
Jason@blcokesq.com
Steven@blockesq.com

*Attorneys for the Plaintiff*

/701669

39

## PLAINTIFF'S CERTIFICATION OF SECURITIES
## FRAUD CLASS ACTION COMPLAINT

I, _____Robert Peraio_____, hereby certify that the following is true and correct to the best of my knowledge, information and belief:

2        I have reviewed the facts and allegations against Overseas Shipholding Group Inc. (NYSE: OSG).

3.       I am willing to serve as a representative party on behalf of the class in this action, including providing testimony at deposition and trial, if necessary.

4.       My transactions in Overseas Shipholding Group Inc. securities during the Class Period of May 1, 2008 through October 22, 2012 are as follows:

| DATE | TRANSACTION (buy or sell) | NO. OF SHARES | PRICE PER SHARE |
|------|---------------------------|---------------|-----------------|
| 10-19-2012 | Buy | 1000 | 3.26 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

5.       I did not purchase these securities at the direction of counsel, or in order to participate in any private action arising under the federal securities laws.

6.       During the three-year period preceding the date of my signing this Certification, I have never sought to be appointed nor have I ever been appointed as lead plaintiff or class representative in any class action arising under the securities laws of the United States.

7.       I will not accept any payment for serving as a representative party on behalf of the Class beyond my *pro rata* share of any possible recovery, except for an award, as ordered or approved by the court, for reasonable costs and expenses (including lost wages) directly relating to my representation of the Class.

Signed under the penalties of perjury this 22 day of ___October___ 2012.