UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT PORZIO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>OVERSEAS SHIPHOLDING GROUP, INC., MORTEN ARNTZEN, and MYLES R. ITKIN<br><br>Defendants. | Case No: 1:12-cv-7948-SAS |
| PRIYA VIJAYAN, On Behalf of Herself and Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>OVERSEAS SHIPHOLDING GROUP, INC., MORTEN ARNTZEN AND MYLES R. ITKIN,<br><br>Defendants. | Case No: 1:12-cv-8043-LLS |
| BRUCE MYATT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>MORTEN ARNTZEN AND MYLES R. ITKIN,<br><br>Defendants. | Case No: 1:12-cv-8547-LLS |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF LEE MCCLENNAHAN FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL

Plaintiff Lee McClennahan ("Plaintiff" or "Movant") respectfully submits this memorandum in support of his motion for consolidation, for appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and for approval of his selection of the law firm of Saxena White P.A. ("Saxena White") to serve as Lead Counsel for the Class and The Law Offices of Curtis V. Trinko, LLP ("Trinko") to serve as Liaison Counsel for the Class.

### I. PRELIMINARY STATEMENT

Presently pending in this District are three related class action lawsuits (the "Actions") brought on behalf of all persons who purchased or otherwise acquired the publicly traded securities of Overseas Shipholding Group, Inc. ("OSG" or the "Company"). These Actions are brought pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5. In particular, the actions are:

| Case | Class Period | Date Filed |
|---|---|---|
| *Porzio v. Overseas Shipholding Group, Inc. et al.* | 04/28/08-10/22/12 | 10/25/12 |
| *Vijayan v. Overseas Shipholding Group, Inc. et al.*[1] | 03/01/10-10/19/12 | 11/05/12 |
| *Myatt et al v. Arntzen et al.* | 03/01/10-10/19/12 | 11/21/12 |

---

[1] On November 14, 2012, Plaintiff Priya Vijayan filed a Notice of Voluntary Dismissal

2

Pursuant to the PSLRA, prior to selecting a lead plaintiff, the Court must decide whether to consolidate related actions. *See* 15 U.S.C. 78u-4(a)(3)(B)(ii). On this threshold question, little doubt exists. The Actions allege violations of §§ 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder. The Actions allege substantially the same misconduct by certain OSG executive officers and directors, namely, that defendants issued materially false and misleading statements during the Class Period, thereby causing the price of OSG securities to be artificially inflated. Because the Actions raise common issues of fact and law, and consolidation will be more efficient for the Court and the parties, the Actions should be consolidated under Federal Rule of Civil Procedure 42(a).

After consolidating related actions, the PSLRA directs the Court to appoint as Lead Plaintiff the movant that has demonstrated the "largest financial interest in the litigation" and also meet the typicality and adequacy prongs of Fed. R. Civ. P. 23. *See* 15 U.S.C. 78u-4(a)(3)(B)(iii). As demonstrated herein, Movant has sustained losses totaling $352,994.[2] Movant's losses are believed to be the largest among purported class members seeking appointment as Lead Plaintiff.[3] Movant is unaware of any other class member that has filed an action or an application for appointment as Lead Plaintiff that sustained greater financial losses.[4] Furthermore, Movant understands the commitments of a Lead Plaintiff and, as demonstrated herein, satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. In addition,

---

[2] The losses suffered by Movant are not the same as his legally compensable damages, the measure of which is often a complex legal question that cannot be determined at this stage of litigation. The approximate losses can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(B) and based upon reference to information concerning the current market for the Company's securities.

[3] The transactions of Mr. McClennahan in OSG securities during the Class Period are set forth in the certification attached to the Declaration of Joseph E. White III ("White Decl.") as Exhibit B.

[4] A chart setting forth Mr. McClennahan's losses is attached as Exhibit C to the White Decl.

Movant has retained competent and experienced counsel to prosecute this securities litigation and seeks the Court's approval of his selection of Counsel. Accordingly, under the PSLRA Mr. McClennahan is presumptively the most adequate plaintiff and entitled to appointment as the Lead Plaintiff for the class.

