**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------ X
ROBERT PORZIO, Individually and On Behalf of All Others Similarly Situated,

   Plaintiff,

 vs.

OVERSEAS SHIPHOLDING GROUP, INC., MORTEN ARNTZEN, and MYLES R. ITKIN,

   Defendants.
------------------------------------ X
PAUL OTTO KOETHER IRA ROLLOVER, on Behalf of Itself and All Others Similarly Situated,

   Plaintiff,

 vs.

MORTEN ARNTZEN, MYLES R. ITKIN, OUDI RECANATI, G. ALLEN ANDREAS III, ALAN R. BATKIN, THOMAS B. COLEMAN, CHARLES A. FRIBOURG, STANLEY KOMAROFF, SOLOMON N. MERKIN, JOEL I. PICKET, ARIEL RECANATI, THOMAS F. ROBARDS, JEAN-PAUL VETTIER, MICHAEL J. ZIMMERMAN, CITIGROUP GLOBAL MARKETS, INC., MORGAN STANLEY & CO. INCORPORATED, HSBC SECURITIES (USA) INC., DEUTSCHE BANK SECURITIES INC., DnB NOR MARKETS, INC., GOLDMAN, SACHS & CO., ING FINANCIAL MARKETS LLC, PRICEWATERHOUSECOOPERS LLP,

   Defendants.
------------------------------------ X

Case No. 12 Civ. 07948-SAS

Case No. 12-cv-09104

| | |
|---|---|
| BRUCE MYATT, Individually and On Behalf of All Others Similarly Situated, | : |
| Plaintiff, | : |
| vs. | Case No. 12-cv-08547-LLS |
| | : |
| MORTEN ARNTZEN, and MYLES R. ITKIN, | : |
| Defendants. | : |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF BARRIE WOOLARD AND STEVEN HYMAN AS LEAD PLAINTIFFS, APPOINTMENT OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS**

# TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND .................................................................................................. 2

III. ARGUMENT ....................................................................................................... 4

    A) Movants Satisfy the Procedural Requirements for Appointment as Lead Plaintiffs ................................................................................................... 4

    B) Movants Satisfy the Legal Prerequisites For Appointment as Lead Plaintiffs ............ 5

        1. Movants Are Presumptively the Most Adequate Plaintiffs ..................................... 5

        2. Movants Satisfy the Requirements of Rule 23 ....................................................... 7

        3. In the Alternative, Movants Request to Be Appointed Lead Plaintiffs for All Purchasers of Fixed Income Securities ................................................................. 9

    C) The Court Should Appoint Cohen Milstein as Lead Counsel .................................... 9

    D) The Related Actions Should Be Consolidated Pursuant to Rule 42(a) ..................... 10

IV. CONCLUSION .................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Albert Fadem Trust v. Citigroup Inc.*,
　239 F. Supp. 2d 344 (S.D.N.Y. 2002) ............................................................................. 7, 10

*In re Centerline Holding Co. Sec. Litig.*,
　No. 08 Civ. 505 (SAS), 2008 U.S. Dist. LEXIS 36406, *1 (S.D.N.Y. May 5, 2008) .......... 5, 6

*Chisholm v. TranSouth Fin. Corp.*,
　184 F.R.D. 556 (E.D. Va. 1999) ............................................................................................ 8

*In re Crayfish Co. Sec. Litig.*,
　No. 00 Civ. 6766 (DAB), 2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. June 6, 2002) ............... 7

*In re Drexel Burnham Lambert Grp, Inc.*,
　960 F.2d 285, 291 (2d Cir. 1992) .......................................................................................... 8

*In re Elan Corp. Sec. Litig.*,
　No. 02 Civ. 865 (WKFM), 2002 U.S. Dist. LEXIS 23162, at *7
　(S.D.N.Y. Dec. 3, 2002) ......................................................................................................... 7

*In re eSpeed, Inc. Sec. Litig.*,
　232 F.R.D. 95, 101 (S.D.N.Y. 2005) ..................................................................................... 6

*Fields v. Biomatrix, Inc.*,
　198 F.R.D. 451 (D.N.J. 2000) ................................................................................................ 8

*Hargett v. Valley Fed. Sav. Bank*,
　60 F.3d 754 (11th Cir. 1995) ............................................................................................... 10

*Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*,
　208 F.R.D. 59 (S.D.N.Y. 2002) ........................................................................................... 10

