**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT PORZIO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OVERSEAS SHIPHOLDING GROUP, INC., MORTEN ARNTZEN, and MYLES R. ITKIN, <br><br> Defendants. | **No. 12 Civ. 07948-SAS** |
| BRUCE MYATT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MORTEN ARNTZEN and MYLES R. ITKIN, <br><br> Defendants. | **No. 12 Civ. 08547-SAS** |
| PAUL OTTO KOETHER IRA ROLLOVER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MORTEN ARNTZEN, MYLES R. ITKIN, OUDI RECANATI, G. ALLEN ANDREAS III, ALAN R. BATKIN, THOMAS B. COLEMAN, CHARLES A. FRIBOURG, STANLEY KOMAROFF, SOLOMON N. MERKIN, JOEL I. PICKET, ARIEL RECANATI, THOMAS F. ROBARDS, JEAN-PAUL VETTIER, MICHAEL J. ZIMMERMAN, CITIGROUP GLOBAL MARKETS INC., MORGAN STANLEY & CO. INCORPORATED, HSBC SECURITIES (USA) INC., DEUTSCHE BANK SECURITIES INC., DNB NOR MARKETS, INC., GOLDMAN, SACHS & CO., ING FINANCIAL MARKETS LLC, PRICEWATERHOUSECOOPERS LLP, <br><br> Defendants. | **No. 12 Civ. 09104-SAS** |

| | |
|---|---|
| INDIANA TREASURER OF STATE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>G. ALLEN ANDREAS III, MORTEN ARNTZEN, ALAN R. BATKIN, THOMAS P. COLEMAN, CHARLES A. FRIBOURG, MYLES R. ITKIN, STANLEY KOMAROFF, SOLOMON N. MERKIN, JOEL I. PICKET, ARIEL RECANATI, OUIDI RECANATI, THOMAS F. ROBARDS, JEAN-PAUL VETTIER, MICHAEL J. ZIMMERMAN, CITIGROUP GLOBAL MARKETS INC., DEUTSCHE BANK SECURITIES INC., DNB NOR MARKETS, INC., GOLDMAN SACHS & CO., HSBC SECURITIES (USA) INC., ING FINANCIAL MARKETS LLC, MORGAN STANLEY & CO. INCORPORATED and PRICEWATERHOUSECOOPERS LLP,<br><br>Defendants. | No. 12 Civ. 09363-SAS |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION BY THE OVERSEAS INVESTOR GROUP TO CONSOLIDATE THE RELATED ACTIONS, FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS**

Robert Kawula ("Kawula"); Ben Reuben ("Reuben"); Nikos Georgalakis ("Georgalakis"); Patrick Cummins ("Cummins"); and Douglas G. Fixter ("Fixter") (the "Overseas Investor Group") respectfully submit this memorandum in further support of their motion for consolidation, appointment as lead plaintiff, approval of their selection of co-lead counsel and in opposition to the competing motions, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

**PRELIMINARY STATEMENT**

Currently pending before the Court are eight sets of movants seeking appointment of lead plaintiff for a class of Overseas Shipholding Group, Inc.'s ("OSG" or the "Company") common

stock purchasers ("Stock Purchaser Class") and/or a class of OSG bond purchasers ("Bond Purchaser Class").[1] While other movants claim a greater financial interest in this action, the only movants with a larger financial interest in the action are those who purchased OSG bonds. While Movant Hedaya in the Overseas Investor Group claims losses of more than $2 million from its purchases of OSG common stock, he sold all of his shares in November 2011, nearly a year before the first alleged partial corrective disclosure on October 2, 2012. Thus, under the loss causation principles articulated in *Dura Pharma., Inc. v. Broudo*, 544 U.S. 336 (2005), Hedaya has no recoverable losses. The distinction between common stock investors and bondholders is particularly stark here, in light of OSG's recent filing for bankruptcy under Chapter 11, Title 11 of the United States Code. In light of OSG's bankruptcy filing, there are clear conflicts between bondholders and stockholders, as bondholders have rights to the assets of the estate, in contrast to the defrauded shareholders whose interests are wholly opposed to those of the estate.

