**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------ X

ROBERT PORZIO, Individually and on
Behalf of All Others Similarly Situated,

                              Plaintiff,

                    v.

OVERSEAS SHIPHOLDING GROUP, et al.,

                              Defendants.

------------------------------------------------------ X
------------------------------------------------------ X

BRUCE MYATT, Individually and on Behalf
of All Others Similarly Situated,

                              Plaintiff,

                    v.

MORTEN ARNTZEN, et al.,

                              Defendants.

------------------------------------------------------ X
------------------------------------------------------ X

INDIANA TREASURER OF STATE,
Individually and on Behalf of All Others
Similarly Situated,

                              Plaintiff,

                    v.

G. ALLEN ANDREAS III, et al.,

                              Defendants.

------------------------------------------------------ X

OPINION AND ORDER

12 Civ. 7948

12 Civ. 8547

12 Civ. 9363

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/1/13

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Plaintiffs bring three related putative federal securities class actions ("the OSG Securities Actions") against Overseas Shipholding Group, Inc. ("OSG" or the "Company"),[1] various officers thereof, underwriters, and auditors (together, "defendants").  Two of the actions are brought on behalf of purchasers of OSG common stock and allege violations of Section 10(b) and Rule 10b-5 and Section 20(a) of the Exchange Act of 1934 (the "Exchange Act").[2]  The third action is brought on behalf of purchasers of "OSG debt securities sold pursuant and/or traceable to [OSG's] $300 million public offering of 8.125% Senior Notes Due 2018 conducted on March 24, 2010," and alleges violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act").[3]

Three groups of plaintiffs remain in contention for appointment as

---

[1]    On November 14, 2012, OSG filed for protection under the federal bankruptcy laws.  *See In re Overseas Shipholding Group, Inc., et al.*, No. 12-20000 (Bankr. D. Del.).

[2]    *See Porzio v. Overseas Shipholding Group, Inc. et al.*, 12 Civ. 7948, Complaint ("*Porzio* Compl.") (Dkt. No. 1) (suit by purchasers of OSG common stock between April 28, 2008 and October 22, 2012); *Myatt v. Arntzen et al.*, 12 Civ. 8547, Complaint (Dkt. No. 1) (suit by purchasers of OSG common stock between March 1, 2010 and October 19, 2012).

[3]    *Indiana Treasurer of State v. Andreas et al.*, 12 Civ. 9363, Complaint ("*ITS* Compl.") (Dkt. No. 1).

lead plaintiff.  In addition, certain plaintiffs have moved to consolidate the actions. For the reasons discussed below, the actions are consolidated, the OSG Investor Group is appointed lead plaintiff group, and Robbins Geller Rudman & Dowd LLP is appointed lead counsel.

## II.    BACKGROUND

### A.    Facts[4]

OSG is a major international shipping company focused on global energy transportation markets, with leading positions in the crude oil tanker, product carrier and U.S. Flag markets, as well as recently entering the liquefied natural gas "LNG" business.[5]  On March 24, 2010, OSG conducted a $300 million public offering of 8.125% Senior Notes due 2018.[6]  Noteholder plaintiffs allege that the Offering Materials pursuant to which the Offering was conducted materially misstated Overseas' quarterly and annual financial statements for the

---

[4]       The facts in this section are taken from the *Porzio* and *ITS* Complaints and are presumed true for purposes of this motion.

[5]       *See Porzio* Compl. ¶ 3.  Defendant Morten Arntzen has been Chief Executive Officer ("CEO") and President of OSG since January 2004. *See id.* ¶ 17. Defendant Myles R. Itkin, Jr. has been Chief Financial Officer ("CFO") and Treasurer of OSG since 1995 and was promoted to Executive Vice President in 2006. *See id.* ¶ 18.

