UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re OSG SECURITIES LITIGATION | Master File No. 1:12-cv-7948-SAS |
| This Document Related To:<br><br>    ALL ACTIONS. |  |

**THE UNDERWRITER DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED
AMENDED COMPLAINT**

**SHEARMAN & STERLING LLP**
Stuart J. Baskin
Adam S. Hakki
Christopher R. Fenton
599 Lexington Avenue
New York, New York  10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

*Attorneys for the Underwriter
Defendants*

## **TABLE OF CONTENTS**

                                                                                                                                                           **Page**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS .............................................................................................................2

        A.        The 2010 Senior Notes Offering................................................................2

        B.        The 2012 Announcement that OSG Is Reviewing a Potential Tax Issue ...........................................................................................................5

        C.        Plaintiffs' Allegations .................................................................................6

ARGUMENT ...................................................................................................................................7

     I.        THE UNDERWRITERS ARE EXEMPT FROM LIABILITY FOR THE CLAIMS IN THIS ACTION .................................................................................7

     II.       PLAINTIFFS' CLAIMS ARE ALSO SUBJECT TO DISMISSAL BECAUSE NEGATIVE CAUSATION IS ESTABLISHED ON THE FACE OF THE COMPLAINT .................................................................................12

CONCLUSION..............................................................................................................................14

# **TABLE OF AUTHORITIES**

## **CASES**

*In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832 (N.D. Tex. 2005) ......................................... 13

*Blackmoss Invs. Inc. v. ACA Capital Holdings, Inc.*, 2010 WL 148617
   (S.D.N.Y. Jan. 14, 2010) ............................................................................................................ 12

*In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404 (S.D.N.Y. 2009) ................. 13

*In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................... 9, 10

*Escott v. BarChris Constr. Corp.*, 283 F. Supp. 643 (S.D.N.Y. 1968) ............................................ 8

*Feyko v. Yuhe Int'l, Inc.*, 2013 WL 816409 (C.D. Cal. Mar. 5, 2013) ................................. 8, 9, 10

*John Nuveen & Co. v. Sanders*, 450 U.S. 1005 (1981) ................................................................... 7

*Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571 (S.D.N.Y. 2007) ......................................................... 2

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ............................................. 8

*Phillips v. Kidder, Peabody & Co.*, 933 F. Supp. 303 (S.D.N.Y. 1996) ...................................... 10

*Schuler v. NVIS Intellimedia Tech. Grp., Inc.*, 2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) ...... 12

*In re Software Toolworks, Inc. Sec. Litig.*, 50 F.3d 615 (9th Cir. 1994) ..................................... 8, 9

*In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584
   (S.D.N.Y. 2011) ........................................................................................................................ 12

*In re Worldcom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628 (S.D.N.Y. 2004) ............................... 10, 11

*In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407 (9th Cir. 1994) .......................................... 8, 10

## **STATUTES**

15 U.S.C. § 77k ........................................................................................................................ 7, 12

15 U.S.C. § 77l ......................................................................................................................... 8, 12

Defendants Citigroup Global Markets Inc., Deutsche Bank Securities Inc., DNB Markets, Inc. (f/k/a DnB NOR Markets, Inc.), Goldman, Sachs & Co., HSBC Securities (USA) Inc., ING Financial Markets LLC, and Morgan Stanley & Co. LLC (f/k/a Morgan Stanley & Co. Incorporated) (collectively, the "Underwriter Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the Consolidated Amended Complaint ("CAC") (Docket No. 78) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

Plaintiffs' claims arise entirely from Overseas Shipholding Group, Inc.'s ("OSG" or "the Company") accounting for income tax liabilities audited and approved by not one, but two, of the "Big Four" accounting firms. The Underwriter Defendants, whose alleged liability is confined to a single bond offering in March 2010, are not alleged to have been responsible for the accounting decisions at issue. Nor could they have been under settled law. Rather, as Plaintiffs affirmatively plead, both of the Company's independent auditors consented to their respective designation as an accounting and auditing "expert" upon which the Underwriter Defendants could properly rely.

