**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------- X

IN RE OSG SECURITIES LITIGATION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/28/14

**MEMORANDUM**
**OPINION AND ORDER**

**12 Civ. 7948 (SAS)**

------------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

On October 20, 2014, plaintiffs moved for leave to file a fourth amended complaint.[1]  The purpose of the amendment is to add fraud claims against the auditor defendants — PriceWaterhouseCoopers ("PwC") and Ernst & Young ("E&Y") — who, under the current complaint, face only negligence claims. According to plaintiffs, discovery of PwC's and E&Y's work papers has elicited new facts — facts that plausibly give rise to an inference that PwC and E&Y performed, in effect, "no audit at all."[2]  For the reasons set forth below, I disagree.

---

[1]     See Dkt. No. 173.  Familiarity with previous rulings in this case is presumed throughout this Opinion.

[2]     11/18/14 Letter from Plaintiffs to the Court ("11/18/14 Letter"), at 1.

1

The 10(b) claims against the auditor defendants fail as a matter of law, and

plaintiffs' motion for leave to amend is therefore DENIED.

## II.    STANDARD OF REVIEW

Leave to amend a pleading "shall be freely given when justice so

requires."[3]  Such leave is not warranted, however, if "the [] amendment [would be]

futile,"[4] which is true insofar as "the proposed claim could not withstand a motion

to dismiss pursuant to Rule 12(b)(6)."[5]

## III.    APPLICABLE LAW

The securities laws set forth two different grounds of auditor liability.

*First*, under section 11, auditors can be liable if they "prepare[] or certif[y] any

report or valuation which is used in connection with [a] registration statement" that

turns out to be false or misleading.[6]  To make out a prima facie section 11 claim,

"[a] plaintiff need only plead a material misstatement or omission in the

registration statement."[7]  But the statute also provides a good faith defense for

---

[3]      Fed. R. Civ. P. 15(a).

[4]      *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

[5]      *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

[6]      15 U.S.C. § 77k(a)(4).

[7]      *City of Roseville Emps. Ret. Sys. v. Energy Solutions, Inc.*, 814 F. Supp. 2d 395, 424 (S.D.N.Y. 2011).

auditors who show that, after reasonable investigation, they honestly and reasonably believed that the certified portions of the registration statement were free of material misstatements or omissions.[8]

*Second*, auditors can also be liable — alongside the company and its officers — under section 10(b). Because section 10(b) claims are fraud claims, they require a showing of scienter.[9] Although "outside auditor[s]," unlike company insiders, "will typically not have an apparent motive to commit fraud,"[10] the scienter requirement can still be satisfied by showing that an outside auditor acted recklessly. In this setting, recklessness is defined as behavior that "represent[s] an extreme departure from the standards of ordinary care"[11] — to an extent that "approximate[s] an actual intent to aid in the fraud being perpetrated by

---

[8]     *See* 15 U.S.C. § 77k(b)(3)(B) (exempting from liability any expert who "had, after reasonable investigation, reasonable ground to believe and did believe, at the time such part of the registration statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading").

[9]     *See Ashley Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 337 (2d Cir. 2011) (enumerating the elements of section 10(b) claims).

[10]    *In re Longtop Fin. Tech. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 377 (S.D.N.Y. 2013).

[11]    *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (internal citations omitted).

3

the audited company."[12]  In other words, to satisfy the recklessness requirement, a plaintiff must show that "'[t]he accounting practices were so deficient that the audit amounted to no audit at all, or [to] an egregious refusal to see the obvious.'"[13]

## IV.    DISCUSSION

On September 10, 2013, I ruled that plaintiffs have successfully pled section 11 claims against PwC and E&Y.[14]  Now, after reviewing PwC's and E&Y's work papers,[15] plaintiffs seek to add section 10(b) claims, because they believe it is plausible to infer that the auditor defendants were not just negligent but were also reckless.  Specifically, plaintiffs point to tax opinions prepared by third-party CPA Frankel, Loughran, Starr & Vallone LLP ("Frankel"), which incorrectly assessed OSG's section 956 liability, and which — according to plaintiffs — the auditor defendants simply assumed to be true, without conducting an independent investigation.  In light of this discovery, plaintiffs argue that it would be possible for a fact-finder to conclude that the auditor defendants, in

---

[12]    *Id.*

[13]    *In re Longtop*, 939 F. Supp. 2d at 378 (citing *In re Scottish Re Group*, 524 F. Supp. 2d 370, 385 (S.D.N.Y. 2007)).

[14]    *See In re OSG*, 971 F. Supp. 2d 387 (S.D.N.Y. 2013).

[15]    This did not occur until September 2014 — hence plaintiffs' delay in seeking leave to amend. *See* 11/03/14 Transcript of Conference, at 13.

effect, performed no audit at all.

As outside auditors, PwC and E&Y were certainly obligated to investigate representations made by OSG management.[16]  The crux of plaintiffs' argument is that the Frankel opinions, because they were included in the company's audit file, should have been treated *as* representations made by OSG management.  If that is true, plaintiffs argue that PwC and E&Y flouted their investigatory obligations — and whether this amounted to fraud, or only to negligence, is a factual question that plaintiffs should be able to litigate.