Pursuant to the PSLRA, the Lead Plaintiff—subject to Court approval—is entitled to select lead counsel for the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Here, Movant has selected the law firm of Saxena White to serve as Lead Counsel and the Trinko Firm as Liaison Counsel. Saxena White has extensive experience successfully litigating securities class actions and possesses the resources necessary to vigorously pursue this litigation on behalf of the class. For the reasons summarized herein and discussed more fully below, Movant's motion should be approved in its entirety.

## II.    PROCEDURAL HISTORY

This is a federal class action on behalf of purchasers of OSG securities, seeking to pursue remedies under the Exchange Act. The first lawsuit filed against defendants Overseas Shipping Group, Inc., Morten Arntzen and Myles Itkin (collectively, "Defendants"), the *Porzio* Action, was filed on October 25, 2012. In accordance with the PSLRA, a press release was issued and published on October 25, 2012 through *PR Newswire*, a widely circulated national business-oriented wire service, that a class action had been initiated against Defendants and advising members of the proposed Class of their right to move the Court to serve as lead plaintiff no later than December 26, 2012. Mr. McClennahan timely filed this motion within the 60-day period following publication of the October 25, 2012 notice.

III. **STATEMENT OF FACTS**[5]

Defendant Overseas Shipholding Group, Inc., is a Delaware corporation, with principal executive offices located at 666 Third Avenue, New York, NY, 10017. ¶16. OSG is a major international shipping company and primarily engages in the ocean transportation of crude oil and petroleum products. OSG has leading positions in the crude oil tanker, product carrier and U.S. Flag markets and is a recent entrant in the liquefied natural gas business. ¶3.

In October 2012, following the sudden resignation of a member of the OSG Audit Committee arising out of a dispute regarding the handling of a tax issue, Defendants shocked the market by revealing that the Company's financial position and results were not as they had portrayed them. Specifically, following the announcement of the Board member's resignation on October 3, 2012, the market learned of a massive funding gap between OSG's expiring credit facility of $1.5 billion (in February 2013), and a $900 million forward start credit facility the Company had obtained. Estimates from the Company and analysts put the funding gap between $100 million to $300 million, but as October dragged on, analysts began to suspect the funding gap was substantially higher. Moreover, the $900 million forward start credit facility would not be available to the Company before February 2013, and the facility would be subject to an adverse materiality clause and compliance with financial covenants among other terms.

On October 22, 2012, before the opening of trading, Defendants revealed that in connection with the Board's review of the tax issue that prompted the Board member's resignation, the Board's Audit Committee, on the recommendation of management, concluded that the Company's previously issued financial statements for "at least" the three years ended

---

[5] These facts were derived from the allegations contained in the class action styled as *Porzio v. Overseas Shipholding Group, Inc. et al.*, Case No. 1:12-cv-7948-SAS (S.D.N.Y. October 25, 2012).

December 31, 2011 and associated interim periods, and for the fiscal quarters ended March 31 and June 30, 2012, should no longer be relied upon. Defendants also disclosed that the Company was then "evaluating its strategic options, including the potential voluntary filing of a petition for relief to reorganize under Chapter 11 of the Bankruptcy Code." On November 14, 2012, OSG filed for protection under the federal bankruptcy laws.

The *Porzio* complaint asserts that OSG, through its officers and directors, made false and misleading statements and omissions regarding the Company's internal financial controls and its accounting for certain loan provisions and its tax treatments relating to its U.S. domicile and international operations. These statements are alleged to have been false and misleading when made because: (i) the Company was suffering from grossly deficient internal controls and therefore was susceptible to accounting fraud; (ii) Defendants failed to disclose the true nature of the accounting irregularities regarding their tax issues and loan provisions; and (iii) the Company's financial statements were inaccurate in numerous material respects.

As a result of defendants' false statements and omissions, OSG common stock traded at artificially inflated prices during the Class Period. However, after the above revelations seeped into the market, the Company's stock price was hammered by massive sales, sending it down nearly 97% from its Class Period high.