*Miller v. United States Postal Serv.*,
　729 F.2d 1033, 1036 (5th Cir. 1995) ................................................................................... 10

*In re Olsten Corp. Sec. Litig.*,
　3 F. Supp. 2d 286 (E.D.N.Y. 1998) .................................................................................... 7, 8

*Primavera Familienstiftung v. Askin*,
　173 F.R.D. 115 (S.D.N.Y. 1997) ......................................................................................... 10

*Weltz v. Lee*,
　199 F.R.D 129 (S.D.N.Y. 2001) .................................................................................. 7, 8, 10

**Statutes**

15 U.S.C. § 78u-4(a) ................................................................................................ *passim*

15 U.S.C. § 77z-1(a) ................................................................................................ *passim*


**Other Authorities**

Fed. R. Civ. P. 23 .................................................................................................... 4, 7, 8

Fed. R. Civ. P. 6 ............................................................................................................ 4,

Fed. R. Civ. P. 42(a) ................................................................................................ 10, 11

## I. INTRODUCTION

Pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act") and Section 21(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), each as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), at 15 U.S.C. § 78u-4 and 15 U.S.C. § 77z-1, respectively, and for the reasons set forth below, Barrie Woolard and Steven Hyman ("Mr. Woolard" or "Mr. Hyman," respectively or, collectively, "Movants") respectfully move this Court for an Order appointing Movants as Lead Plaintiffs on behalf of themselves and all others similarly situated who purchased Overseas Shipholding Group, Inc. ("OSG" or the "Company") securities between March 1, 2010 and October 19, 2012, inclusive (the "Class Period").[1] Movants also seek appointment of the law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Lead Counsel, and consolidation of all related actions.

The above-captioned related actions (the "Related Actions") have been filed against OSG's President and Chief Executive Officer, Morten Arntzen, and its Executive Vice President, Chief Financial Officer and Treasurer, Myles R. Itkin,[2] for violations of the federal securities laws. They are predicated on Defendants' misrepresentation of the Company's financial condition.

Mr. Woolard suffered losses of approximately $14,586 during the Class Period, and

---

[1] The complaint filed in *Myatt v. Arntzen*, No. 12-cv-08547-LLS, contains a class period of March 1, 2010 to October 19, 2012. The complaint filed in *Paul Otto Koether IRA Rollover v. Arntzen*, No. 12-cv-09104, sets a class definition that includes all purchasers of securities traceable to OSG's $300 million offering on March 24, 2010.

[2] OSG filed for bankruptcy on November 14, 2012. Both the *Paul Otto Koether IRA Rollover* and *Myatt* complaints were filed on filed on November 21, 2012. Consequently, neither complaint names OSG as a defendant. However, the claims asserted in each complaint arise out of the same alleged conduct and asserts the same factual allegations.

Two other complaints in related matters were recently filed and voluntarily dismissed against OSG which alleged similar claims: *Priya Vijayan v. Overseas Shipholding*, No. 12-cv-08043-LLS, was voluntarily dismissed without prejudice on November 20, 2012; and *Michael Bhim v. Overseas Shipholding*, No. 12-cv-07938-LLS, was voluntarily dismissed without prejudice on December 12, 2012.

Mr. Hyman suffered losses of approximately $29,687, for a collective loss of approximately $44,273 as a result of Defendants' misleading conduct.[3] Movants are unaware at this time of any other movant with a greater loss. Thus, under Section 21D of the Exchange Act, Movants – who have a professional relationship pre-dating this litigation – are presumptively the "most adequate plaintiff[s]" and should be appointed as lead plaintiffs because they have "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). Movants are represented in this action by Cohen Milstein, which is seeking appointment as lead counsel and is eminently qualified to prosecute securities class actions such as this one.

## II. BACKGROUND

The Related Actions allege that OSG violated the Exchange Act and the Securities Act because (1) OSG failed to timely disclose the tax "issues" that eventually gave rise to its public statement on October 22, 2012, that tax issues caused its financial statements from 2009 up to at least the first two quarters of 2012 to be unreliable; (2) in response, rating agencies immediately downgraded OSG; (3) as a result, OSG filed for bankruptcy on November 14, 2012; and (4) the consequences from this series of events caused severe financial losses for purchasers of OSG's securities.