Where class members' interests are divergent or potentially antagonistic based on their purchases of different types of securities, it is appropriate to divide them into separate classes or subclasses and appoint separate lead plaintiffs to represent their divergent interests. Quite simply, OSG bond purchasers' claims are not typical of OSG common stock purchasers' claims,

---

[1] The competing movants for the Stock Purchaser Class are: (1) the Overseas Investor Group; (2) Lloyd Crawford ("Crawford"); (3) Irving Firemen's Relief and Retirement Fund ("Irving Firemen's Fund"); (4) Lee McClennahan ("McClennahan"); and (5) Abe and Norma Hedaya ("Hedaya"). *See* Movants' Mems., ECF Nos. 33, 47, 27, 24, and 30 respectively. All ECF references are to the docket in *Porzio v. Overseas Shipholding Group, Inc.*, No. 12 Civ. 07948-SAS (S.D.N.Y.).

The remaining movants purchased OSG's 8 1/8% Senior Notes due 2018 (the "Notes") and thus, are not considered in this analysis. Those movants are: (1) Williams Mills and Kristin Mondo; (2) Barrie Woolard and Steven Hyman; (3) Richard W. Riley, Francis E. McGurk, Jr., Kenneth Mittleberg, David Michaels, and Carol Reff; (4) Paul Koether IRA Rollover; and (5) Stichting Pensioenfonds DSM Nederland and Indiana Treasurer of State. *See* Movants' Mems., ECF Nos. 30, 36, 39, 43, and 47 respectively.

3

nor are bond purchasers adequate to represent the interests of common stock investors in this action. Indeed, "the nature of the claims asserted by the two classes [is] materially different." *Friedman v. Quest Energy Partners, LP*, 261 F.R.D. 607, 610-611 (W.D. Okla. 2009) (appointing two separate classes as "a single lead plaintiff will be unable to have undivided loyalties to vigorously pursue recovery on behalf of both classes due to the inherent conflict that is caused by the competition for the same limited funds for recovery.").

The plain language of the PSLRA expressly allows for the appointment of more than one lead plaintiff. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 47 (S.D.N.Y. 1998) (citing 15 U.S.C. §§ 78u–4(a)(3)(B)(i): "the court...shall appoint as lead plaintiff the member ***or members*** of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members. ...") (emphasis added). In addition, Federal Rule of Civil Procedure 23(c)(5) provides that "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule."

As such, the Overseas Investor Group respectfully requests that a Common Stock Purchaser Class be recognized as a separate class in the consolidated action and, that in light of its greater financial interest, that it be appointed Lead Plaintiff to prosecute the claims of the Stock Purchaser Class. *See Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120-121 (S.D.N.Y. 2010) (appointing an individual as Co-Lead Plaintiff with a group of seven investors to prevent "the possibility that conflicts do ultimately arise.").

As each movant acknowledges, the critical factor that the Court must determine to appoint the lead plaintiff is which movant has "the largest financial interest in the relief sought by the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Cendant Corp. Litig.*, 264 F.3d 201,

262 (3d Cir. 2001) ( "In appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status.").

Here, the Overseas Investor Group has the largest financial interest in this litigation related to purchases in OSG common stock. As the following table illustrates, the Overseas Investor Group's losses – calculated by netting its gains against losses, and by using the last-in-first-out methodology ("LIFO"), as well as the principles articulated by *Dura*– are greater than the losses of other movants and its members retained more shares than any other common stock movant at the end of the Class Period:

| Movant | Shares Purchased | Funds Expended | Shares Retained at End of Class Period | Net Loss | Dura LIFO Loss |
|---|---|---|---|---|---|
| Cummins | 40,000 | $278,909 | 40,000 | $228,065 | $162,000 |
| Kawula | 55,500 | $265,975 | 55,500 | $207,439 | $163,875 |
| Georgalakis | 36,206 | $585,666 | 4,525 | $144,528 | $17,150 |
| Reuben | 12,500 | $205,000 | 500 | $137,738 | $50,625 |
| Fixter | 31,000 | $236,169 | 21,000 | $92,002 | $51,390 |
| **Overseas Investor Group** | **175,206** | **$1,571,720** | **121,525** | **$809,773** | **$445,040** |
| Crawford | 17,000 | $538,497 | 17,000 | $520,567 | $68,850 |
| Hedaya | 95,000 | $3,389,595 | 0 | $2,071,356 | $0 |
| Irving Firemen's Fund | 4,502 | $128,663 | 0 | $84,362 | $994 |
| McClennahan | 56,000 | $657,492 | 0 | $355,310 | $141,750 |

As noted below, while movant Hedaya *purports* to have larger losses than the Overseas Investor Group, it disposed of its shares nearly a year before the first alleged disclosure in this action. As such, it simply cannot allege loss causation under the Supreme Court's ruling in *Dura*. *Dura, at* 336 ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.") Accordingly, because it has the largest financial interest in the litigation and otherwise meets the requirements of Rule 23

of the Federal Rules of Civil Procedure, the presumptively most adequate plaintiff for the Stock Purchaser Class in the instant litigation is the Overseas Investor Group.