[6]       *See ITS* Compl. ¶ 19.

year 2009.[7]

On October 3, 2012, OSG filed a Form 8-K with the Securities and Exchange Commission ("SEC") notifying the SEC that certain tax issues had come to the Company's attention and that it would make additional disclosures upon review.[8] OSG's share price fell from a closing price of $7.08 on October 2, 2012, to a closing price of $6.82 on October 3, 2012.[9] On October 22, 2012, the OSG filed another 8-K announcing that "the Company's previously issued financial statements for at least the three years ended December 31, 2011 and associated interim periods, and for the fiscal quarters ended March 31 and June 30, 2012, should no longer be relied upon."[10]

Stockholder plaintiffs allege that in response to this announcement, OSG's stock price fell over sixty-two percent from a closing price of $3.25 on October 19, 2012 to a closing price of $1.23 on October 22, 2012.[11] Stockholder

---

[7] *See id.* ¶¶ 22-25.

[8] *See Porzio* Compl. ¶ 4; *see also ITS* Compl. ¶ 26.

[9] *See Porzio* Compl. ¶ 5.

[10] *Id.* ¶ 7. OSG also announced that it was considering "voluntary filing of a petition for relief to reorganize under Chapter 11 of the Bankruptcy Code." *Id. See also ITS* Compl. ¶¶ 28-29.

[11] *See Porzio* Compl. ¶ 9. Trading in the Company's securities reached its heaviest volume in at least five years on October 22, 2012. *See id.* OSG's credit ratings were also downgraded in response. *See also ITS* Compl. ¶ 29.

plaintiffs allege that the October 22 announcement will require restatement for the relevant periods "in order to properly account for tax issues and other false and misleading statements" and, as a result, putative class members "purchased OSG common stock at artificially inflated prices and thereby suffered significant losses and damages."[12]  Noteholder plaintiffs allege that at the close of business on November 20, 2012, the Notes were trading below twenty-five percent of their initial par value or seventy-five percent below the Offering price.[13]

## B.   Potential Lead Plaintiffs

Three groups of plaintiffs remain in contention for appointment as lead plaintiff:[14] (1) Abe Hedaya, Norma Hedaya, William Mills, Kristin Mondo (together, the "OSG Investor Group"), who allege that Abe and Norma Hedaya

---

[12]    *Porzio* Compl. ¶ 10.

[13]    *See ITS* Compl. ¶ 32.

[14]    Two contenders for appointment as lead plaintiff have formally withdrawn. *See* Notice of Withdrawal of Movant the Riley Group's Motion to be Appointed Lead Plaintiff and Approval of Lead Counsel (*Porzio* Dkt. No. 52); Notice of Non-Opposition of Paul Otto Koether IRA Rollover (*Porzio* Dkt. No. 56).  Three other contenders have acknowledged that they do not hold the largest financial interest and are therefore not presumptively proper lead plaintiffs.  *See* Response of Movant Lee McClennahan to Competing Motions for Appointment as Lead Plaintiff ("McClennahan Rep.") (*Porzio* Dkt. No. 57); [Irving Firemen's Relief and Retirement Fund's] Response to Motion for Appointment as Lead Plaintiff (*Porzio* Dkt. No. 53); *See* [Barrie Woolard and Steven Hyman's] Response to Motion for Appointment as Lead Plaintiff (*Porzio* Dkt. No. 54).

suffered $2,077,291.13 in losses,William Mills suffered $9,413.44 in losses and Kristin Mondo suffered approximately $33,260.45 in losses;[15] (2) Robert Kawula, Ben Reuben, Nikos Georgalakis, Patrick Cummins, and Douglas G. Fixter (together, the "Overseas Investor Group") who allege total losses of $809,773;[16] and (3) Stichting Pensioenfonds DSM Nederland ("DSM") and Indiana Treasurer of State ("ITS"), joined by Lloyd Crawford (together with DSM and ITS, the "DSM Group"), who allege approximately $1.3 million in losses.[17]  Four of the original movants also ask the Court to consolidate the OSG Securities Actions.[18]

---

[15]    Memorandum of Law in Support of the Motion of the OSG Investor Group for Appointment as Co-Lead Plaintiffs, Approval of Co-Lead Plaintiffs' Selection of Co-Lead Counsel and Consolidating Related Actions at 3 ("OSG Investor Mem.") (*Porzio* Dkt. No. 31).

[16]    *See* Memorandum of Law in Support of the Motion by the Overseas Investor Group to Consolidate the Related Actions, for Appointment as Lead Plaintiff and Approval of Counsel at 3 ("Overseas Investor Group Mem.") (*Porzio* Dkt. No. 34).