The Securities Act of 1933 (the "Securities Act") does not require underwriters of securities offerings to duplicate the work of the issuer's independent auditor in order to satisfy their statutory obligations. Indeed, absent "red flags" as to audited information, the Underwriter Defendants have no duty to investigate the contents of audited financials at all. Plaintiffs do not allege the existence of even one "red flag" concerning OSG's accounting or financial statements at the time of the offering. To the contrary, the CAC is completely silent on the underwriters and underwriting process, save for boilerplate allegations entitled to no credit from this Court. Because Plaintiffs base their case entirely on a single, expertised tax accounting issue, yet fail

entirely to allege the existence of "red flags" as to that issue, their claims against the Underwriter Defendants should be dismissed.

Even assuming that the Underwriter Defendants could be liable for OSG's allegedly improper accounting for its income tax liabilities, Plaintiffs' claims still would be subject to dismissal because the Underwriter Defendants' negative causation defense is established on the face of the complaint. The CAC affirmatively alleges that only 2% of the Company's total tax liability ($9.2 million out of $435 million) arose during the three years (2007-2009) covered by the offering materials for the March 2010 offering. According to Plaintiffs, more than 90% ($400 million) arose thereafter in years 2010-2011, with the remainder arising prior to the years included in the Offering Materials. Plaintiffs do not – and, of course, cannot – allege that a $9.2 million loss caused the Company's bankruptcy and resulting Senior Note price decline.

The Court should dismiss the claims against the Underwriter Defendants in their entirety with prejudice.

## STATEMENT OF FACTS

**A.**   *The 2010 Senior Notes Offering*

On March 24, 2010, OSG completed a $300 million offering of 8.125% senior notes due 2018 (the "Senior Notes Offering") underwritten by the Underwriter Defendants. (CAC ¶¶ 1, 11, 15.)[1] The offering was made pursuant to a shelf registration statement and prospectus dated March 22, 2010, and a prospectus supplement dated March 24, 2010 (together, the "Offering Materials"). (*Id.* ¶ 48.)

---

[1] The facts herein are taken from the allegations of the CAC (which are treated as true solely for purposes of this motion to dismiss) and documents referred to or relied upon therein, including the Offering Materials (as defined herein), which may be properly considered by the Court in deciding this motion to dismiss. *See Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571, 578 (S.D.N.Y. 2007).

The Offering Materials incorporated, among other things, the Company's Annual Report on Form 10-K for the year ended December 31, 2009, which included OSG's financial statements for the years ended December 31, 2007, 2008 and 2009, all of which had been audited by Big Four accounting firms. (*Id.* ¶ 52.) The 2007 and 2008 financial statements were audited by defendant Ernst & Young ("E&Y"). (*Id.* ¶ 12.) The 2009 financial statements were audited by defendant PricewaterhouseCoopers LLP ("PwC"). (*Id.* ¶ 13.)

E&Y had a long-standing relationship with OSG spanning nearly four decades, serving as OSG's independent auditor from the time the Company was organized in 1969 through 2009. (*Id.* ¶¶ 72-73.) In addition, E&Y served as the Company's tax advisor. (*Id.*) According to the CAC, E&Y has "'one of the world's most globally-coordinated tax practices, with a network of 28,000 professionals in more than 120 countries who offer leadership in all tax disciplines, including business tax, indirect tax, international tax, transactional tax, and tax-related issues associated with human capital . . . .'" (*Id.*) OSG engaged PwC in 2009 to serve as independent auditor. (*Id.* ¶ 74.) Like E&Y, PwC not only provided the Company with accounting and audit-related services, but also tax advice, receiving substantial fees for the tax-related services in 2009. (*Id.*)

The Offering Materials incorporated E&Y's unqualified audit opinion on the Company's financial statements for the years ended December 31, 2007 and 2008. (*Id.* ¶ 12; OSG, Form S-3/A (Mar. 22, 2010), attached to Hakki Decl. as Ex. A ("Registration Statement") at 9.)[2] In its report, E&Y explained that it had audited the Company's consolidated financial statements for the years ended December 31, 2007 and 2008 and opined that the Company's financial statements "'present fairly, in all material respects, the consolidated financial position of

---

[2] All citations to the "Hakki Decl." refer to the Declaration of Adam S. Hakki in Support of the Underwriter Defendants' Motion to Dismiss, dated April 19, 2013, which is filed herewith.