For plaintiffs' legal theory to prevail, two premises must be true. *First*, the auditor defendants' failure to investigate the representations of section 956 liability set out in the Frankel opinions must be sufficient, by itself, to sustain a claim of recklessness.  In other words, even if nothing else in their audit was reckless, the auditor defendants might have acted recklessly *solely* by failing to

---

[16]    *See* Auditing Standards Board's Statement of Auditing Standards ("AS") No. 85, § 333.02 ("[R]epresentations from management are part of the evidential matter the independent auditor obtains, but they are not a substitute for the application of those auditing procedures necessary to afford a reasonable basis for an opinion regarding the financial statements under audit.") (full text available at http://pcaobus.org/Standards/Auditing/Pages/AU333.aspx).  Furthermore, a duty of investigation is also implied by the language of section 11's good faith defense, which exempts from liability any expert — including an auditor — that "*after reasonable investigation*, [had] reasonable ground to believe and did believe . . . that [the statements in question were] not misleading." 15 U.S.C. § 77k(b)(3)(B) (emphasis added).

investigate the section 956 issue. *Second*, the Frankel opinions must be indistinguishable, for the purpose of assessing the auditor defendants' duties, from tax opinions prepared by OSG management.[17]

The second premise does not withstand scrutiny.[18] Plaintiffs have cited no case — nor have I been able to locate any — that supports the proposition that "a tax preparer's analysis, independently done . . . is no different [than] if it came from management itself."[19] Indeed, the only even analogous authority in the Second Circuit cuts the other way. In *Oleck v. Fischer*, the court held it was reasonable for an outside auditor to rely on an advisory bankruptcy opinion obtained by the company from outside counsel and furnished by the company to

---

[17]   *See* 11/11/14 Transcript of Conference ("11/11/14 Transcript"), at 14 ("THE COURT: . . . [I]t all turns on the fact that [Frankel], to you, is the same as OSG — it's management, even if it is outside, even though it is the tax preparer, its work in analyzing the issue, reaching the conclusion is exactly the same as management giving the information — that [is what you] want? [PLAINTIFFS' COUNSEL]: Absolutely, your Honor.").

[18]   Whether plaintiffs' *first* premise withstands scrutiny is unclear. It is certainly disputed by the auditor defendants. *See* 11/25/14 Letter from Miles N. Ruthberg, Counsel for PwC, and Stanley J. Parzen, Counsel for E&Y, to the Court, at 1-2. Because plaintiffs' claim fails on other grounds, it is unnecessary to determine whether their "single issue" theory of auditor recklessness is tenable.

[19]   11/11/14 Transcript at 15. Nor is this proposition supported by the auditing standards. The same section that compels investigation of representations by management is silent as to representations made by independent third-parties. *See* AS No. 85, § 333.

the auditor — *i.e.*, the auditor was under no duty to look past the representations of outside counsel.[20]

      *Oleck* is directly relevant to the instant case. And its result speaks to the relationship between company insiders and outside advisors. The reason auditors are required to investigate in-house representations — indeed, the reason why 10(b)(5) violations occur — is that managers often have an incentive to distort. There is little reason to think that third-party tax preparers, operating at arm's length from the company, share this propensity.[21] If anything, they have the *opposite* incentive, because they owe their clients a duty of care, and they face potential liability (unconnected to securities fraud) for performing erroneous calculations.[22]

---

[20]    No. 73 Civ. 1460, 1979 WL 1217, at *19 (S.D.N.Y. June 8, 1979), *aff'd*, 623 F.2d 791 (2d Cir. 1980) (affirming the district court's holding).

[21]    In a last-ditch effort to save their theory, plaintiffs attack the premise that Frankel was, for practical purposes, an independent third-party. Specifically, plaintiffs argue that "there is nothing in the record to suggest that Frankel conducted any independent, 'real investigation' before summarizing OSG's section 956 liability; on the contrary, the information supporting Frankel's conclusions on section 956 was provided by OSG personnel and OSG's documents." 11/18/14 Letter, at 3. But that is neither surprising nor probative of the claim that Frankel's tax decisions were less than arm's length. Indeed, it would be almost impossible for a third-party tax preparer *not* to review company documents, and interact with company personnel, during the course of its work.

[22]    *See* 26 U.S.C. § 6694 (setting forth monetary penalties that can be assessed against tax preparers for understating their clients' tax liability). And

Furthermore, the specific issue addressed in the Frankel opinions —

the meaning of section 956 — is notoriously esoteric, even among tax lawyers.[23]  It

is one thing to say that PwC and E&Y should have done more to discover the

misstatements of tax liability.  That may be true.  But it is quite another thing to

say that PwC and E&Y, by relying on the representations of a third-party with (1)

every incentive to be truthful and (2) expertise in an abstruse area of tax law,

"egregious[ly] refus[ed] to see the obvious"[24] — much less that they acted with an

intent that "approximates an actual intent to aid in the fraud being perpetrated."[25]

That assertion strains credulity.[26]

---

even beyond monetary penalties, tax preparers that misreport their clients' liability
undoubtedly face significant harm to their reputations.