IV. **ARGUMENT**

    A. **THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES**

The Actions involve class action claims on behalf of the purchasers of OSG securities and assert essentially identical and overlapping class claims. Consolidation is appropriate when, as here, actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990), *cert. denied*, 498 U.S. 920 (1990); *Lowinger*

*v. Global Cash Access Holdings, Inc.*, No. 08 Cv. 3516 (SWK), 2008 WL 2566558, at *2 (S.D.N.Y. June 26, 2008) (finding a "more expansive definition of the class, allegations of additional securities law violations, and inclusion of additional defendants" did not render consolidation inappropriate); *Pinkowitz v. Elan Corp., PLC*, No. 02 CIV. 865(WK), 2002 WL 1822118, at *3-4 (S.D.N.Y. July 29, 2002) (finding consolidation of actions alleging Exchange Act claims with an action alleging Securities Act claims to be proper due to common questions of law and fact). Under Rule 42, courts have broad discretion whether to consolidate, and courts consider whether judicial economy favors consolidation. *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007). "When a court is presented with securities actions in which the complaints are based on the same 'public statements and reports,' consolidation is appropriate if the actions present common questions of law and fact and if the parties will not be prejudiced." *Id.* (quoting *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992)).

The Actions present substantially identical factual and legal issues, including: (a) whether the Defendants violated the federal securities laws; (b) whether the Company's public statements during the Class Period omitted and/or misrepresented material facts; (c) whether Defendants participated in and pursued the fraudulent scheme or course of business complained of in the Actions; (d) whether Defendants acted willfully, knowingly or recklessly, in omitting and/or misrepresenting material facts; (e) whether the market prices of OSG securities during the Class Period were artificially inflated due to the alleged material nondisclosures and/or misrepresentations; and (f) whether the members of the proposed class have sustained damages when corrective disclosures removed the inflation caused by Defendants' fraud, and, if so, what is the appropriate measure of damages.

Class action shareholder suits are ideally suited for consolidation because their unification expedites pretrial proceedings, reduces case duplication, avoids the harassment of parties and witnesses being interrogated in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned. *See Primavera, Familienstiftung v. Askin*, 173 F.R.D. 115, 130 (S.D.N.Y. 1997); *Newman v. Eagle Building Techs.*, 209 F.R.D. 499, 501-02 (S.D. Fla. 2002). Moreover, "'[d]irecting discovery to one complaint...avoids the possible confusion and possible problems stemming from the situation where each plaintiff pursues his individual complaint.'" *Pearlman v. Cablevision Sys. Corp,.* 2011 U.S. Dist. LEXIS 10008, at *4 (E.D.N.Y. Feb 1, 2011) (quoting *Katz v. Realty Equities Corp. of New York*, 521 F.2d 1354, 1359-60 (2d Cir. 1975)).

Here, the Actions assert essentially the same claims on behalf of purchasers of OSG securities against substantially the same Defendants. Consolidation of the Actions, therefore, is necessary and appropriate and will serve to promote the efficient litigation of this matter. As such, Movant respectfully urges the Court to consolidate the Actions.

**B.     MR. MCCLENNAHAN SHOULD BE APPOINTED LEAD PLAINTIFF**

**1.     The Procedural Requirements Pursuant To The PSLRA**

The PSLRA sets forth a detailed procedure that governs the appointment of a lead plaintiff in each private action arising under the Exchange Act that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i). Specifically, the PSLRA provides that, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs who filed the initial complaint shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class:

8

> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as Lead Plaintiff of the purported class.

15 U.S.C. §78u-4(a)(3)(A)(i).

Furthermore, the PSLRA directs the Court to consider any motions by plaintiffs or purported class members to serve as Lead Plaintiff in response to any such notice within 60 days after the date of publication of the notice, or as soon as practicable after the Court decides any pending motions to consolidate any actions asserting substantially the same claim or claims. Under this section, the court "shall" appoint the "most adequate plaintiff," and is to presume that such plaintiff is the person, or group of persons, which:

> (aa) has either filed the complaint or made a motion in response to a notice…
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Section 21D(a)(3)(B)(iii)(I). *See generally Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 402-04 (S.D.N.Y. 2004) (Sweet, J.).