On March 24, 2010, OSG conducted a $300 million public offering of 8 1/8% Senior Notes due March 30, 2018 (CUSIP 6900368 AH8) (the "Offering"). At the time, OSG was a leading company in ocean shipping of crude oil and petroleum products. According to its 2009 From 10-K, OSG had a fleet of 106 vessels, of which 84 operated in the international market. Thus, a substantial portion of OSG's pre-tax income was earned by its international shipping

---

[3] The losses suffered by Movants, as detailed herein, are not the same as legally compensable damages, measurement of which is often a complex legal question that generally cannot be determined at this stage of the litigation.

operations. As further explained in the 2009 Form 10-K, all of OSG's international flag vessels were owned or operated by foreign corporations that are subsidiaries of OSG International, Inc., a wholly owned subsidiary of OSG. As such, OSG had a practice of not reporting undistributed income that it had realized through its subsidiary foreign corporations.

As has been revealed since its October 2012 statements, offering materials accompanying the March 24, 2010 Offering materially misstated OSG's quarterly and annual financial statements for the year ended December 31, 2009. Further, the Prospectus Supplement dated March 24, 2010, contained misstatements of fact relating to OSG's financial condition and its total capitalization. Unaware of the material misstatements, investors purchased notes in or traceable to the Offering.

On October 3, 2012, OSG filed a Form 8-K with the SEC disclosing that a member of its Board of Directors resigned due to concerns about the Company's accounting. In his resignation letter, the Board member specifically cited an objection to the Audit Committee's review of a "tax issue." Along with that particular Form 8-K filing, OSG included a responsive letter evading the heart of the issue and denying the existence of any aberration in accounting procedures. Yet, not even three weeks later, OSG recanted when it filed a Form 8-K on October 22, 2012, stating that a review of the tax issue revealed that annual financial statements from "at least" the first quarter of 2009 through the second quarter of 2012 "could no longer be relied upon." Almost immediately thereafter, each of the rating agencies downgraded OSG. On November 14, 2012, OSG was forced to file for bankruptcy. The credit downgrading and subsequent bankruptcy filing were direct consequences of OSG's material misstatements in its publicly filed financial statements, and also directly and substantially compromised the value of investors' purchases of OSG stocks and bonds.

## III. ARGUMENT

As discussed below, Movants satisfy each of the requirements of the PSLRA and are therefore qualified for appointment as Lead Plaintiffs. Additionally, Movants seek appointment of Cohen Milstein as Lead Counsel for the Class.

### A) Movants Satisfy the Procedural Requirements for Appointment as Lead Plaintiffs

Both the Securities Act, 15 U.S.C. § 77z-1, and the Exchange Act, 15 U.S.C. § 78u-4, establish a procedure for the appointment of a lead plaintiff in "each private action arising under" each Act "that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); 15 U.S.C. § 77z-1(a)(1). First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i); 15 U.S.C. § 77z-1(a)(3)(A)(i). The first such notice here was published on October 24, 2012 (*see* Eisenkraft Decl., Ex. A).

The PSLRA further provides that within 90 days after the publication of the notice of pendency, or as soon as practicable after the actions have been consolidated, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(3)(B)(i).

The 60-day time period provided by the PSLRA in which applications for appointment as lead plaintiff must be filed expires on December 24, 2012.[4] Movants have moved within the

---

[4] Because the Court is closed on December 24, 2012, the deadline is December 26, 2012, when the Court reopens. *See* Fed. R. Civ. P. 6(a)(1)(C).

statutory 60-day time period. The motion contains the required certifications setting forth, *inter alia*, Movants' transactions in OSG securities during the Class Period, and indicates that Movants are familiar with the allegations in this case and are willing to serve as a representative parties on behalf of the Class. *See* Eisenkraft Decl., Exhs. B and C. In addition, Movants have selected and retained competent and experienced counsel, as set forth in counsel's resume. *See* Cohen Milstein resume at Eisenkraft Decl., Ex. F. As demonstrated in its resume, Cohen Milstein has developed an excellent reputation for successfully prosecuting federal securities law claims.