The plain language of the PSLRA allows for the appointment of groups of investors to serve as lead plaintiff, *see* U.S.C. §78u-4(a)(3)(B)(iii)(I) (referring to presumptive lead plaintiff as "the person or ***group of persons***"), and the Overseas Investor Group comprises a cohesive five-member group whose members have committed to prosecute this action together. Specifically, each member of the Overseas Investor Group has signed a certification setting forth their respective transactions in the common stock of OSG and indicated their willingness to cooperate and jointly act as lead plaintiff in this matter. Thus, as a threshold matter, the Overseas Investor Group has demonstrated its adequacy and typicality regarding its ability to vigorously prosecute this action in the best interests of the proposed Stock Purchaser Class.

Further, the presumption that the Overseas Investor Group is the "most adequate plaintiff" "may be rebutted only upon proof." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Because competing movants can offer no proof to rebut the *prima facie* finding of the Overseas Investor Group's adequacy and typicality, the Court should appoint it Lead Plaintiff for the Stock Purchaser Class and approve its selection of co-lead counsel.

## ARGUMENT

### A. Appointment of a Separate Lead Plaintiff for a Stock Purchaser Class is Necessary to Protect the Interests of Common Stock Investors

The appointment of Lead Plaintiff for OSG common stock investors will ensure that their interests are adequately protected in light of the unique factual circumstances in this case. It is not uncommon for courts to appoint a lead plaintiff for a separate class when there are questions as to "whether the plaintiffs share legal theories and whether potential conflicts exist between a potential lead plaintiff and absent class members." *See, e.g., In re BP, PLC Sec. Litig.*, 758 F.

Supp. 2d 428, 438 (S.D. Tex. 2010) (exercising the Court's discretion in appointing a separate class "'to ensure that all class members will adequately be represented in the prosecution of this action'") (quoting *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 376 (E.D. Va. 2003)). Indeed, it is "particularly important at this early stage of the case to avoid prejudicing the claims of absent class members through the appointment of a lead plaintiff who cannot fully and fairly represent them." *BP*, 758 F.Supp.2d at 438. Moreover, the appointment of a lead plaintiff for a separate class "does not conflict with the PSLRA's primary goal of shifting control of securities class actions from lawyers to investors" when "distinct theories of the case create a significant risk of conflict and prejudice to class members if they are not separated." *Id.* at 441.

The U.S. Supreme Court, in *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 626-7 (1999), noting that Rule 23's adequacy inquiry is designed to uncover conflicts of interest between class members and their named representatives, cautioned that a class representative "must be part of the class and 'possess the same interest and suffer the same injury' as the class members...[t]o ensure the 'fair and adequate representation for the diverse groups and individuals affected.'" (citations omitted). Similarly, in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999), the Supreme Court again emphasized the need to "provide the structural protection of independent representation as for subclasses with conflicting interests." *See also Harold Roucher Trust U/A DTD 09/21/72 v. Franklin Bank Corp.*, No. 4:08-cv-1810, 2009 WL 1941864, at *2 (S.D. Tex. July 6, 2009) ("In instances where conflicts of interest exist between different groups of plaintiffs,…[t]he Court is required to ensure that independent classes with conflicts are protected by subdivision and separate representation."); *Oxford*, 182 F.R.D. at 48 (appointing two institutional investors and a group of investors co-lead plaintiffs to "ensure that the interests of all class members will be adequately represented in the prosecution of the action and in the

negotiation and approval of a fair settlement, and that the settlement process will not be distorted by differing aims of differently situated claimants."); *Makasky v IAC/Interactive*, No. 04-cv-7447, 2004 U.S. Dist. LEXIS, at *14 (S.D.N.Y. Dec. 20, 2004) (finding a co-lead plaintiff structure "provides flexibility and stability to the class" in the event either co-lead plaintiff "fails to address certain interests within the class, drops out of the action or compromises the class in some fashion.").