[17]    *See* Memorandum of Law in Support of Motion of [Stichting Pensioenfonds DSM Nederland and Indiana Treasurer of State] for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel at 2 ("DSM Mem.") (*Porzio*, Dkt. No. 48).

[18]    *See* Memorandum of Law in Support of the Motion of Lee McClennahan for Consolidation, Appointment as Lead Plaintiff and Approval of His Selection of Lead Counsel and Liaison Counsel (*Porzio* Dkt. No. 25); OSG Investor Mem.; Overseas Investor Group Mem.; Memorandum of Law in Support of Motion of Barrie Woolard and Steven Hyman as Lead Plaintiffs, Appointment of Counsel and Consolidation of Related Actions (*Porzio* Dkt. No. 37).  No movant opposes consolidation of the actions.

## III.   LEGAL STANDARD

### A.   Consolidation

Federal Rule of Civil Procedure 42(a) permits a court, in its discretion, to consolidate actions involving common questions of law or fact.  The Private Securities Litigation Reform Act ("PSLRA") states that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions . . . the court shall not make the [lead plaintiff] determination . . . until after the decision on the motion to consolidate is rendered."[19]

### B.   Appointment of Lead Plaintiff

The PSLRA sets forth the required procedure for determining who should be appointed lead plaintiff.[20]  The lead plaintiff should be the plaintiff "most capable of adequately representing the interests of class members" as determined by a two-step competitive process.[21]

The first step establishes as presumptive lead plaintiff the "person or group of persons" who meet(s) the following three criteria:  (1) the candidate must

---

[19]   15 U.S.C. § 78u-4(a)(3)(B)(ii).

[20]   *See id.* § 78u-4(a)(3)(B).

[21]   *See id.* § 78u-4(a)(3)(B)(i),(iii).

have "filed the complaint or made a motion in response to a notice;"[22] (2) the candidate must have "the largest financial interest in the relief sought by the class,"[23] and (3) the candidate must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."[24]

Once the presumptive lead plaintiff has been designated, members of the class have the opportunity to rebut the chosen lead plaintiff's presumptive status by proving either that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or that it "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."[25]  If the presumptive lead plaintiff is disqualified on these grounds, the candidate's position is forfeited and the court returns to the first phase to determine a new presumptive lead plaintiff and the process repeats itself until a suitable lead plaintiff is found. The lead plaintiff determination does not depend on the court's judgment of which party would be the best lead plaintiff for the class, but rather which candidate

---

[22]     *Id.* § 78u-4(a)(3)(B)(iii)(I)(aa).  It is undisputed that all of the movants meet this requirement for appointment as lead plaintiff.

[23]     *Id.* § 78u-4(a)(3)(B)(iii)(I)(bb).

[24]     *Id.* § 78u-4(a)(3)(B)(iii)(I)(cc).

[25]     *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa), (bb).

fulfills the requirements of the PSLRA.[26]

The lead plaintiff need not be an individual, but can comprise several investors.[27]  The PSLRA does not specify whether the "members" must be related in some fashion in order to qualify as an appropriate lead plaintiff group.  I have previously held that

> a group of unrelated investors should not be considered as lead plaintiff when that group would displace the institutional investor preferred by the PSLRA.  But where aggregation would not displace an institutional investor as presumptive lead plaintiff based on the amount of losses sustained, a small group of unrelated investors may serve as lead plaintiff, assuming they meet the other necessary requirements.[28]

---

[26]   *See In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) ("While the words 'most capable' seem to suggest that the district court will engage in a wide-ranging comparison to determine which plaintiff is best suited to represent the class, the statute defines the term much more narrowly.").

[27]   *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) (appointing a group of three individual investors as lead plaintiff).

[28]   *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 98-99 (S.D.N.Y. 2005).  *Accord Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416, 2007 WL 4526532, at *10-11 (S.D.N.Y. Dec. 21, 2007) (quoting *eSpeed, Inc.*).  *See generally In re Star Gas Sec. Litig.*, No. 04 Civ. 1766, 2005 WL 818617, at *5 (D. Conn. Apr. 8, 2005) ("The majority of courts considering the issue . . . allow[] a group of unrelated investors to serve as lead plaintiffs when it would be most beneficial to the class under the circumstances of a given case.").