3

Overseas Shipholding Group, Inc. and subsidiaries at December 31, 2008, and the consolidated results of their operations and their cash flows for each of the two years in the period ended December 31, 2008, in conformity with U.S. generally accepted accounting principles.'" (CAC ¶ 75 (quoting OSG, Annual Report (Form 10-K) (Mar. 1, 2010), attached to Hakki Decl. as Ex. B ("2009 10-K") at 104).)

E&Y expressly consented to the incorporation of its unqualified audit opinion relating to its audit of the Company's 2007 and 2008 financial statements in the Offering Materials, and also consented to its designation as an accounting and auditing "expert." (CAC ¶¶ 12, 97; Registration Statement at Ex. 23.1.) E&Y's audit opinion was thus incorporated into the Offering Materials in reliance on E&Y's expertise in accounting and auditing. (*Id.*)

The Offering Materials incorporated PwC's unqualified audit opinion on OSG's financial statements for the years ended December 31, 2009. (CAC ¶ 13; Registration Statement at 9.) In its report, PwC explained that it had audited OSG's consolidated financial statements for the year ended December 31, 2009 and opined that the Company's financial statements "'present fairly, in all material respects, the financial position of Overseas Shipholding Group, Inc. and its subsidiaries at December 31, 2009, and the results of their operations and their cash flows for the period ended December 31, 2009 in conformity with accounting principles generally accepted in the United States of America.'" (CAC ¶ 75 (quoting 2009 10-K at 103).) PwC also explained that it had audited OSG's internal controls over financial reporting and opined that "'the Company maintained, in all material respects, effective internal control over financial reporting as of December 31, 2009, based on criteria established in Internal Control – Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission . . . .'" (CAC ¶ 75 (quoting 2009 10-K at 103).)

4

PwC expressly consented to the incorporation of its unqualified audit opinion relating to its audit of the Company's 2009 financial statements and internal controls in the Offering Materials, and also consented to its designation as an accounting and auditing "expert." (CAC ¶¶ 13, 97; Registration Statement at Ex. 23.2.) PwC's audit opinion was thus incorporated into the Offering Materials in reliance on PwC's expertise in accounting and auditing. (*Id.*)

**B.**     *The 2012 Announcement that OSG Is Reviewing a Potential Tax Issue*

On October 3, 2012, OSG publicly filed a Form 8-K disclosing that defendant G. Allen Andreas III had resigned from the Company's Board of Directors because of a disagreement he had with the Board as to the process it was undertaking in reviewing a potential tax issue. (CAC ¶ 40; OSG, Form 8-K (Oct. 3, 2012), attached to Hakki Decl. as Ex. C ("October 3 8-K") at Item 5.02.) According to the 8-K, the potential tax issue arose from the fact that the Company is domiciled in the United States and has substantial international operations, and relates to interpretation of certain provisions in the Company's loan agreements. (CAC ¶ 40; October 3 8-K at Item 5.02.) In his letter, Mr. Andreas urged the Board to report the potential tax issue to PwC, the Company's independent auditor and tax advisor. (October 3 8-K at Ex. 99.1.) In response, defendant Michael J. Zimmerman, the Chairman of the Board, confirmed that the Board had already begun such discussions with PwC. (October 3 8-K at Ex. 99.2.)

On October 22, 2012, OSG disclosed that as a result of its ongoing review, the Audit Committee had concluded that the Company's previously issued financial statements for at least the three years ended December 31, 2011 and associated interim periods, and for the fiscal quarters ended March 31 and June 30, 2012, "'should no longer be relied upon.'" (CAC ¶ 41 (quoting OSG, Form 8-K (Oct. 22, 2012), attached to Hakki Decl. as Ex. D ("October 22 8-K") at Item 4.02).) OSG further stated that it was "'continuing its review processes, including determining whether a restatement of those financial statements may be required, and the nature

5

and amount of any potential restatement.'" (CAC ¶ 41 (quoting October 22 8-K at Item 4.02).) OSG also announced that it was "'evaluating its strategic options,'" including commencing a Chapter 11 reorganization (which it ultimately did on November 14, 2012). (CAC ¶¶ 41-42 (quoting October 22 8-K at Item 4.02).)