[23]      *See, e.g.*, Edward D. Kleinbard, *Stateless Income*, 11 Fla. Tax Rev.
699, 720 (2011) (referring to the rules regarding section 956 liability as "cruelly
byzantine").

[24]      *In re Scottish Re Group*, 524 F. Supp. 2d at 385.

[25]      *Rothman*, 220 F.3d at 98.

[26]      During oral argument, plaintiffs' counsel likened PwC's and E&Y's
behavior to the following hypothetical.  Suppose the managers of a company tell
their outside auditor, "[the company has] $100 million in cash in the bank," and the
auditor, instead of investigating the assertion, simply says, "That's good enough
for us."  11/11/14 Transcript at 10-11.  In the view of plaintiffs' counsel, this
would clearly be grounds for an allegation of reckless auditing, sufficient to sustain
a section 10(b) claim.  And it would be so even if the representation — that "[the
company has] $100 million in case in the bank" — came from a third-party rather
than the company itself.

Assuming, *arguendo*, that an inference of recklessness is warranted in

## V.    CONCLUSION

Because the section 10(b) claim against the auditor defendants is deficient as a matter of law, leave to amend would be futile.  Therefore, plaintiffs' motion is DENIED.  The Clerk of the Court is directed to close Dkt. No. 173.

---

this hypothetical, the flaw in counsel's analogy is that representing the existence of cash in the bank is not the same as representing a company's tax liability under an arcane section of the Internal Revenue Code.  Cash in the bank is easy to verify or disprove — indeed, verifying or disproving cash in the bank (or its equivalent) is exactly what auditors are trained to do.  A more apt analogy would be reliance on materials prepared by outside counsel.  Imagine if, in its press releases and SEC filings, a company were to make representations — backed up by an opinion from a leading law firm — about projected cash-flows associated with a pending patent. If the representations turned out to be false, the company could face liability under section 10(b).  But should the same be true of the auditors who merely *signed off* on the projected cash-flows, trusting in the conclusions of patent counsel?  It seems clear that the answer is no.  *See Oleck*, 1979 WL 1217, at *19  (emphasizing the "nuance" of the legal issue addressed in the opinion of counsel — nuance that would not necessarily "have occurred to an auditor") (internal citations omitted). Even if the auditor was ultimately *wrong* to rely on the expert opinion of outside counsel — and even if that makes out a section 11 claim — such misplaced reliance hardly bespeaks an "egregious refusal to see the obvious."  *In re Longtop*, 939 F. Supp. 2d at 378 (internal citations omitted).  Here, the whole point is that section 956 liability is almost *never* obvious.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        November 28, 2014
              New York, New York

## - Appearances -

**For Lead Plaintiffs:**

Samuel H. Rudman, Esq.
David A. Rosenfeld, Esq.
Mark T. Millkey, Esq.
Christopher M. Barrett, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100

**For Defendant PriceWaterhouseCoopers LLP:**

Miles N. Ruthberg. Esq.
Jamie L. Wine, Esq.
Kevin M. McDonough, Esq.
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY 10022
(212) 906-2904

**For Defendant Ernst & Young:**

Stanley J. Parzen, Esq.
Dana S. Douglas, Esq.
Mayer Brown LLP (Chicago)
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600

**For Defendant Overseas Shipholding Group, Inc.:**

Lewis J. Liman, Esq.
Elizabeth Vicens, Esq.
Cleary Gottlieb Steen & Hamilton, LLP
One Liberty Plaza

11

New York, NY 10006
(212) 225-2000

**For Defendant Morten Arntzen:**

Scott B. Schreiber, Esq.
Craig A. Stewart, Esq.
Arnold & Porter
Thurman Arnold Building
555 Twelfth Street, N.W.
Washington, DC 20004-1206
(202) 942-5000

**For Defendant Myles R. Itkin:**

David H. Kistenbroker, Esq.
Joni S. Jacobsen, Esq.
Ashley J. Burden, Esq.
Neil A. Steiner, Esq.
Dechert LLP
115 S.Lasalle Street
Chicago, IL 60661
(312) 646-5800

**For Consolidated Defendants Alan R. Batkin, Thomas P. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Oudi Recanati, Thomas F. Robards, Jean-Paul Vettier, Michael J. Zimmerman:**

Richard A. Rosen, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3305

**For Consolidated Defendants Citigroup Global Markets Inc, Deutsche Bank Securities Inc., Goldman, Sachs & Co., HSBC Securities (USA) Inc., ING Financial Markets, LLC, Morgan Stanley & Co. LLC (f/k/a Morgan Stanley**

**& Co. Incorporated), DNB Markets, Inc. (f/k/a DnB NOR Markets, Inc.):**

Adam Selim Hakki, Esq.
Daniel Hector Rees Laguardia, Esq.
Stuart Jay Baskin, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
(212) 848-4924