As discussed below, Mr. McClennahan has complied with the procedural prerequisites of the PSLRA. Moreover, Mr. McClennahan believes that he has the largest financial interest in the litigation, and otherwise meets the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure.

### 2. Mr. McClennahan is "The Most Adequate Plaintiff"

#### (i) Movant Has Timely Submitted His Lead Plaintiff Motion

Under the deadlines established by the PSLRA, any class members interested in moving for the appointment as Lead Plaintiff in this matter must do so within 60 days of the date of publication of the notice of the first filed action, or December 26, 2012. 15 U.S.C. §78u-4(a)(3)(A) and (B). Because this motion is filed within the requisite time frame after publication of the notice, Mr. McClennahan's motion is timely.

#### (ii) Movant has the Largest Financial Interest Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall presume that the most adequate plaintiff is the "person or group of persons" that represent(s) the largest financial interest in the relief sought by the action and who also meets the requirements of Rule 23.

During the Class Period, Mr. McClennahan purchased 56,000 shares of OSG securities at prices artificially inflated by the materially false and misleading statements issued by Defendants. *See* White Decl., Exhibit B. In addition, Movant incurred a substantial loss of approximately $352,994 on his transactions in OSG securities when corrective disclosures removed the inflation caused by the Defendants' fraud.

In evaluating financial interest, courts generally analyze four factors—referred to as the "*Lax* Factors"[6]—to determine financial interest. The *Lax* Factors include: (i) the number of gross shares purchased during the class period; (ii) the number of net shares purchased during the class period; (iii) the total net funds expended during the class period; and (iv) the approximate loss suffered. *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005). In light of each of these factors, Mr. McClennahan's financial interest is as follows:

---

[6] *See Lax v. First Merch. Acceptance Corp.*, No. 97-Civ-2715, 1997 WL 461036, at *5 (N.D. Ill. Aug 11, 1997).

10

| Total Shares Purchased During Class Period | Net Shares Purchased During Class Period | Net Funds Expended During Class Period | Approximate Loss |
|---|---|---|---|
| 56,000 | 35,000 | $396,044 | $352,994 |

As demonstrated herein, Mr. McClennahan believes that he has the largest financial interest in this case.

### (iii) Movant is Otherwise Qualified Under Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to be the presumptively most adequate plaintiff. 15 U.S.C. §78u-4(a)(3)(B). To this end, Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two—typicality and adequacy—are relevant in the lead plaintiff analysis. Consequently, in deciding the motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412. As detailed below, Mr. McClennahan satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as Lead Plaintiff.

11

### a. Movant's Claims are Typical of the Claims of the Class

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. "Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted that determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988); *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 102 (finding a Lead Plaintiff movant's claim to be typical where "[m]embers of the class claim to have been injured by a fraudulent inflation of eSpeed's stock price" and the movant "makes the same claim."). Indeed, the requirement that the proposed class representatives' claims be typical of the claims does not mean that the claims be identical. *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412.

Mr. McClennahan seeks to represent a class of purchasers of OSG securities that have identical, non-competing and non-conflicting interests. Mr. McClennahan satisfies the typicality requirement because, just like all class members, he: (1) purchased or acquired OSG securities during the Class Period; (2) at prices artificially inflated by the Company's materially false and misleading statements and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation caused by the Defendants' fraud. Thus, Movant's claims are typical of those of other class members since his claims arise out of the same course of events.

### b. Mr. McClennahan Fulfills the Adequacy Requirement

Under Rule 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy

12

of the movant to: (1) whether there are any conflicts between the interests of the movant and the members of the Class; (2) whether the movant is an adequate representative of the Class; (3) whether the interests of the movant are clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests. *See* 15 U.S.C. §78u-4(a)(3)(B); *see also In re Initial Public Offering Sec. Litig.*, 214 F.R.D. at 121.