### B) Movants Satisfy the Legal Prerequisites For Appointment as Lead Plaintiffs

#### 1. Movants Are Presumptively the Most Adequate Plaintiffs

The PSLRA sets forth procedures for the appointment of lead plaintiffs in class actions brought under the Exchange Act. 15 U.S.C. § 78u-4(a)(1); 15 U.S.C. § 77z-1(a)(1). The PSLRA provides that this Court:

> shall appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added); 15 U.S.C. § 77z-1(a)(3)(B)(i) (same). In adjudicating this motion, the Court must be guided by a presumption that the most adequate plaintiff is the person or group of persons who (a) filed the Complaint or made a motion to serve as lead plaintiff, (b) has the largest financial interest in the relief sought by the class, and (c) otherwise satisfies the requirements of Fed. R. Civ. P. 23 and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) or 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately

representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II). "The lead plaintiff need not be an individual, but can comprise several investors." *In re Centerline Holding Co. Sec. Litig.*, No. 08 Civ. 505 (SAS), 2008 U.S. Dist. LEXIS 36406, at *7-*8 (S.D.N.Y. May 5, 2008) (Scheindlin, J.).

Movants, who have a pre-existing professional relationship are qualified for appointment as lead plaintiffs. During the Class Period, Mr. Woolard suffered losses of approximately $14,586 from his purchases of OSG securities. Mr. Hyman suffered losses of approximately $29,687 from his purchases of OSG securities, with collective losses over $44,000. Mr. Woolard and Mr. Hyman's losses of approximately $14,586.00 and $29,687.00 were calculated using the Last In First Out (LIFO) method preferred in this District based upon trading information provided to Cohen Milstein about Mr. Woolard and Mr. Hyman's purchases of fixed OSG income securities during the Class Period See *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) (Scheindlin, J.) ("more recently, courts have preferred LIFO and have 'generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases.'"). Copies of their certifications are attached as Exhibits B and C to the Eisenkraft Declaration and copies of the loss calculations are attached as Exhibit D and E.[5] Movants have a previous professional relationship, and both purchased bonds originating from OSG's March 24, 2010 issuance. Movants suffered these losses when, on October 22, 2012, OSG announced that its financial statements were unreliable and that it was contemplating certain rehabilitative actions, which included a request for relief under Chapter 11. Promptly, and as a result, Standard and Poor downgraded OSG from triple-C-plus to triple-C-minus, nine degrees

---

[5] Mr. Hyman's certification included the total dollar amount of the Bonds purchased in each transaction, but inadvertently omitted the quantity of Bonds purchased. This quantity of Bonds purchased is, however, provided in the loss calculation attached as Exhibit E to the Eisenkraft Declaration and a revised certification reflecting this information will be filed for Mr. Hyman.

downward and into junk bond territory.[6] Movants believe their subsequent losses constitute the largest financial interest in the relief sought by the Class.

Because Movants possess a significant interest in the outcome of this litigation, they are presumed to be the "most adequate" plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). Further, Movants are both qualified to represent the class and willing to serve as representative parties. Finally, Movants have selected counsel that is highly experienced in prosecuting securities class actions such as this one. Accordingly, Movants satisfy the requirements for appointment as Lead Plaintiffs under the PSLRA and the instant motion should be granted.

### 2. Movants Satisfy the Requirements of Rule 23

In addition to requiring that the lead plaintiff have the largest financial interest, the PSLRA requires that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc); *see also In re Elan Corp. Sec. Litig.,* No. 02 Civ. 865 (WKFM), 2002 U.S. Dist. LEXIS 23162, at *7 (S.D.N.Y. Dec. 3, 2002); *Albert Fadem Trust v. Citigroup Inc.,* 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002). Rule 23(a) requires that (1) the class be so numerous that joinder of all members is impracticable; (2) there be questions of law or fact common to the class; (3) such claims be typical of those of the class; and (4) the representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Typicality and adequacy of representation are the only provisions relevant to the determination of lead plaintiff under the PSLRA. *In re Crayfish Co. Sec. Litig.*, No. 00 Civ. 6766 (DAB), 2002 U.S. Dist. LEXIS 10134, at *14 (S.D.N.Y. June 6, 2002) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296

---

[6] The parties in the *Porzio* and *Myatt* complaints allege exclusively Exchange Act claims; and the party in the *Paul Otto Koether IRA Rollover* complaint alleges exclusively Securities Act claims.

7

(E.D.N.Y. 1998) and *Weltz v. Lee*, 199 F.R.D 129, 133 (S.D.N.Y. 2001)).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A "claim will meet the typicality requirement if 'each class member's claim arises from the same course of conduct, and each class member makes similar legal arguments to prove the defendants' liability.'" *Olsten,* 3 F. Supp. 2d at 296 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)); *see also Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000). The typicality standard is met even where minor distinctions exist. *Id.* As one court has noted: "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class. Complete identity between the claims constituting each individual action is not required." *Chisholm v. TranSouth Fin. Corp.,* 184 F.R.D. 556, 563-64 (E.D. Va. 1999) (internal citation omitted). The typicality requirement is plainly satisfied in the instant case, where Movants seek the same relief and advances the same legal theories as class members.