Numerous courts have recognized that even where judicial economy dictates consolidation of cases based on a common core of facts, legal issues and overlapping or intertwined defendants, the creation of separate classes or subclasses can promote efficiency and judicial economy and avoid potential conflicts of interest. *See In re Peregrine Sys., Inc. Sec. Litig.*, No. Civ. 02 CV 870-J(RBB), 2002 WL 32769239, at *11 (S.D. Cal. Oct. 11, 2002) (appointing "co-lead plaintiffs, one to lead litigation with respect to the section 11 plaintiffs and another to lead litigation with respect to the section 10(b) plaintiffs."); *Miller v. Ventro Corp.*, No. 01-CV-1287, 2001 WL 34497752, at *11 (N.D. Cal. Nov. 28, 2001) (appointing one stockholder and one bondholder co-lead plaintiffs, with each having "final decision-making authority for" their respective issues.); *In re PSINet Sec. Litig.,* No. 00-1850 (E.D. Va. Jan. 19, 2001) (attached hereto as Exh. A) (appointing separate lead plaintiffs for shareholders, bond purchasers and preferred shareholders); *In re Williams Sec. Litig.*, No. 02-CV-72 (June 21, 2002) (attached hereto as Exh. B) (consolidating noteholder and shareholder cases with bifurcated subclasses following company's bankruptcy filing); s*ee also Muzinich v. Safety-Kleen* Corp., et al., No. 3:00-1145-17 (D.S.C. Aug. 3, 2000) (attached hereto as Exh. C) (noting potential conflicts of interest between shareholder and bondholder claims following company's bankruptcy filing but encouraging coordination of discovery in parallel actions.).

Intra-class conflicts between bondholders and stockholders are a particular concern in the context of a bankrupt defendant company. Bondholders are creditors, while stockholders are company owners: "Owners seek to borrow money at the lowest possible rate; creditors seek the highest rate. ...Such antagonism represents both a potential conflict of interest and a question of ability to render fair and adequate representation" when one group seeks to represent the other's interests. *Model Associates, Inc. v. U.S. Steel Corp.*, 88 F.R.D. 338, 339-40 (D.C. Ohio 1980). As a result, where there will be limited funds available to recover, bondholders and stockholders will be motivated to pursue conflicting strategies to protect their separate interests. *See, e.g., Harold Roucher Trust,* 2009 WL 1941864, at *2 (appointing separate plaintiffs to represent preferred and common stockholders of bankrupt company because, among other reasons, it was in the interest of the preferred but not the common stockholders to allow payment of defense costs from Directors & Officers' Liability Insurance proceeds.).

Likewise, the court in *In re Parmalat Sec. Litig.,* No. 04-CIV-0030 (S.D.N.Y. May 21, 2004), explained its conclusion that separate classes of bondholders and common stockholders were required to represent each group's divergent interests in the bankrupt defendant company:

> The problem of stocks versus bonds, in my view, is that inasmuch as…whatever pot of money is available someday to settle this case…will be finite, there is going to be an issue, both in negotiating the size of the pot and in whacking it up, as to the respective interests of stockholders and bondholders,…and I am sufficiently troubled by that that I think it inadvisable to allow a stock trader, a stockholder, alone to represent the entire class. So I am perfectly happy to have Hermes as lead plaintiff on behalf of the equity. But because of this concern, I think it appropriate to appoint also a lead plaintiff on behalf of the debt, the debt traders. …

S*ee* Hearing Transcript, *Southern Alaska Carpenters Pension Fund v. Bonlat Fin. Corp.,* No. 04-CIV-0030 (S.D.N.Y. May 21, 2004) – part of *In re Parmalat* – at 42-43 (attached hereto as Exh. D). Other courts have followed that reasoning. *See, e.g.*, *In re Livent, Inc. Noteholders Sec.*

*Litig*. 151 F.Supp.2d 371, 383 (S.D.N.Y. 2001) (related but separate noteholder and shareholder actions against bankrupt defendant); *see, also, Zirkin v. Quanta Capital Holdings, Ltd.*, No. 07 Civ. 0851 (RPP) (S.D.N.Y. May 10, 2007) (attached hereto as Exh. E)