In addition, the PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."[29]

## IV.   DISCUSSION

### A.   The Actions Should Be Consolidated

The OSG Securities Actions are all based on the same public statements and reports – in particular OSG's October 2012 disclosures.  The fact that certain claims are brought under the Exchange Act and others under the Securities Act does not outweigh the efficiency interest in consolidating securities cases involving identical factual allegations.[30]  I therefore order consolidation pursuant to Rule 42(a) of the OSG Securities Actions and any action arising out of the same operative facts and alleging causes of action under the PSLRA hereafter filed in or transferred to this Court.

---

[29]     15 U.S.C. § 78u-4(a)(3)(B)(v).

[30]     *See, e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 92 (S.D.N.Y. 2007) (ordering consolidation where actions contained overlapping factual allegations that "defendants' statements to the investing public misrepresented or omitted to state material facts about the financial status of [the defendants]"); *Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006) ("Consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports.") (internal quotation marks omitted); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced.") (internal citation omitted).

B.    **Lead Plaintiff**

1.    **The OSG Investor Group Is Not Qualified to Act as Lead Plaintiff**[31]

The OSG Investor Group *claim*s the largest financial interest in the outcome of the litigation, with the Hedayas alone alleging losses of over two million dollars on purchases of 95,000 shares of OSG Common Stock.[32]  However, the Hedayas made their purchases in July, 2010 and sold in November, 2011, which means that they sold their stock almost a year before the alleged fraud was discovered in October of 2012.[33]  The Supreme Court confirmed the "judicial consensus . . . that a person who 'misrepresents the financial condition of a

---

[31]    Three lead plaintiff movants have opposed the appointment of the OSG Investor Group on the grounds that the vast majority of its claimed financial interest is unrecoverable.  *See* McClennahan Rep. at 2, n.1 (recognizing that the DSM Group appears to have the largest financial interest); Memorandum of Law in Further Support of Motion for Appointment of [the DSM Group as] Lead Plaintiff and Approval of Selection of Lead Counsel at 8 ("DSM Rep.") (*Porzio* Dkt. No. 58);  Memorandum of Law in Further Support of the Motion by the Overseas Investor Group to Consolidate the Related Actions, for Appointment as Lead Plaintiff and Approval of Counsel and in Opposition to Competing Motions ("Overseas Group Rep.").

[32]    *See* Overseas Shipholding Group, Inc. Loss Chart, Ex. 3 to Declaration of Lawrence P. Kolker in Support of OSG Investor Group's Motion for Appointment as Co-Lead Plaintiffs ("Kolker Decl.") (showing Hedayas' losses).

[33]    *See id*.; Certification of Abe and Norma Hedaya, Ex. 2 to Kolker Decl.

10

corporation in order to sell its stock' becomes liable to a relying purchaser 'for the loss' the purchaser sustains 'when the facts . . . become generally known' and 'as a result' share value 'depreciate[s].'"[34]  The Court rejected the notion that plaintiffs could prevail "where a misrepresentation leads to an inflated purchase price but nonetheless does not proximately cause any economic loss."[35]

Because the Hedayas are "in and out" traders, meaning that they purchased the stock at the allegedly fraudulently inflated price and sold it before the corrective disclosure, there is a strong likelihood that their entire claimed losses will be unrecoverable, at least under the theory of fraud set forth in the various complaints, which is based entirely on the October 2012 disclosures.[36]  No partial corrective disclosures are alleged that would render use of the LIFO methodology

---

[34]      *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344 (2005) (quoting Restatement (Second) of Torts § 548A, Comment b, at 107 (1976)).  *Dura* gave rise to the "last-in-first-out" or "LIFO" methodology which considers only "the number of shares purchased during the class period that are retained at the end of the class period."

[35]      *Id.* at 346.