As of this date, OSG still has not disclosed whether it, in fact, had an undisclosed tax problem. Nor has it determined whether a restatement is required. Rather, the Company has stated that its review of the tax issue is ongoing. (CAC ¶ 45.)[3] The IRS nevertheless has filed a proof of claim in OSG's bankruptcy proceedings asserting that OSG owes approximately $435 million in back taxes. (*Id.* ¶ 47.) According to the IRS and Plaintiffs' allegations, nearly that entire amount is attributable to tax periods arising *after* the Senior Notes Offering was completed. (*Id.*) Specifically, the IRS claims that OSG owes in total $435 million, of which $400 million covers tax years 2010 and 2011. (*Id.*) The IRS claims that OSG owes only $9.2 million of the $435 million for the three fiscal years ended December 31, 2007, 2008 and 2009 covered by the Offering Materials. (*Id.*)

C. *Plaintiffs' Allegations*

Plaintiffs assert claims under Section 11 of the Securities Act against all defendants, including certain of OSG's current and former directors and officers (the "Individual Defendants"), E&Y, PwC and the Underwriter Defendants, as well as claims under Section 12(a)(2) of the Securities Act against the Individual Defendants and the Underwriter Defendants.

The Securities Act claims are based on Plaintiffs' allegations that the Offering Materials "materially misstated OSG's credit for federal income taxes, its then current and deferred income

---

[3] To assist in its review, the Company retained PwC and Deloitte Tax LLP. (Order, *In re Overseas Shipholding Group, Inc., et al.*, Case No. 12-20000 (PJW) (Bankr. D. Del., filed Mar. 21, 2013) (D.I. 1086); CAC ¶ 45.)

6

tax asset and liability amounts and its related income tax disclosures," because the Company mistakenly concluded that income earned by Overseas International Inc. ("OIN"), a foreign subsidiary that indirectly owned all of the Company's international flag vessels, was not subject to U.S. taxation. (CAC ¶ 51.) Plaintiffs allege that OIN's income was subject to U.S. taxation because OIN was a party to and jointly and severally liable for the amounts borrowed by OSG under certain credit facilities, and that, pursuant to Section 956 of the Internal Revenue Code, OIN's guarantee to repay loans made to OSG triggered a deemed distribution of OIN's income to OSG for tax purposes. (*Id.* ¶¶ 25-38.)

Plaintiffs expressly allege that E&Y and PwC were the experts responsible for auditing OSG's accounting for income taxes and expressly consented to serve as experts with respect to the Senior Notes Offering. (*Id.* ¶¶ 12-13, 56, 72-89, 97-100.) The CAC is silent as to the Underwriter Defendants, other than to identify them and allege, in broad and conclusory terms, that they failed to conduct a reasonable investigation. (*Id.* ¶¶ 11, 96, 107.) No "red flags" of any kind are alleged to have arisen prior to the Senior Notes Offering.

## ARGUMENT

**I. THE UNDERWRITERS ARE EXEMPT FROM LIABILITY FOR THE CLAIMS IN THIS ACTION**

The Securities Act protects from liability underwriters that rely on portions of the registration statement and prospectus prepared or audited by experts where the underwriters "had no reasonable ground to believe and did not believe . . . that the statements therein were untrue." *See* 15 U.S.C. § 77k(b)(3)(C). It is settled that an accountant qualifies as an "expert" and that underwriters are entitled to rely on audited financial statements and the accounting judgments and opinions of an independent auditor. *See John Nuveen & Co. v. Sanders*, 450 U.S. 1005, 1010 (1981) (Powell, J., dissenting from denial of cert.) (the reliance defense "is in the

7

[Securities] Act because, almost by definition, it *is* reasonable to rely on financial statements certified by public accountants"); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994) (independent auditor's "*accounting decisions* . . . represent precisely the type of 'certified' information on which section 11 permits non-experts to rely").