Here, Mr. McClennahan will more than adequately represent the interests of the class. First, Mr. McClennahan's interests are clearly aligned with the interests of the members of the proposed class, and there is no antagonism or conflict whatsoever between his interests and the interests of the class members. Second, Mr. McClennahan shares common questions of law and fact with the members of the Class and his claims are typical of the other class members. As evidenced by the injury suffered by Movant, who acquired 56,000 shares of OSG securities at prices artificially inflated by the Company's materially false and misleading statements, Movant's interests are clearly aligned with the interests of the other members of the Class.

Furthermore, Mr. McClennahan has already taken significant steps demonstrating his willingness to protect the interests of the Class: (a) Movant has executed a sworn certification detailing his Class Period transactions (*See* White Decl., Exhibit B); (b) Movant has expressed his willingness to serve as Lead Plaintiff in this action (*See* White Decl., Exhibit B); (c) Mr. McClennahan timely moved the Court to be appointed as Lead Plaintiff; and (d) Movant has retained competent and experienced counsel who, as shown below, will be able to conduct this complex litigation in a professional manner in order to secure the best result for the class. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. N.J. 2001).

Thus, Mr. McClennahan, in addition to having the largest financial interest, also satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure.

Therefore, Movant satisfies all elements of the Exchange Act's prerequisites for appointment as Lead Plaintiff in this action pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii).

### C. THE COURT SHOULD APPROVE MR. MCCLENNAHAN'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL

Pursuant to the PSLRA, the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class. 15 U.S.C. §78u-4(a)(3)(B)(v). Moreover, the Court should not disturb the Lead Plaintiff's choice of counsel unless "necessary to protect the interests of the plaintiff class." *See* Statement of Managers—The "Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H14691-08, at H13700 (daily ed. Nov. 28, 1995); *see also In re Cavanaugh*, 306 F.3d 726, 732-733 (9th Cir. Cal. 2002) (The court should honor the lead plaintiff's selection of counsel except in extreme circumstances, where the selection of counsel appears "irrational" or is otherwise clearly against the interests of the class members).

In that regard, Movant has selected the law firm of Saxena White to serve as Lead Counsel to pursue this litigation on his behalf and on behalf of the class, and he has selected the Trinko Firm to serve as Liaison Counsel. As mentioned above, Saxena White possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. As demonstrated by its firm resume, Saxena White has been appointed as Lead or Lead Counsel in landmark, precedent-setting class actions. *See* White Decl., Exhibit D.

In terms of benefits conferred to Saxena White's clients, the firm has achieved resounding successes on behalf of shareholders nationwide. For instance, acting as sole Class Counsel in a securities fraud action against SIRVA, Inc., Saxena White gained final approval from the Northern District of Illinois of a $53.3 million settlement for shareholders that also included significant reforms to the company's internal control policies. *See Central Laborers'*

*Pension Fund v. SIRVA, Inc., et. al.*, No. 04 CV-07644 (N.D. Ill. November 2, 2007). Saxena White gained final approval from the Southern District of New York of a $27 million settlement for shareholders in a securities fraud action against Sadia, S.A. *See In re Sadia S.A. Securities Litigation*, No. 08-cv-9528-SAS (S.D.N.Y. December 28, 2011) (J. Scheindlin).[7]

In addition, courts throughout the country have recognized that Saxena White has the experience and resources to successfully and efficiently prosecute complex class litigation as Lead and Co-Lead Counsel. For example, the Honorable Judge Jed S. Rakoff, a noted jurist of the Southern District of New York, recognized that Saxena White had performed "excellent work" in this "important case" on behalf of all Merrill Lynch shareholders worldwide. *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litig.*, 4:07 Civ. 9633 (JSR) (S.D.N.Y. Jan. 20, 2009). The Honorable William S. Duffey, Jr. of the Northern District of Georgia, noted that Saxena White's lawyers act with "dignity and respect," produce "well-done pleadings," are "thorough [and] insightful," and "fight[] as hard but as honestly and professionally as they can for the interest of their clients." *In re Freidman's Sec. Litig.*, 1:03-CV-3475-WSD (N.D. Ga. Feb. 5, 2009).