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members [d]o not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous adequacy." *Weltz*, 199 F.R.D. at 133 (citing *Olsten*, 3 F. Supp. 2d at 296).

Movants are adequate representatives for the class. Movants purchased OSG securities during the Class Period and, like other putative class members, suffered losses in the form of diminution of the value of their securities. Moreover, Movants have retained counsel highly

experienced in prosecuting securities class actions vigorously and efficiently, and has timely submitted its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v) and 15 U.S.C. § 77z-1(a)(3)(B)(v).

### 3. In the Alternative, Movants Request to Be Appointed Lead Plaintiffs for All Purchasers of Fixed Income Securities

Movants purchased during the Class Period bonds issued by OSG that bore a maturity date of March 30, 2018. Movants assert claims under both the Exchange Act and Securities Act and are well qualified to represent purchasers of bonds. Claims asserted thus far by other moving parties are asserted based on either Exchange Act *or* Securities Act claims. For this reason, Movants are most capable of adequately representing the interests of all securities purchasers, as Movants assert claims under **both** the Exchange and Securities Acts. However, Movants request, in the alternative, to be appointed lead plaintiffs of a subclass or separate class that includes all investors who purchased bonds issued by OSG.

### C) The Court Should Appoint Cohen Milstein as Lead Counsel

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, a court should not disturb the lead plaintiff's selection of counsel unless such interference is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa). Movants have selected Cohen Milstein to serve as Lead Counsel, and appointing Cohen Milstein as Lead Counsel would be prudent to protect the interests of the class.

As detailed in its firm resume,[7] Cohen Milstein has extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors. Thus, the Court may

---

[7] A copy of Cohen Milstein's firm resume is attached to the Eisenkraft Decl. as Exhibit F.

be confident that the class will receive the highest caliber of legal representation in full compliance with the mandates of the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v); *Albert Fadem Trust*, 239 F. Supp. 2d at 348 (approving as lead counsel law firm with "substantial experience and success in prosecuting securities fraud actions").

### D) The Related Actions Should Be Consolidated Pursuant to Rule 42(a)

Class action shareholder suits are ideally suited for consolidation pursuant to Rule 42(a). *See Weltz*, 199 F. R.D. at 131. Indeed, "in securities actions where the complaints are based on the same public statements and reports, consolidation is appropriate if there are common questions of law and fact and the parties will not be prejudiced." *Id.* (internal quotations and citation omitted).

The Related Actions present virtually identical factual and legal issues and allege similar violations of the federal securities laws. They involve substantially the same parties and arise from the same underlying facts and circumstances. "The proper solution to problems caused by the existence of two or more cases involving the same parties and issues, simultaneously pending in the same court would be to consolidate them under Rule 42(a)." *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 765-66 (11th Cir. 1995) (quoting *Miller v. United States Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1995)); *see also Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, 208 F.R.D. 59, 61 (S.D.N.Y. 2002); *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Because these actions are based on the same facts and involve the same subject matter, discovery obtained in one lawsuit will undoubtedly be relevant to all others. Consolidation of the Related Actions is thus appropriate as common questions of law and fact predominate in these actions. Fed. R. Civ. P. 42(a). Thus, consolidation is appropriate here. Accordingly, the motion to consolidate the Related Actions should be granted.

## IV. CONCLUSION

Based on the foregoing, Movants respectfully request that the Court: (i) appoint them as Lead Plaintiffs; (ii) appoint Cohen Milstein as Lead Counsel; (iii) consolidate all Related Actions; and (iv) grant such other relief as the Court may deem to be just and proper.

Dated: December 26, 2012

Respectfully submitted,

COHEN MILSTEIN SELLERS
& TOLL PLLC

      /s/      Michael Eisenkraft
Michael Eisenkraft (ME-6974)
Kenneth M. Rehns (KR-9822)
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

- and -

Steven J. Toll
Daniel S. Sommers
Genevieve O. Fontan
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

*Attorneys for Movants Barrie Woolard and Steven Hyman and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

      I certify that on December 26, 2012, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on the CM/ECF.

                                           /s/ *Kenneth M. Rehns*
                                          Kenneth M. Rehns (KR-9822)