Here, two separate classes would make complete sense. While the claims for the Stock Purchaser Class are based on fraud pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and cover material misstatements that span more than four years, the claims for the Bond Purchaser Class are not based on fraud pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 and arise from a set of Offering Materials related to OSG's registered public offering of the Notes. Accordingly, the Bond Purchaser Class' claims do not require it to allege or prove scienter or reliance, whereas the Stock Purchaser Class "requires the pleading of scienter in accordance with the stringent pleading requirements" and in order to obtain class certification, it "will have to establish through expert testimony the existence of an efficient market with respect to" the common stock. *Friedman*, 261 F.R.D. at 611 (noting the differences in the pleading requirements between the Securities Act class and the Exchange Act class.). Indeed, the Section 11 claims of the bondholders and Section 10(b) claims of the common stock holders may actually be antagonistic to one another, because the pleading of fraud in the Section 10(b) claim could trigger the complaint to "sound in fraud" for the Section 11 claims, thereby requiring the Section 11 plaintiffs to establish Defendant's scienter.

Further, whereas OSG common stock is widely traded on an efficient market, it is questionable at the class certification stage whether OSG noteholders will be able to "independently address the efficiency of the [Notes] market." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, No. 05 Civ. 1898 (SAS), 2006 WL 2161887, at *11 (S.D.N.Y. Aug. 1, 2006) (finding that the asset-backed securities did not trade in an efficient

10

market as they were infrequently traded, did not have analysts and market makers, and lacked "a causal relationship between unexpected news and an immediate response in the price of the Certificates."). *Id.* at *12. Specifically, although the common stock and the Notes both declined[2] after the filing of the bankruptcy on November 14, 2012, the Notes recovered nearly $13.00 or over 55% to close at $35.18 the day after the bankruptcy filing, in contrast to the common stock's price declining by more than 50%, demonstrating that the Notes and common stock reacted differently to the news of the bankruptcy.

To avoid such conflicts to stockholder investors, the Overseas Investor Group should be appointed as Lead Plaintiff for the Stock Purchaser Class, or be appointed Co-Lead Plaintiffs for the entire Action to ensure that the interests of stockholder investors in the Class are adequately protected.

**B.    The Overseas Investor Group Has the Largest Financial Interest**

As noted above, the Overseas Investor Group without question has the largest financial interest in the action among the competing movants for the Stock Purchaser Class. The Overseas Investor Group: (1) suffered the largest losses during the Class Period; (2) has the most retained shares of any competing movant; and (3) purchased the most OSG common stock of any competing movant. *See In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998); *Lax v. First Merch. Acceptance Corp.,* No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *17-*18 (N.D. Ill. Aug. 6, 1997). As such, the chart above demonstrates under the *Lax-Olsten* net loss calculation or LIFO accounting methodology, the Overseas Investor Group has the largest financial interest in this action. Indeed, with *Lax-Olsten* losses of $809,773, and *Dura* losses of

---

[2] On November 14, 2012, the Notes declined $4.585 or 16.6% to close at $23.00. As the common stock was halted on November 14, 2012, the reaction to the bankruptcy filing by the common stock was on November 15, 2012. Specifically, on November 15, 2012, the common stock declined $0.58 or 51%.

11

$445,040, the Overseas Investor Group has the largest financial interest of any of the competing movants.

Of the four *Lax-Olsten* factors, most courts agree that the losses suffered is the most important factor. *See Goldstein v. Puda Coal, Inc.*, 827 F.Supp.2d 348, 353-54 (S.D.N.Y. 2011) (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008)) ("Financial loss, the last factor, is the most important element of the test."); *Janbay*, 272 F.R.D. at 118-119. On this factor, the Overseas Investor Group's net losses ***exceed*** the losses of Crawford, the next competing movant under this measure, by ***$289,206***. The Overseas Investor Group's losses under *Dura **exceed*** Crawford's *Dura* losses by ***$376,190***. The only movant claiming larger losses than the Overseas Investor Group in this action is Hedaya, purporting to have suffered more than $2 million from its investments in OSG. However, Hedaya blew out its shares more than a year prior to the first alleged partial disclosure in October 2, 2012, foreclosing any possibility of it establishing loss causation in this action.