[36]      *See Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203, 2012 WL 2025850, at *13 (S.D.N.Y. May 31, 2012) (because LIFO method of calculating financial interest "excludes 'in-and-out' transactions . . . [a]ny gain or loss due to such transactions . . . should be excluded from the PSLRA loss calculus.").

of loss improper.[37]  Even if the alleged losses could, on some theory, establish the

greatest financial interest, the OSG Investor Group cannot make the requisite

"preliminary showing" that it will satisfy the typicality and adequacy requirements

of Rule 23.[38]  At the very least, the OSG Investor Group is subject to "unique

---

[37]      *See In re General Elec. Secs. Litig.*, No. 09 Civ. 1951, 2009 WL 2259502, at *4 (S.D.N.Y. Jul. 29, 2009) (declining to disqualify lead plaintiff based on *Dura*/LIFO calculation because "[l]oss causation 'does not require full disclosure and can be established by partial disclosure during the class period which causes the price of shares to decline.'") (quoting *Montoya v. Mamma.com Inc.*, No. 05 Civ. 2313, 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005). Although the OSG investor group alleges in its reply that OSG issued a press release in August 2, 2011 announcing Second Quarter results and the decision to reduce the annual dividend rate in order to "preserve the strength of [OSG's] balance sheet," *see* Reply Memorandum of Law in Support of Motion to Appoint [the OSG Investor Group] Lead Plaintiff at 7 ("OSG Investor Group Rep.") (*Myatt* Dkt. No. 25), these are not part of the allegations in the Complaints on which this Court's decision is based.

[38]      Typicality is established where each class member's claim "arises from the same course of events, *and each class member makes similar legal arguments to prove the defendant's liability*." *Davidson v. E*Trade Fin. Corp.*, No. 07 Civ. 10400, 2008 U.S. Dist. LEXIS, at *14 (S.D.N.Y. July 16, 2008) (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992))) (emphasis added).  *Accord In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 39-40 (2d Cir. 2009) (question whether "in-and-out traders will be able to show loss causation is relevant to Rule 23(a)," which requires a court to show that a class representative "is both an adequate and typical representative of the class and not subject to any 'unique defenses which threaten to become the focus of the litigation'").  *See also Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) (holding that "the Fund has failed to demonstrate that it will be an adequate lead plaintiff because it was a total in-and-out trader and may be unable to demonstrate loss causation"); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (holding that an investor does not satisfy the

defenses that render [them] incapable of adequately representing the class," thus rebutting any presumptive lead plaintiff status.[39]  The OSG Investor Group is therefore disqualified as lead plaintiffs in the OSG Securities Actions.[40]

### 2.    The DSM Group Is Qualified to Act as Lead Plaintiff

The movant with the next largest financial interest is the DSM Group, which alleges a financial interest of approximately one million dollars.  The group is composed of DSM and Indiana, two institutional investors whose alleged losses arise out of their purchase of OSG Notes, and Lloyd Crawford, an individual investor whose alleged losses resulted from his investment in OSG stock.[41]  DSM's alleged losses alone total approximately $640,000.[42]  The DSM Group alleges that Crawford's purchase of OSG common stock resulted in losses in excess of

---

adequacy or typicality requirements of Rule 23 when "it faces unique legal issues that other class members do not").

[39]    *In re Vecco Instruments, Inc.*, 233 F.R.D. 330, 333-34 (S.D.N.Y. 2005) (investor who sold stock prior to any corrective disclosure would "at the very least, [be] subject to a unique defense").

[40]    Once the Hedayas's losses have been excluded from the OSG Investor Group's alleged loss the financial interest is reduced to less than $43,000.  *See* OSG Investor Mem. at 2.

[41]    *See* DSM Rep. at 8

[42]    *See id.* at 3.

$500,000[43] although his LIFO losses are only $68,000.[44]

The DSM Group has made a preliminary showing that it satisfies the adequacy and typicality requirements of Rule 23 for the purposes of appointment as lead plaintiff.  The DSM Group, which is comprised of both noteholders and stockholders, does not appear to "have interests that are antagonistic to the class that [it] seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class."[45]  The DSM Group alleges that its members "purchased OSG securities and were harmed by the omitted and/or misrepresented material facts."[46]  Its claims arise from the factual predicates that form the basis for the OSG Securities Actions.  The DSM Group also avers that it is committed to "maximizing the recovery for the class consistent with good faith advocacy."[47]

No evidence has been presented that the DSM Group is subject to

---

[43]    *See* Joint Declaration [of the DSM Group] in Further Support of Motion for Appointment as Lead Plaintiff at 2, Ex. B to DSM Rep. ("DSM Decl.").