Therefore, an underwriter's reliance on audited financial statements and the opinions of expert accountants is *per se* reasonable, unless the underwriter is confronted with "red flags" calling into question the reliability of the financials. *See, e.g.*, *Escott v. BarChris Constr. Corp.*, 283 F. Supp. 643, 697 (S.D.N.Y. 1968). In the absence of "red flags," an underwriter "need not conduct due diligence into the 'expertised' parts of a prospectus, such as certified financial statements," and cannot be held liable for misstatements or omissions. *In re Software Toolworks, Inc. Sec. Litig.*, 50 F.3d 615, 623 (9th Cir. 1994). *See Feyko v. Yuhe Int'l, Inc.*, 2013 WL 816409, at *8 (C.D. Cal. Mar. 5, 2013) ("underwriters occupy a special place in Section 11 jurisprudence because they are allowed to rely on auditors' work, absent red flags").[4]

The Underwriter Defendants are entitled to raise this reliance on accountants defense on a motion to dismiss because its applicability is plain on the face of the CAC. *See, e.g.*, *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."); *Feyko*, 2013 WL 816409 (granting motion to dismiss Section 11 claims against the underwriters where complaint

---

[4] Similarly, under Section 12(a)(2), an underwriter is not liable for a misstatement or omission in a prospectus where "he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission." 15 U.S.C. § 77l(a)(2). The standard under Section 12(a)(2) "is similar, if not identical," to the standard under Section 11. *Software Toolworks*, 50 F.3d at 621.

8

alleged that the auditors were experts, but failed to allege "red flags");[5] *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1175, 1182 (C.D. Cal. 2008) (same).

The CAC explicitly alleges that the 2007, 2008 and 2009 audited financial statements were incorporated by reference in the Offering Materials, and that these financial statements (as well as PwC's report confirming the adequacy of OSG's financial controls) were expressly incorporated in reliance on E&Y and PwC's expertise. (CAC ¶¶ 12-13.) The CAC also affirmatively alleges that E&Y and PwC's accounting and auditing expertise encompassed tax issues, and that, in connection with their respective audits, E&Y and PwC were specifically required to audit the Company's accounting for income taxes, (*id.* ¶¶ 56, 72-89), which was a "critical accounting policy" (*id.* ¶¶ 74, 79). Further, under GAAP's Accounting Standards Codification Section 740, the auditors were required to confirm that the Company's "financial statements properly reflect the tax effect of all transactions that have been reported in such statements, including the tax effects that are taxable or deductible in the current reporting period, as well as tax effects that will lead to taxable income or tax deductions in future periods." (*Id.* ¶ 56.)[6]

Any tax accounting errors were thus the product of expert-audited accounting determinations, classic examples of expertised determinations upon which underwriters are entitled to rely under the Securities Act. *See, e.g.*, *Software Toolworks*, 50 F.3d at 624

---

[5] Although the reliance defense applies equally to claims asserted under Section 11 and Section 12(a)(2), the underwriter defendants in *Feyko* did not argue for dismissal of the Section 12(a)(2) claims on that ground. 2013 WL 816409 at *6-9.

[6] According to Plaintiffs, E&Y and PwC both had extensive knowledge of OSG's business and unique corporate structure, fully understood Section 956's requirements, and, under GAAS AU Sections 330 and 337, should have reviewed the Company's loan guarantees as part of their respective audits. (CAC ¶¶ 73-74, 79, 83-84.) Neither E&Y nor PwC concluded that OSG had misinterpreted or misapplied Section 956.

(underwriters' reliance on auditor reasonable as a matter of law "[g]iven the complexity surrounding software licensing revenue recognition"); *Worlds of Wonder*, 35 F.3d at 1421 (where the "issues are enormously complex . . . [i]t is absurd . . . to suggest that . . . defendants, who are not accountants, possibly could have known of any mistake by [the independent auditors]"). In fact, the Underwriter Defendants' reliance on auditors is doubly appropriate here because OSG's interpretation of Section 956 and its accounting for income taxes were audited by not one, but two Big Four accounting firms.