Additionally, in *In re Goldman Sachs Group, Inc. Derivative Litigation*, Master File No. 10 Civ. 3614-PAC (S.D.N.Y.), Judge Crotty appointed Saxena White as sole Lead Counsel amongst numerous firms, and specifically noted that **"Saxena White is well qualified to play its**

---

[7] Similarly, the Southern District of New York recently granted final approval of a $9,000,000 settlement in which Saxena White served as sole Class Counsel. *Hayes v. Harmony Gold Mining Co. Ltd.*, No. 08-civ-3653-BSJ (S.D.N.Y. November 10, 2011). The Western District of Texas, El Paso Division, granted final approval of a $4,500,000 securities fraud class action settlement in which Saxena White served as sole Class Counsel. *See In re Helen of Troy Limited Securities Litigation*, No. EP-05-CA-431-H (W.D. Tex. June 19, 2008). The Eastern District of Texas, Sherman Division, also granted final approval of a $3,000,000 settlement in which Saxena White served as Co-Class Counsel. *See PLA, LLC v. Advanced Neuromodulation Systems, Inc., et al.*, No. 4:05-CV-00078 (E.D. Tex. March 21, 2007).

*role as lead counsel. The pleadings it filed in this matter, including the motion papers, are competent and professional."* Further, in *In re Bank of America Corp. Securities, Derivative and ERISA Litigation*, No. 09-MD-2058 (S.D.N.Y.), Saxena White was appointed as Co-Lead Counsel, with Judge Chin expressly noting that *Saxena White is "experienced and qualified to serve as lead counsel."*

Mr. McClennahan has also selected the Trinko Firm to serve as Liaison Counsel. The Trinko Firm has extensive experience prosecuting complex litigation, including securities fraud class actions, and will serve to facilitate the litigation on a local level. *See* White Decl., Exhibit E. Moreover, Saxena White and the Trinko Firm have extensive experience cooperatively litigating complex securities fraud class actions and derivative actions in this Court.[8] Because there is nothing to suggest that Mr. McClennahan or his counsel will not fairly and adequately represent the Class, or that Mr. McClennahan is subject to unique defenses—which is the *only* evidence that can rebut the presumption of inadequacy under the PSLRA—this Court should appoint Mr. McClennahan as Lead Plaintiff and approve his selection of Saxena White as Lead Counsel and the Trinko Firm as Liaison Counsel for the Class.

## CONCLUSION

For all of the foregoing reasons, Mr. McClennahan respectfully requests that this Court: (1) consolidate the Actions pursuant to Fed. R. Civ. P. 42(a); (2) appoint Mr. McClennahan as Lead Plaintiff pursuant to §21D(a)(3)(B); and (3) approve Movant's selection of Saxena White as Lead Counsel and Trinko as Liaison Counsel.

---

[8] *See, e.g., In re Sadia S.A. Securities Litigation*, No. 08-cv-9528-SAS (S.D.N.Y.); *In re Bank of America Corp. Securities, Derivative and ERISA Litigation*, No. 09-MD-2058 (S.D.N.Y.).

Dated: December 26, 2012

By: /s/ *Curtis V. Trinko*

**LAW OFFICES OF CURTIS V. TRINKO, LLP**
Curtis V. Trinko (CT-1838)
Jennifer E. Traystman (JT-7583)
16 West 46th Street, 7th Floor
New York, New York 10036
Tel: 212 490-9550
Fax: 212 986-0158
Email: Ctrinko@trinko.com

**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White III (JW-9598)
Lester R. Hooker
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: 561 394-3399
Fax: 561 394-3082

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th day of December, 2012, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

*/s/ Curtis V. Trinko*
Curtis V. Trinko