Significantly, the Overseas Investor Group has more retained shares than any competing movant. In light of the Supreme Court's ruling in *Dura Pharma., Inc. v. Broudo*, 544 U.S. 336 (2005), where it held that loss causation could only be alleged for shares held at the time of a corrective disclosure, courts have recognized the number of retained shares is the determinative factor in evaluating competing movants' financial interest in the litigation. *See Quan v. Advanced Battery Tech., Inc.*, No. 11 Civ. 2279 (CM), 2011 U.S. Dist. LEXIS 102723, at *6-7 (S.D.N.Y. Sept. 9, 2011); *Schueneman v. Arena Pharma., Inc.*, No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at *14 (C.D. Cal. Aug. 8, 2011) ("The Court adopts the retained share methodology, which looks to the number of retained shares at the end of the period."); *Applestein v. Medivation Inc.*, No. C 10-0098 MHP, 2010 U.S. Dist. LEXIS 98255, at *6 (N.D.

Cal. Sept. 20, 2010) ("When calculating the greatest financial interest, the court utilizes the retained share methodology, which primarily looks to shares brought during the class period that are retained at the end of the class period."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. Mar. 2, 2007) (noting that group had the most retained shares when in-and-out transactions were properly excluded, and appointing group lead plaintiff because it "had the greatest number of relevant net shares purchased, net funds expended, and suffered the greatest loss").[3]

Here, the Overseas Investor Group has a larger number of retained shares than Crawford. It purchased 175,206 shares and held 121,525 shares at the end of the Class Period. In contrast, Crawford only purchased 17,000 shares and retained those same shares at the end of the Class Period. The only other competing movant alleging a larger loss that purchased common stock is Hedaya, who as detailed above simply cannot establish loss causation in this action.

Accordingly, the Overseas Investor Group has the largest financial interest in the litigation and should be appointed lead plaintiff for the Stock Purchaser Class.

### 1. The Overseas Investor Group is a Small Cohesive Group

Preliminarily, aggregation is a non-issue given that the Overseas Investor Group need not aggregate losses to overcome a competing movant. Indeed, group members Kawula and Cummins have the largest and second largest *Dura* LIFO losses on OSG stock compared to any

---

[3] In addition to not crediting losses from "in/out" transactions, Courts have held that complete "in/out" traders, like Hedaya, are inadequate lead plaintiffs. *See Bensley v. Falconstor, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) (finding complete in/out trader inadequate); *see, also, In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at * 6 (N.D. Ill. Mar. 15, 2005) (finding that lead plaintiff presumption in favor of movant was rebutted, as the movant was an "in-and-out-trader")

individual movant before this court.[4] In any event, the Overseas Investor Group constitutes a proper group under the PSLRA. The PSLRA explicitly permits a "group of persons" to serve as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also McDermott Int'l, Inc. Sec. Litig.*, No 08 Civ. 9943 (DC), 2009 U.S. Dist. LEXIS 21539, at *7-8 (S.D.N.Y. Mar. 6, 2009).[5] Courts in this District have long accepted groups as Lead Plaintiff where they are relatively small and demonstrate that they can work effectively for the benefit of the Class. *See Freudenberg*, 2008 WL 2876373, at *4 (appointing a three-member group and noting that "[a] group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive.")

---

[4] *See, e.g., Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. 2009) ("it is not necessary for the members of the Akeena Investor Group to aggregate themselves in order to overcome the largest stake requirement - one of its members could meet that requirement by herself"); *Bruce v. Suntech Power Holdings Co. Ltd.*, No. CV 12-04061, 2012 WL 5927985, at *2-3 (N.D. Cal. Nov. 13, 2012) (appointing group of investors over institution because individual member of group had largest financial interest); *Sabbagh v. Cell Therapeutics, Inc.*, Nos. C10-414MJP, C10-480MJP, C10-559MJP, 2010 WL 3064427, at *7 (W.D. Wash. Aug. 2, 2010) ("The Court's confidence…is further bolstered by the fact that it does not appear that this group was assembled merely for the purpose of aggregating their losses in order to surpass the financial interests of any of the other applicants. In actuality, two of the members . . . have *individual* losses . . . which exceed the financial interests of all other applicants . . . .") (emphasis in original); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721, 2004 WL 5159061, at *5 (S.D. Cal. Jan. 5, 2004) (appointing group as lead plaintiff where one movant within group had largest losses as compared to competing movants: "[i]t makes no practical difference if Spear Capital [movant with largest losses in group] chooses to associate with other shareholders in order to further distance itself from the next proposed lead plaintiff"); *Petrie v. Electronic Game Card, Inc.*, Nos. SACV 10-0252, SACV 10-0258, 2010 WL 2292288, at *2 (C.D. Cal. June 4, 2010) (appointing group of three individual investors lead plaintiff where constituent member had largest loss as to any other competing individual: "This is not a case where individual investors use aggregation to push ahead of an individual investor whom, taken individually, who have a greater financial loss than them.")