[44]    *See* Overseas Investor Group Rep. at 5.

[45]    *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173-74 (S.D.N.Y. 2010) (citations omitted).  *See also infra* Part III.B.3.

[46]    DSM Mem. at 3.

[47]    DSM Rep. at 8.

unique defenses or anything that otherwise rebuts its presumptive status as lead plaintiff.  Therefore, the DSM Group is appointed lead plaintiff of the OSG Securities Actions and its choice of Robbins Geller Rudman & Dowd LLP is approved.

### 3.   It Is Not Necessary to Appoint a Separate Lead Plaintiff for OSG Common Stock Purchasers

The group with the third largest claimed financial interest in the case – $810,000 – is the Overseas Investor Group.  While they acknowledge that they do not have the largest financial interest in the case, they argue that "[i]n light of OSG's bankruptcy filing, there are clear conflicts between bondholders and stockholders, as bondholders have rights to the assets of the estate, in contrast to the defrauded shareholders whose interests are wholly opposed to those of the estate."[48]  They argue further that "when there are questions as to 'whether the plaintiffs share legal theories and whether potential conflicts exist between a potential lead plaintiff and absent class members,'" courts should appoint separate lead plaintiffs to represent the divergent interests."[49]

Courts have frequently found that a stockholder can adequately

---

[48]    Overseas Group Rep. at 3.

[49]    *Id.* at 6 (quoting *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 438 (S.D. Tex. 2010)).

represent a bondholder and vice versa, even where one set of claims arises under

the Securities Act and another under the Exchange Act.[50]  The Overseas Investor

Group has not argued convincingly that the bondholders' interest in OSG's

bankruptcy estate will undermine their ability or willingness to forcefully advocate

the PSLRA claims at issue in this litigation.[51]  Moreover, the DSM Group contains

a stockholder – Lloyd Crawford – whose net loss of approximately $68,000 under

the LIFO formula – is sufficient to ensure that he will adequately represent the

---

[50]     *See e.g.*, *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13,
20 (D.D.C. 2006)  (rejecting argument that subclass should be created because
options purchasers "might perhaps seek a different litigation strategy to maximize
their recovery");  *In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 98 (D.Conn.
2006) (rejecting argument that because one lead plaintiff had traded almost
exclusively in put options, he was an unsuitable representative for members who
traded in common stock ); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392,
422 (S.D.N.Y. 2003) (holding that the lead plaintiff, a stockholder, had standing to
assert Section 11 claims on behalf of investors in WorldCom's note offerings
where "claims addressed specifically to the [note] offerings rely on the same
course of conduct that underlies the claims addressed more generally to
WorldCom's securities . . . ."); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 445
(S.D.Tex. 2002) ("[C]ourts have repeatedly concluded that stock purchasers can
represent purchasers of debt instruments and vice versa in the same action.").

[51]     *See* OSG Investor Group Rep. at 9 (The Overseas Investor Group
"advances a series of generic and speculative allegations concerning the potential
for intra-class conflict between OSG common stock and bondholders;
considerations which are wholly inappropriate at this stage and should be left for
class certification.").

stockholders in the litigation.[52]  Finally, no other stockholder has raised concerns

about being represented largely by noteholder institutional investors.[53]  Absent a

clear threat that the DSM group would not adequately represent the stockholders,

creation of a subclass with a separate lead plaintiff would undermine the PSLRA's

goal of centralizing control over and responsibility for the litigation.[54]

## V.    CONCLUSION

For the foregoing reasons, the OSG Securities Actions and any action

arising out of the same operative facts and alleging causes of action under the

PSLRA hereafter filed are consolidated for pre-trial and trial purposes under the

caption "In re OSG Securities Litigation," Master File Number 12 Civ. 7948.  The

DSM Group is appointed Lead Plaintiff in the OSG Securities Actions.  Robbins

---

[52]     *See* Overseas Investor Group Rep. at 5. The greatest LIFO loss
suffered by a single plaintiff in the Overseas Investor Group is $162,000. *See id.*
Crawford's net loss is $520,567.  *See id.*

[53]     In fact, one stockholder appeared to put his support behind DSM
Group as lead plaintiff over the OSG Investor Group.  *See* McClennahan Mem. at 2
(raising problems with the OSG Investor Group, and stating that, in his view, the
DSM Group was the group with the greatest financial loss and therefore, the
presumptive lead plaintiff).