The CAC alleges no "red flags" in connection with the Company's 2007, 2008 or 2009 financial statements or the underwriting process. "Although an underwriter must prove the due diligence defense, courts look to plaintiffs to point to red flags that should have indicated to the underwriter that the financial statements were not trustworthy." *Feyko*, 2013 WL 816409, at *8-9. Failure to plead "red flags" warrants dismissal of their claims. *Id.* (granting motion to dismiss Securities Act claims against underwriters); *Countrywide Fin. Corp.*, 588 F. Supp. 2d at 1182 (dismissing Securities Act claims against underwriters where plaintiffs did not allege "red flags" with respect to audited loan-related balance sheet items).[7]

Plaintiffs' claims based on the adequacy of OSG's internal controls also should be dismissed for the same reason. PwC's audit opinion stated that the Company's internal controls were adequate as of December 31, 2009 and was expertised. (CAC ¶¶ 13, 69, 75.) Again, no "red flags" are pled. *See Phillips v. Kidder, Peabody & Co.*, 933 F. Supp. 303, 323-24 (S.D.N.Y.

---

[7] The total absence of even alleged "red flags" here fundamentally distinguishes this case from *In re Worldcom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628 (S.D.N.Y. 2004). There, the plaintiffs argued, among other things, that Worldcom's expense to revenue ratio was materially different from those of its competitors and should have been a "red flag" as to whether the company's financial statements understated its expenses. *Id.* at 673. Nothing of the sort is alleged here.

1996) (dismissing claims against underwriter because its reliance on comfort letters from issuer's independent auditor concerning the adequacy of issuer's internal controls was reasonable).

Plaintiffs cite places in the Offering Materials other than the audited financial statements where OSG also allegedly made misstatements concerning these same income tax liabilities. (CAC ¶¶ 59, 61, 66.) The Underwriter Defendants were equally entitled to rely on E&Y and PwC's expertise with respect to these statements for all of them overlap with and essentially repeat the disclosures in the expertised financial statements. Specifically, all are based on the same allegedly erroneous interpretation of tax rules that led OSG to conclude that the income earned by its foreign subsidiaries was not subject to U.S. taxation. (*Id.*) This accounting policy was expressly set forth in Note L to the audited financial statements and was independently reviewed by E&Y and PwC. (*See Id.* ¶ 57 (quoting 2009 10-K at 90).) Although repeated in the Offering Materials (*see, e.g.*, CAC ¶¶ 59, 61, 66), these paragraphs flow directly from Note L of the audited financial statements upon which the Underwriter Defendants appropriately relied (*see, e.g., id.* ¶¶ 57, 62(a)).[8]

Because Plaintiffs do not purport to identify any misrepresentation not flowing from expertised disclosures and fail utterly to allege "red flags," their claims against the Underwriter Defendants must be dismissed.

---

[8] In *Worldcom*, the court held that the underwriters had a due diligence obligation with respect to unaudited interim financial statements. 346 F. Supp. 2d at 666, 681-83. That is entirely different from the issue presented here. Unaudited interim financials, by definition, include new, yet to be audited, information. *See id.* In contrast, as discussed above, the alleged misrepresentations here all are either in the audited financial statements or flow directly from them.

11

## II. PLAINTIFFS' CLAIMS ARE ALSO SUBJECT TO DISMISSAL BECAUSE NEGATIVE CAUSATION IS ESTABLISHED ON THE FACE OF THE COMPLAINT

Sections 11 and 12 provide an affirmative defense for defendants who demonstrate that plaintiffs' damages were not caused by alleged misrepresentations or omissions (*i.e.*, negative causation). Section 11 provides a defense where "any portion or all of [a plaintiff's] damages represents other than the depreciation in value of such security resulting from . . . part of the registration statement . . . not being true or omitting to state a material fact required to be stated therein." 15 U.S.C. § 77k(e). Section 12 provides a substantively identical defense for any defendant who "proves that any portion or all of the amount recoverable . . . represents other than the depreciation in value of the subject security resulting from such part of the prospectus or oral communication . . . not being true or omitting to state, a material fact required to be stated therein." 15 U.S.C. § 77l.