[5] *See also Reimer v. Ambac Fin. Group, Inc.*, 2008 U.S. Dist. LEXIS 38729, at *7-8 (S.D.N.Y. May 9, 2008) (noting that the cases which have disallowed groups are the "minority view"); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) (recognizing that "the majority view hold[s] that investors may aggregate [losses]"); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 436 (S.D.N.Y. 2000) ("[t]he nomination of a group of investors as co-lead plaintiffs is specifically contemplated by the PSLRA.").

The Overseas Investor Group constitutes a small five-member group, a small enough number to be presumptively cohesive. Five-member groups are well within the acceptable limits of group size. *See Janbay*, 272 F.R.D. at 116 n.2, 120 (appointing ***seven***-member group plus an individual as co-lead plaintiff); *In re eSpeed,* 232 F.R.D., at 99and 103 (appointing five-member group); *Weltz v. Lee*, 199 F.R.D. 129, 130, 134 (S.D.N.Y. 2001) (appointing seven-member group); *In re Baan Co. Sec. Litig*., 186 F.R.D. 214 224-25 (D.D.C. 1999) (SEC advised courts that groups of up to five unrelated individuals are appropriate).

Here, the Overseas Investor Group consists of five members – a very manageable number – who can easily direct the action together. There is no question that the Overseas Investor Group will ensure the vigorous and efficient prosecution of this case. Thus, the Court can be assured that the Overseas Investor Group will effectively monitor and direct their counsel. As such, the Overseas Investor Group is an appropriate group under the PSLRA.

### 2. The Overseas Investor Group Otherwise Satisfies the Requirements of Rule 23

Under Rule 23(a)(3), typicality exists when the proposed lead plaintiff's claims and injuries arise from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. *See In re Bear Stearns Cos. Sec. Deriv. and ERISA Litig.,* No. 07-Civ-10453, 2008 U.S. Dist. LEXIS 106327, at *29 (S.D.N.Y. Dec. 29, 2008) (typicality established where claims "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."). The Overseas Investor Group's claims "are not antagonistic [to] or in conflict with those of the class . . . ." *See id*. at *4. Indeed, the group's interests are the same as those of other Class members. Because the Overseas Investor Group's claims are based on the same legal

theories and arise from the same events and course of conduct giving rise to the claims of other Class members, the typicality requirement of Rule 23(a)(3) is satisfied.

The Overseas Investor Group also satisfies the adequacy requirement of Rule 23(a)(4). Here, the Overseas Investor Group's interests are squarely aligned with those of the Class and their proposed Co-Lead Counsel is qualified to litigate the Class' claims. Accordingly, the adequacy requirement of Rule 23(a)(4) is satisfied. As such, there should be little dispute regarding its motion for appointment as Lead Plaintiff in this action.

C. **Lead Plaintiff's Selection of Co-Lead Counsel Should Be Approved**

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also In re Host Am. Corp. Secs. Litig.* 236 F.R.D. 102, 109 (D. Conn. 2006) ("Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class.") (citation omitted); *In re Luxottica Group, S.p.A. Sec. Litig.*, No. 01-CV-03285, 2004 U.S. Dist. LEXIS 21130, at *6-7 (E.D.N.Y. Oct. 22, 2004). Here, the Overseas Investor Group selected The Rosen Law, P.A. ("Rosen") and Glancy Binkow & Goldberg LLP ("Glancy") to serve as Co-Lead Counsel for the Class. As evidenced by the firms' résumés previously filed with the Court, co-lead counsel have extensive expertise and experience in the field of securities litigation and have successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors.

Accordingly, lead plaintiff's selection of co-lead counsel should be approved.

**CONCLUSION**

For the foregoing reasons, the Overseas Investor Group respectfully requests the Court to issue an Order: (1) consolidating the related actions; (2) appointing the Overseas Investor Group

as Lead Plaintiff for the Stock Purchaser Class; (3) approving the Rosen and Glancy firms as Co-Lead Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: January 14, 2013
New York, New York

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
Laurence Rosen (LR 5733)
Phillip Kim (PK 9384)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827

**GLANCY BINKOW & GOLDBERG LLP**
Michael M. Goldberg
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Movants and Proposed Co-Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on 14th day of January, 2013 a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Phillip Kim*
Phillip Kim