[54]     *See e.g.*, *In re Enron Corp. Sec. Litig.*, 206 F.R.D. at 451 (rejecting
several proposals for subclasses in Enron on the grounds that the PSLRA
"authorizes the appointment of one Lead Plaintiff or small cohesive group for a
single class"); *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 479–80 (D.N.J. 1998)
(reasoning that creating a subclass "would injure the purpose of the PSLRA by
fragmenting the plaintiff class and decreasing client control").

Geller Rudman & Dowd LLP is appointed Lead Counsel.  A conference is

scheduled for February 12, 2013 at 4:30 p.m. in courtroom 15C.  The Clerk of the

Court is directed to close these motions (documents no. 24, 27, 30, 33, 36, 39, 43,

and 47 in 12 Civ. 7948; and documents no. 11, 14, and 17 in 12 Civ. 8547).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            February 1, 2013

18

**- Appearances -**

**For Plaintiff Robert Porzio:**

Giti Baghban, Esq.
11 Camelia Court
Lawrenceville, NJ 08648
(212) 545-4747

Gregory M. Nespole, Esq.
Malcolm T. Brown, Esq.
Lawrence P. Kolker, Esq.
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, NY 10017
(212) 545-4657

Jason M. Leviton, Esq.
Berman DeValerio
One Liberty Square, 8th Floor
Boston, MA 02109
(617) 542-8300

Jeffrey C. Block, Esq.
Block & Leviton LLP
155 Federal Street, Suite 1303
New York, NY 10013
(617)-398-5600

Joseph P. Guglielmo, Esq.
Scott Scott, L.L.P.
405 Lexington Avenue
New York, NY 10174
(212) 223-6444

Steven P. Harte, Esq.
Jones Day
222 East 41st Street

19

New York, NY 10017
(212) 326-3687

**For Plaintiff Bruce Myatt and Indiana Treasurer of State:**

Samuel H. Rudman, Esq.
David A. Rosenfeld, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100

**For Movant Lee McClennahan:**

Curtis Victor Trinko, Esq.
Law Offices of Curtis V. Trinko, LLP
16 West 46th Street, Seventh Floor
New York, NY 10036
(212) 490-9550

**For Movant OSG Investor Group:**

Lawrence Paul Kolker, Esq.
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, NY 10016
(212) 545-4600

**For Movant Overseas Investor Group:**

Phillip C. Kim, Esq.
The Rosen Law Firm P.A.
350 5th Avenue, Suite 5508
New York, NY 10118
(212) 686-1060

**For Movants Barrie Woolard and Steven Hyman:**

Kenneth Mark Rehns, Esq.
Cohen Milstein Sellers & Toll P.L.L.C.
88 Pine Street
New York, NY 10005
(212) 838-7797

**For Movant the Riley Group:**

Thomas James McKenna, Esq.
Gainey & McKenna, LLP
440 Park Avenue, South 5th Floor
New York, NY 10016
(212) 983-1300

**For Movant Paul Otto Koether IRA Rollover:**

John Christopher Browne, Esq.
Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1398

**For Movant the DSM Group:**

David Avi Rosenfeld, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100

**For Movant Irving Firemen's Relief and Retirement Fund:**
**PRO SE**

21

**For Defendant Overseas Shipholding Group, Inc.:**

Lewis J. Liman, Esq.
Elizabeth Vicens, Esq.
Cleary Gottlieb Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000

**For Defendant Morten Arntzen**

Scott B. Schreiber, Esq.
Craig A. Stewart, Esq.
Arnold & Porter
Thurman Arnold Building
555 Twelfth Street, N.W.
Washington, DC 20004-1206
(202) 942-5000

**For Defendant Myles R. Itkin:**

David H. Kistenbroker, Esq.
Joni S. Jacobsen, Esq.
Ashley J. Burden, Esq.
Dechert LLP
115 S.Lasalle Street
Chicago, IL 60661
(312) 646-5800