As with any affirmative defense, negative causation is a proper basis for dismissal under Rule 12(b)(6) if the defense is established on the face of the complaint or in documents and information properly considered on a motion to dismiss. *See, e.g.*, *Schuler v. NVIS Intellimedia Tech. Grp., Inc.*, 2013 WL 944777, at *9 (S.D.N.Y. Mar. 12, 2013) ("Although negative causation is generally established on a motion for summary judgment or at trial, a complaint may be dismissed prior to defendant's answer if 'it is apparent on the face of the complaint that the alleged loss is not causally connected to the misrepresentations at issue.'") (internal citation omitted) (quoting *In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011)); *Blackmoss Invs. Inc. v. ACA Capital Holdings, Inc.*, 2010 WL 148617, at *11 (S.D.N.Y. Jan. 14, 2010) ("a negative causation defense may be considered on a dismissal motion where the absence of loss causation is apparent on the face of the complaint").

The CAC expressly alleges that the IRS filed a proof of claim in the OSG bankruptcy proceedings, claiming that the Company owes the U.S. government $435 million in back taxes as follows:

| Tax Period | Corporate Income Taxes Due (000s) | Interest To Petition Date |
|---|---|---|
| December 31, 2004 | $25,692 | $12,785 |
| December 31, 2005 | 172 | 69 |
| December 31, 2009 | 9,209 | 864 |
| December 31, 2010 | 200,000 | 10,700 |
| December 31, 2011 | 200,000 | 3,522 |
| Totals | $435,073 | $27,940 |

(CAC ¶ 46.)

According to these allegations, any tax liability owed with respect to the three tax periods covered by the Offering Materials (2007-2009) is facially *de minimis*. Indeed, the CAC states that OSG owes no taxes at all for years 2007 or 2008. (*Id.*) And the IRS's total claim against the Company for 2009 is $9.2 million. (*Id.*) Thus, only 2% ($9.2 million of the $435 million) of the total tax liability is attributed by Plaintiffs to the tax periods covered by the Offering Materials. By contrast, the IRS claims $400 million, 92% of the total liability, for the years 2010 and 2011 that post-dated the offering. (*Id.*)

A $9.2 million tax claim did not drive the Company into bankruptcy, as the CAC's allegations effectively confirm. (*Id.* ¶ 44.) The alleged drop in value of the Senior Notes and OSG's bankruptcy, *according to Plaintiffs' own narrative*, were caused by subsequent tax events that did not exist and could not have been disclosed in the Offering Materials. *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 419 (S.D.N.Y. 2009); *In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 865-66 (N.D. Tex. 2005) (holding that the negative

13

causation defense was evident on the face of the complaint where the alleged misconduct occurred after the date of the offering).

Plaintiffs' claims against the Underwriter Defendants should be dismissed with prejudice because negative causation is established on the face of the complaint.

## CONCLUSION

For the foregoing reasons, the Consolidated Amended Complaint should be dismissed with prejudice and in its entirety as to the Underwriter Defendants.

Dated: New York, New York
April 19, 2013

SHEARMAN & STERLING LLP

By:  /s/ Stuart J. Baskin
Stuart J. Baskin
Adam S. Hakki
Christopher R. Fenton
599 Lexington Avenue
New York, New York  10022
Telephone:  212-848-4000
Facsimile:  212-848-7179

*Attorneys for the Underwriter Defendants*

**CERTIFICATE OF SERVICE**

I, Christopher R. Fenton, hereby certify that on April 19, 2013 I caused a true and correct copy of the foregoing to be served by electronic case filing upon all counsel of record registered to receive electronic notice.

I also certify that on April 19, 2013, pursuant to Section 9.2 of the Electronic Case Filing Rules & Instructions of the United States District Court for the Southern District of New York, I mailed via the U.S. Postal Service a true and correct copy of the foregoing to counsel for the Irving Firemen's Relief and Retirement Fund as counsel does not receive electronic notice in this matter.

Dated: New York, New York
April 19, 2013

By: _____
Christopher R. Fenton