UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  | x |  |
|---|---|---|
| In re OSG SECURITIES LITIGATION | : | Civil Action No. 1:12-cv-07948-SAS |
|  | : |  |
|  | : | CLASS ACTION |
| This Document Relates To: | : |  |
|  | : | LEAD PLAINTIFFS' MEMORANDUM OF |
| ALL ACTIONS. | : | LAW IN SUPPORT OF UNOPPOSED |
|  | x | MOTION FOR PRELIMINARY APPROVAL |
|  |  | OF SETTLEMENT |

1043372_1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ......................................................................................................2

II.    PROCEDURAL HISTORY OF THE ACTION..................................................3

III.   PRELIMINARY APPROVAL OF THE PARTIAL SETTLEMENT IS
       WARRANTED ..........................................................................................................5

       A.     The Standards for Reviewing a Proposed Settlement for Preliminary
              Approval ........................................................................................................6

       B.     Preliminary Approval of the Partial Settlement Should Be Granted ......................7

              1.     The Complexity, Expense, and Likely Duration of the Litigation
                     Supports Approval of the Partial Settlement .................................8

              2.     The Reaction of the Class to the Partial Settlement....................................9

              3.     The Stage of the Proceedings.........................................................9

              4.     The Risk of Establishing Liability and Damages .....................................10

              5.     The Risks of Maintaining the Class Action Through Trial.......................11

              6.     The Ability of Settling Defendants to Withstand a Greater
                     Judgment.....................................................................................11

              7.     The Reasonableness of the Partial Settlement in Light of the Best
                     Possible Recovery and the Attendant Risks of Litigation .........................12

IV.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT
       PURPOSES............................................................................................................13

       A.     Securities Cases Are Particularly Suited for Class Action Treatment..................13

       B.     The Standards for Class Certification ..................................................14

       C.     The Proposed Class Satisfies Rule 23(a) ............................................15

              1.     The Proposed Class Is so Numerous that Joinder of All Members
                     Is Impracticable................................................................................15

              2.     There Exist Questions of Law and Fact Common to the Members
                     of the Class................................................................................16

              3.     The Claims of the Lead Plaintiffs Are Typical of the Class ....................17

- i -

**Page**

        4.      Lead Plaintiffs and Their Counsel Have Fairly and Adequately
                Represented the Class ...............................................................................18

    D.      Lead Plaintiffs Satisfy the Rule 23(b)(3) Requirements .......................................19

        1.      Common Questions of Law or Fact Predominate.....................................19

        2.      A Class Action Is Superior to Other Available Methods for the
                Efficient Adjudication of This Controversy ............................................21

V.      THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE
        FORM OF THE PROOF OF CLAIM ARE APPROPRIATE.........................................22

    A.      The Scope of the Notice Program Is Adequate.....................................................22

    B.      The Content of the Notice Is Adequate..................................................................23

VI.     PROPOSED SCHEDULE ................................................................................................24

VII.    CONCLUSION.................................................................................................................25

- ii -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. Dairy Farmers of Am., Inc.*,
 No. 5:09-cv-230, 2011 WL 1706778
 (D. Vt. May 4, 2011)..................................................................................6, 7, 16, 17

*Amchem Prods. v. Windsor*,
 521 U.S. 591 (1997)................................................................................................13, 20

*Baffa v. Donaldson*,
 222 F.3d 52 (2d Cir. 2000)..........................................................................................18

*Basic Inc. v. Levinson*,
 485 U.S. 224 (1988)......................................................................................................13

*Blackie v. Barrack*,
 524 F.2d 891 (9th Cir. 1975) ......................................................................................20

*Cent. States Se. & Sw. Areas Health & Welfare Fund
v. Merck-Medco Managed Care, L.L.C.*,
 504 F.3d 229 (2d Cir. 2007)...........................................................................15, 16, 17

*Consol. Rail Corp. v. Town of Hyde Park*,
 47 F.3d 473 (2d Cir. 1995)..........................................................................................15

*D'Amato v. Deutsche Bank*,
 236 F.3d 78 (2d Cir. 2001)..........................................................................................12

*Darquea v. Jarden Corp.*,
 No. 06 Civ. 722 (CLB), 2008 WL 622811
 (S.D.N.Y. Mar. 6, 2008) ................................................................................13, 17, 20

*Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974).............................................................................5, 7, 10

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974)......................................................................................................15

*Eisenberg v. Gagnon*,
 766 F.2d 770 (3d Cir. 1985).......................................................................................14

*Epstein v. MCA, Inc.*,
 50 F.3d 644 (9th Cir. 1995), *rev'd on other grounds
 sub nom. Matsushita Elec. Indus. Co. v. Epstein*,
 516 U.S. 367 (1996).....................................................................................................13

- iii -

Page

*Escott v. Barchris Constr. Corp.*,
    340 F.2d 731 (2d Cir. 1965)......................................................14

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)...............................................11

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)................................................................17

*Gerber v. Computer Assocs. Int'l*,
    No. 91 CV 3610 (SJ), 1995 WL 228388
    (E.D.N.Y. Apr. 7, 1995)..............................................15, 16, 17

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)...............................................13, 22

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981)..................................................................13

*Hicks v. Morgan Stanley*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792
    (S.D.N.Y. Oct. 24, 2005) ..........................................................8

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984),
    *aff'd*, 818 F.2d 145 (2d Cir. 1987)...........................................12

*In re Alloy, Inc. Sec. Litig.*,
    No. 03 Civ 1597 (WHP), 2004 WL 2750089
    (S.D.N.Y. Dec. 2, 2004)........................................................8, 10

*In re AMF Bowling Sec. Litig.*,
    No. 99 Civ. 3023 (DC), 2002 WL 461513
    (S.D.N.Y. Mar. 26, 2002) .........................................................21

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    No. MDL 1500, 2006 WL 903236
    (S.D.N.Y. Apr. 6, 2006)....................................................8, 10, 12

*In re Arakis Energy Corp. Sec. Litig.*,
    No. 95-CV-3431 (ARR), 1999 WL 1021819
    (E.D.N.Y. Apr. 27, 1999)......................................................20, 21

- iv -

**Page**

*In re Ashanti Goldfields Sec. Litig.*,
No. CV 00-0717 (DGT), 2004 WL 626810
(E.D.N.Y. Mar. 30, 2004) ...................................................................................14

*In re Blech Sec. Litig.*,
187 F.R.D. 97 (S.D.N.Y. 1999) ....................................................................14, 21

*In re Currency Conversion Fee Antitrust Litig.*,
No. 01 MDL 1409, 2006 WL 3247396
(S.D.N.Y. Nov. 8, 2006) ........................................................................................6

*In re Enron Corp. Sec.*,
228 F.R.D. 541 (S.D. Tex. 2005) ..................................................................12, 19

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
529 F. Supp. 2d 644 (S.D. Tex. 2006) ................................................................19

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS), 2007 WL 1191048
(E.D.N.Y. Apr. 19, 2007)......................................................................................22

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................10, 12

*In re Initial Pub. Offering Sec. Litig.*,
260 F.R.D. 81 (S.D.N.Y. 2009) ................................................................... *passim*

*In re Initial Pub. Offering Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006)...............................................................................14, 15

*In re Interpublic Sec. Litig.*,
No. 02 CIV. 6527 (DLC), 2003 WL 22509414
(S.D.N.Y. Nov. 6, 2003) ........................................................................................16

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
No. 02 MDL 1484 (JFK), 2007 WL 313474
(S.D.N.Y. Feb. 1, 2007)..........................................................................................22

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993) ..............................................................................7

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................6, 7

**Page**

*In re Oxford Health Plans, Inc. Sec. Litig.*,
191 F.R.D. 369 (S.D.N.Y. 2000) ...................................................................16, 17

*In re Platinum & Palladium Commodities Litig.*,
No. 10cv3617, 2014 WL 3500655
(S.D.N.Y. July 15, 2014) ................................................................... *passim*

*In re Prudential Sec. Ltd. P'ships Litig.*,
164 F.R.D. 362 (S.D.N.Y.), *aff'd sub nom. Toland v.
Prudential Sec. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996)........................................23

*In re Stock Exchs. Options Trading Antitrust Litig.*,
No. 99 Civ. 0962 (RCC), 2006 WL 3498590
(S.D.N.Y. Dec. 4, 2006)........................................................................23

*In re Twinlab Corp. Sec. Litig.*,
187 F. Supp. 2d 80 (E.D.N.Y. 2002) ....................................................................18

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)........................................................................11

*In re Warner Chilcott Ltd. Sec. Litig.*,
No. 06 Civ. 11515 (WHP), 2008 WL 5110904
(S.D.N.Y. Nov. 20, 2008) ........................................................................5

*Kennedy v. Tallant*,
710 F.2d 711 (11th Cir. 1983) ........................................................................14

*Korn v. Franchard Corp.*,
456 F.2d 1206 (2d Cir. 1972)........................................................................14

*Lizondro-Garcia v. Kefi LLC*,
300 F.R.D. 169 (S.D.N.Y. 2014) ........................................................................14

*Menkes v. Stolt-Nielsen S.A.*,
270 F.R.D. 80 (D. Conn. 2010)........................................................................15

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002)........................................................................20

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)........................................................................12

- vi -

Page

*Ohman v. Kahn*,
   No. 87 Civ. 7117 (JFK), 1990 WL 97756
   (S.D.N.Y. June 27, 1990)........................................................................................17

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..............................................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................................6

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)......................................................................................23

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §77k.................................................................................................................2, 11
   §77l(a)(2)..............................................................................................................2
   §77o......................................................................................................................2
   §78j(b)..........................................................................................................2, 3, 4
   §78t(a)...................................................................................................................2
   §78u-4(a)(7)(A)-(F)..............................................................................................24

Federal Rules of Civil Procedure
   Rule 23 ....................................................................................................... *passim*
   Rule 23(a)....................................................................................................15, 17, 19
   Rule 23(a)(1)........................................................................................................15
   Rule 23(a)(2)........................................................................................................16
   Rule 23(a)(3)........................................................................................................17
   Rule 23(a)(4)........................................................................................................18
   Rule 23(b)(3)..............................................................................................15, 19, 21

- vii -

Lead Plaintiffs Stichting Pensioenfonds DSM Nederland ("DSM"), Indiana Treasurer of State ("Indiana Treasurer") and Lloyd Crawford respectfully submit this memorandum in support of their unopposed motion for preliminary approval of the settlement reached in this litigation (the "Partial Settlement"). This proposed Partial Settlement provides a recovery of a minimum of $16,250,000 in cash to resolve this securities class action against the Settling Defendants: the Individual Defendants,[1] the Underwriter Defendants[2] and PricewaterhouseCoopers LLP ("PwC") (collectively, "Settling Defendants"). The Partial Settlement is memorialized in three separate Stipulations of Settlement entered into by the various Settling Parties (the "Stipulations").[3] Pursuant to the Stipulations, the Individual Defendants have agreed to pay $10,500,000, the Underwriter Defendants have agreed to pay $4,000,000 and PwC has agreed to pay $1,750,000.[4]

By this motion, Lead Plaintiffs seek entry of orders (1) granting preliminary approval of the three settlements; (2) approving the form and manner of giving notice of the proposed Partial Settlement to the Class; (3) certifying the Class for purposes of effectuating the Partial Settlement;

---

[1]   Alan R. Batkin, Thomas B. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Oudi Recanati, Thomas F. Robards, Jean-Paul Vettier, Michael J. Zimmerman, Morten Arntzen ("Arntzen") and Myles Itkin ("Itkin").

[2]   Citigroup Global Markets Inc., Deutsche Bank Securities Inc., DNB Markets, Inc. (f/k/a DnB NOR Markets, Inc.), Goldman, Sachs & Co., HSBC Securities (USA) Inc., ING Financial Markets LLC and Morgan Stanley & Co. LLC (f/k/a Morgan Stanley & Co. Incorporated).

[3]   Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulations.

[4]   In addition to the $16,250,000 Settlement amount, Class Members will receive a minimum of $15 million from the settlement of Class Members' claims against non-party Overseas Shipholding Group, Inc. ("OSG" or the "Company") in the bankruptcy court (the "Bankruptcy Court Settlement"), and a contingent right to 15% of the net proceeds of OSG's professional liability action against Proskauer Rose LLP ("Proskauer") and certain individual defendants. The Bankruptcy Court Settlement was approved by the Bankruptcy Court in July 2014. *See In re Overseas Shipholding Group, Inc.*, No. 12-bk-20000 (MFW) (Bankr. Del.) (Dkt. Nos. 3253, 3663 and 3683). The Bankruptcy Court Settlement, less fees, expenses and taxes, will be distributed pursuant to the proposed plan of allocation.

- 1 -

and (4) setting a hearing date for final approval thereof (the "Settlement Hearing") and a schedule for various deadlines relevant thereto.  As shown below, the proposed Partial Settlement is a very good result for the Class under the circumstances, is fair, reasonable, and adequate under the governing standards in this Circuit, and warrants approval of this Court.

## I.      INTRODUCTION

This litigation arises out of allegations that there were untrue and misleading statements made in the Registration Statement that OSG filed in connection with its sale of $300 million of 8.125% Senior Notes to the public on March 24, 2010 (the "Senior Notes"), in violation of §§11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), and that during the Class Period (October 29, 2007 through and including October 19, 2012), false and misleading statements were made by Defendants Arntzen and Itkin, in violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  These alleged misstatements included specific representations concerning, among other things, the Company's income taxes, accounting policies, controls and procedures, internal controls over financial reporting, tax benefits purportedly received by the Company, guidance on future tax benefits, how financial statements were prepared in conformity with Generally Accepted Accounting Principles, and guidance on future results.

The parties have engaged in extensive motion practice and document and deposition discovery, and, on November 20, 2014, attended a formal mediation session before the Honorable Layn R. Philips (Ret.), in connection with which Lead Plaintiffs and the Underwriter Defendants reached their proposed settlement agreement to resolve the litigation on the terms set forth in the Underwriter Defendants Stipulation after arm's-length negotiations, as summarized herein. Following that mediation, and after additional arm's-length negotiations, Lead Plaintiffs and the

remaining Settling Defendants reached agreements-in-principle to resolve the litigation on the terms set forth in the remaining Settlement Defendants' Stipulations, and as summarized herein.

## II.    PROCEDURAL HISTORY OF THE ACTION

Beginning in October 2012, three securities class action complaints were filed in the U.S. District Court for the Southern District of New York on behalf of purchasers of OSG common stock and/or the Senior Notes.  On February 1, 2013, the Court entered an Order (1) consolidating the related securities actions; (ii) appointing DSM, Indiana Treasurer, and Mr. Crawford as Lead Plaintiffs; and (iii) appointing Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel to represent the class.  Dkt. No. 64.[5]

On March 12, 2013, Lead Plaintiffs filed the First Consolidated Amended Complaint for Violations of the Federal Securities Laws ("FAC").  Dkt. No. 78.  The FAC was brought against the Individual Defendants, the Underwriter Defendants, PwC, and Ernst & Young LLP ("EY").  The FAC alleged violations of the Securities Act against all Defendants and violations of the Exchange Act against Arntzen and Itkin, on behalf of a class of all purchasers of OSG securities between March 1, 2010 and October 19, 2012, inclusive, and who were damaged thereby.

On April 19 and May 23, 2013, Defendants filed motions to dismiss the FAC, Dkt. Nos. 88, 89, 96, and 104, which Lead Plaintiffs then opposed.  On September 10, 2013, the Court denied Defendants' motions to dismiss Lead Plaintiffs' claims pursuant to the Securities Act, and granted Arntzen and Itkin's motion to dismiss Lead Plaintiffs' claims pursuant to the Exchange Act, with leave to amend.  Dkt. No. 113.

---

[5]    On November 14, 2012, OSG and its affiliated debtors filed a voluntary petition for relief under Chapter 11 of the Unites States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

1043372_1

On October 10, 2013, Lead Plaintiffs filed the Second Consolidated Amended Complaint for Violations of the Federal Securities Laws ("SAC"), amending their Section 10(b) claims against Arntzen and Itkin.[6]  Dkt. No. 117.  On November 12, 2013, Arntzen and Itkin filed a motion to dismiss the SAC, Dkt. No. 126, which Lead Plaintiffs opposed.  Dkt. No. 132.  On January 6, 2014, Arntzen and Itkin filed a reply brief in further support of their motion to dismiss.  Dkt. No. 134.

On January 28, 2014, Lead Plaintiffs filed a letter with the Court requesting to amend the SAC to add factual allegations from OSG's legal-malpractice lawsuit against Proskauer, Dkt. No. 135, which Arntzen and Itkin opposed.  Dkt. No. 136.  On February 7, 2014, the Court granted Lead Plaintiffs' request to amend the SAC.  Dkt. No. 137.  On February 18, 2014, Lead Plaintiffs filed the Third Consolidated Amended Complaint for Violations of the Federal Securities Laws ("TAC"), amending their claims against Arntzen and Itkin.  Dkt. No. 140.  On February 25, 2014, Arntzen and Itkin filed a response to the TAC, Dkt. No. 142, and on March 4, 2014, Lead Plaintiffs opposed the response.  Dkt. No. 147.  On April 28, 2014, the Court denied Arntzen and Itkin's motion to dismiss.  Dkt. No. 155.

On October 20, 2014, Lead Plaintiffs filed a letter seeking a pre-motion conference for leave to file the Proposed Fourth Consolidated Amended Complaint ("PFAC"), seeking to add claims against EY and PwC pursuant to Section 10(b) of the Exchange Act.  Dkt. Nos. 173-174.  EY and PwC opposed Lead Plaintiffs' motion, Dkt. Nos. 180-181, and on November 3 and 11, 2014, the Court held pre-motion conferences.  Lead Plaintiffs, EY, and PwC filed letters responding to questions posed by the Court during the November 11, 2014 conference.  Dkt. Nos. 184, 186-187.  On November 28, 2014, the Court denied Lead Plaintiffs leave to file the PFAC.  Dkt. No. 188.

---

[6]   Prior to filed the SAC, Lead Plaintiffs filed a Stipulation of Voluntary Dismissal dismissing, without prejudice, their claims against G. Allen Andreas III.  Dkt. No. 115.

- 4 -

Counsel for the parties have completed extensive class and fact discovery, including ten depositions and the production and review of more than 2.3 million pages of documents. Between November 2014 and February 2015, the parties engaged in various efforts to settle the Action, including face-to-face meetings and numerous other communications among counsel. The parties retained Judge Phillips, a former federal district court judge, to assist them in exploring a potential negotiated resolution of the Action. On November 20, 2014, counsel for Lead Plaintiffs and Defendants met with Judge Phillips in an attempt to reach a settlement. The November 2014 mediation session resulted in an agreement-in-principle to settle the Action with respect to the claims brought against the Underwriter Defendants. After the mediation, the Lead Plaintiffs and the remaining Settling Defendants continued arm's-length settlement discussions with the assistance of Judge Phillips. In early 2015, the negotiations, facilitated by Judge Phillips, resulted in agreements-in-principle between Lead Plaintiffs and the Individual Defendants and PwC to settle this Action.

## III.   PRELIMINARY APPROVAL OF THE PARTIAL SETTLEMENT IS WARRANTED

As discussed herein, the proposed Partial Settlement is an excellent result for Lead Plaintiffs and the Class. It provides a recovery in a case where Lead Plaintiffs faced hurdles to proceeding with the litigation and proving liability and damages, and is certainly within the range of what would be determined to be fair, reasonable, and adequate. Accordingly, Lead Plaintiffs respectfully submit that an analysis of the *Grinnell* factors (*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)), set forth below, which apply to a court's determination of final approval of a settlement, also supports preliminary approval of the Partial Settlement. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the *Grinnell*] factors is required for final approval, at the preliminary approval stage, 'the Court need only find that the proposed settlement fits "within the range of possible approval"' to

- 5 -

proceed.")[7]; *In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014) ("At preliminary approval, it is not necessary to exhaustively consider the factors applicable to final approval.").

### A.     The Standards for Reviewing a Proposed Settlement for Preliminary Approval

Once a settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval.  In other words, the court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled. . . .  In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.").  "In determining whether to grant preliminary approval, the court starts with the proposition that 'there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.'"  *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2011 WL 1706778, at *2 (D. Vt. May 4, 2011).

Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls within the range of approval, preliminary approval is generally granted.  *See NASDAQ*, 176 F.R.D. at 102; *Platinum*, 2014 WL 3500655, at *11 ("Preliminary approval, at issue here, 'is at most a determination that there is what might be termed "probable cause" to submit the proposal to class members and hold a full-scale hearing as to

---

[7]     Citations and footnotes are omitted and emphasis is added unless otherwise noted.

its fairness.'  A district court should preliminarily approve a proposed settlement which 'appears to be the product of serious, informed non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval.'").  "Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *NASDAQ*, 176 F.R.D. at 102.  "Preliminary approval is merely the first step in a multi-step process in which the . . . Settlement will be scrutinized by both the court and class members." *Allen*, 2011 WL 1706778, at *2.  "It deprives no party or non-party of any procedural or substantive rights, and provides a mechanism through which class members who object to the . . . Settlement can voice those objections." *Id.*  A strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations, and courts should accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993).

### B.    Preliminary Approval of the Partial Settlement Should Be Granted

The Second Circuit has identified nine factors that courts should consider in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

- 7 -

*Grinnell*, 495 F.2d at 463.  Although final approval is not sought at this time, each of the *Grinnell* factors supports preliminary approval of the Partial Settlement.

**1.    The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Partial Settlement**

Courts have consistently recognized that the complexity, expense, and likely duration of the litigation are critical factors in evaluating the reasonableness of a settlement, especially where the settlement being evaluated is a securities class action.  *See, e.g.*, *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *5-*6 (S.D.N.Y. Oct. 24, 2005); *In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (approving settlement, noting action involved complex securities fraud issues "that were likely to be litigated aggressively, at substantial expense to all parties"); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006) (due to their "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials").

This case is no exception.  Lead Plaintiffs advanced numerous complex legal and factual issues, each of which would require extensive expert discovery and testimony.  While document discovery was nearly complete, and over 2.3 million pages were produced by Lead Plaintiffs, Defendants, and third parties, deposition discovery had just begun and expert discovery had not started.  "'[A] vast amount of additional factual and expert discovery remains to prepare for trials, and motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable.'"  *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 117 (S.D.N.Y. 2009) ("*IPO Preliminary Approval*").  This trial would be complicated for jurors, and would be expensive for the Class, given the tremendous amount of fact and expert discovery that still needed to be taken if the litigation proceeds.  The Partial Settlement also obviates the need for the Court to rule on a motion

- 8 -

for class certification and summary judgment, following the close of discovery.  *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").[8]  Accordingly, analysis of this factor supports preliminary approval of the Partial Settlement.

### 2.      The Reaction of the Class to the Partial Settlement

Lead Plaintiffs have participated throughout the prosecution of the case and were actively involved in the decision to enter into the Partial Settlement.  In the event any objections are received after notice is disseminated, they will be addressed by Lead Counsel in connection with their motion for final approval of the Partial Settlement.[9]

### 3.      The Stage of the Proceedings

The volume and substance of Lead Plaintiffs' and Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are unquestionably adequate to support the Partial Settlement.  This knowledge is based, first and foremost, on Lead Plaintiffs' and Lead Counsel's extensive investigation during the prosecution of this Action, including, *inter alia*: (i) review of OSG's press releases, public statements, U.S. Securities and Exchange Commission ("SEC") filings, regulatory filings and reports, and securities analysts' reports and advisories about the Company; (ii) review of media reports about the Company; (iii) research of the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (iv) briefing oppositions to motions

---

[8]    On May 29, 2015, this Court granted the motion for summary judgment filed by non-settling defendant EY.  Dkt. No. 223.

[9]    Notice of the Bankruptcy Court Settlement was provided to Class Members pursuant to an order of the Bankruptcy Court.  There were no objections to that settlement.

to dismiss; (v) conducting extensive document and deposition discovery; (vi) briefing the motion to amend the SAC; (vii) preparing the mediation statement; and (viii) negotiating this Partial Settlement with the Settling Defendants. The accumulation of this information permitted Lead Plaintiffs and Lead Counsel to be well-informed about the strengths and weaknesses of their case and to engage in effective settlement discussions. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("the question is whether the parties had adequate information about their claims"). This factor also supports the Partial Settlement.

### 4.     The Risk of Establishing Liability and Damages

In assessing the Partial Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463. As this case amply demonstrates, securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet. *See AOL Time Warner*, 2006 WL 903236, at *11 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *Alloy*, 2004 WL 2750089, at *2 (finding that issues present in securities action presented significant hurdles to proving liability).

While Lead Plaintiffs believe that their claims would be borne out by the evidence, they also recognize that they face hurdles to proving liability. Settling Defendants have articulated various defenses to Lead Plaintiffs' allegations that may have been accepted by the Court at the class certification or summary judgment stages, or by the jury at trial. Among other things, Defendants against which §10(b) claims are asserted have argued that Lead Plaintiffs will be unable to prove either scienter or negligence. In addition, certain of the Defendants will assert due-diligence defenses and reasonable reliance on other professionals, including the other Settling Defendants as well as third parties such as OSG, Proskauer, and OSG's tax preparer Frankel Loughran Starr and

- 10 -

Vallone LLP ("FLSV").  Settling Defendants have also argued that the specific tax provision at the heart of Lead Plaintiffs' allegations was arcane and complex, and therefore, their failure to grasp the implications of that provision for OSG was neither fraudulent nor negligent.  If Lead Plaintiffs could not prove falsity or scienter, their entire case would be lost.

Lead Plaintiffs also faced substantial risks in establishing loss causation and damages.  As with contested liability issues, issues relating to loss causation and damages would also have likely come down to an inherently unpredictable and hotly disputed "battle of the experts."  In addition, Lead Plaintiffs face the risk that a jury would apportion, pursuant to Section 11 of the Securities Act, some amount of proportionate liability to non-parties OSG, Proskauer, and/or FLSV.  Accordingly, in the absence of a settlement, there is a very real risk that the Class would recover an amount significantly less than the total settlement amount – or even nothing at all.  Thus, the payment of $16,250,000, when viewed in the context of the risks and the uncertainties involved in this litigation, weighs in favor of approving the Partial Settlement.

### 5.      The Risks of Maintaining the Class Action Through Trial

While the Class has not yet been certified in this case, should such a motion be granted, certification can be reviewed and modified at any time before trial.  Thus, there is always a risk that this Action, or particular claims, might not be maintained as a class through trial.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory").  Thus, this factor weighs in favor of the Partial Settlement.

### 6.      The Ability of Settling Defendants to Withstand a Greater Judgment

A court may consider a defendant's ability to withstand a judgment greater than the settlement amount, although it is not generally one of the determining factors.  *In re Warfarin*

*Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (affirming district court's finding that defendant's ability to pay more was irrelevant to assessment of settlement).  The ability of a defendant to withstand a greater judgment is not an impediment to settlement when the other factors favor the settlement.  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).

**7.    The Reasonableness of the Partial Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Partial Settlement falls within a "range of reasonableness" – "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery").  In addition, in considering the reasonableness of the Partial Settlement, the Court should consider that the Partial Settlement provides for payment to the Class now, rather than a speculative payment many years down the road.  *See AOL Time Warner*, 2006 WL 903236, at *13 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").  Nevertheless, this Partial Settlement represents an excellent result under the circumstances considering a possible recovery was zero.  As the court stated when approving one of the settlements in the *Enron ERISA* litigation:  "The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand."  *In re Enron Corp. Sec.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005).

- 12 -

IV.    **THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES**

Class certification for settlement purposes is consistent with long-established precedent in the Second Circuit and the United States Supreme Court. *See, e.g.*, *Amchem Prods. v. Windsor*, 521 U.S. 591, 624 (1997); *Green v. Wolf Corp.*, 406 F.2d 291, 296 (2d Cir. 1968); *IPO Preliminary Approval*, 260 F.R.D. at 88; *Platinum*, 2014 WL 3500655, at \*8 ("A court may certify a class for the purpose of a classwide settlement.").  Here, Lead Plaintiffs, like all other putative Class Members, seek to prove a uniform and concerted common course of wrongful conduct with respect to allegedly false and misleading statements in the Registration Statement for the Senior Notes and during the Class Period.  Because the benefits of the underlying litigation apply equally to the Class as a whole and because this open-market securities action satisfies all applicable requirements under Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs respectfully request this Court certify the Class for settlement purposes.

A.    **Securities Cases Are Particularly Suited for Class Action Treatment**

"Class actions serve an important function in our system of civil justice" (*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981)), and have been recognized repeatedly as an important means of enforcing the federal securities laws. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 321 n.4 (2007); *Basic Inc. v. Levinson*, 485 U.S. 224, 230-32 (1988); *Darquea v. Jarden Corp.*, No. 06 Civ. 722 (CLB), 2008 WL 622811, at \*4 (S.D.N.Y. Mar. 6, 2008); *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995) (holding that securities actions alleging misstatements or omissions fit the requirements of Rule 23 "like a glove"), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996).  Rule 23 allows for the effective enforcement of the securities laws for large numbers of investors who have suffered injuries but do not have a sufficient economic interest to incur the expense or inconvenience of an individual

- 13 -

lawsuit. *See, e.g.*, *Escott v. Barchris Constr. Corp.*, 340 F.2d 731, 733 (2d Cir. 1965). As a result, securities law claims are routinely found to be appropriate for class treatment.

Furthermore, by providing a single forum in which to litigate the same or similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) (holding that "'the effectiveness of the securities laws may depend in large measure on the application of the class action device'"); *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). Rule 23, therefore, is broadly structured so as to facilitate certification of class actions. "Accordingly, in an alleged securities fraud case, when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999); *see also Eisenberg*, 766 F.2d at 785 ("'The interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action.'"); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. 2014) ("Doubts concerning the propriety of class certification should be resolved in favor of class certification.").

## B. The Standards for Class Certification

"[A] district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) ("*IPO*"). The Second Circuit has instructed courts to be "mindful of the admonition of liberality toward demands for class suit status in securities litigation." *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972); *In re Ashanti Goldfields Sec. Litig.*, No. CV 00-0717 (DGT), 2004 WL 626810, at *10 (E.D.N.Y. Mar. 30, 2004) ("A liberal standard is in accord with the Second Circuit's preference for the use of class actions in securities law claims."). Thus, in considering a

- 14 -

class certification motion, a court will focus only on whether the prerequisites of Rule 23 are met. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). While a court may resolve factual issues concerning the prerequisites of Rule 23 when those issues overlap with issues relating to the merits (*IPO*, 471 F.3d at 41), here there are no merits-based issues that impact the Court's consideration of class certification.

As demonstrated below, the requirements of Rules 23(a) and 23(b)(3) are met. The Court should therefore certify the Class for purposes of settlement.

### C.    The Proposed Class Satisfies Rule 23(a)

#### 1.    The Proposed Class Is so Numerous that Joinder of All Members Is Impracticable

For a class action to be appropriate, the proposed class must be so numerous that joinder of all of its individual members would be impracticable. Fed. R. Civ. P. 23(a)(1). Rule 23 does not require joinder to be impossible, but "the difficulty or inconvenience of joining all members of the class [must] make [the] use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007). Numerosity is presumed when a class consists of forty or more members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Platinum*, 2014 WL 3500655, at *8. In fact, "'in securities class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'" *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 90 (D. Conn. 2010); *Gerber v. Computer Assocs. Int'l*, No. 91 CV 3610 (SJ), 1995 WL 228388, at *2 (E.D.N.Y. Apr. 7, 1995) ("[Defendant's] common stock was listed and actively traded on the New York Stock Exchange; therefore, it is likely that [defendant's] stockholders are not concentrated in

any one geographic location, but rather, are widely dispersed.  Hence, given that there will be a variety of residences and numerous claims, joinder would be impractical.").

During the Class Period, there were over 30 million shares outstanding of OSG's common stock, and OSG issued $300 million of Senior Notes.  As such, there are hundreds or thousands of members of the proposed Class, thus more than satisfying the numerosity requirement.  *See In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000).

  **2. There Exist Questions of Law and Fact Common to the Members of the Class**

Rule 23(a)(2) requires that "'plaintiffs' grievances share a common question of law or of fact.'"  *Cent. States*, 504 F.3d at 245; *IPO Preliminary Approval*, 260 F.R.D. at 90-91.  Evidentiary proof of the Lead Plaintiffs' claims is necessarily common to all members of the Class.  Indeed, in determining whether common questions exist, Rule 23(a)(2) "requires only that there be 'a common nucleus of operative fact,' not that there be an absolute identity of facts."  *Gerber*, 1995 WL 228388, at *2; *see also Oxford*, 191 F.R.D. at 374 ("Where, as here, there exists a common nucleus of operative facts affecting all members, common questions unquestionably prevail."); *see also Allen*, 2011 WL 1706778, at *8 (the commonality element will generally be """established so long as the plaintiffs can identify some unifying thread among the [class] members""").

Common questions of law and fact are present where, as here, the alleged securities law violations involve material misrepresentations and omissions in documents publicly circulated or filed with the SEC.  *In re Interpublic Sec. Litig.*, No. 02 CIV. 6527 (DLC), 2003 WL 22509414, at *3 (S.D.N.Y. Nov. 6, 2003) ("Plaintiffs have raised a number of common issues of law and fact.  Among them are whether [defendants'] public filings and statements contained material misstatements, whether the defendants acted knowingly or with reckless disregard for the truth in

- 16 -

misrepresenting material facts in [defendants'] public filings and press releases, and whether the damages to the investors were caused by the defendants' misstatements.").

### 3.   The Claims of the Lead Plaintiffs Are Typical of the Class

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class."[10]  The typicality requirement is satisfied "'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Cent. States*, 504 F.3d at 245; *IPO Preliminary Approval*, 260 F.R.D. at 91.  The claims here satisfy the typicality requirement in that they all arise from the same false and misleading statements and require similar arguments by Class Members concerning liability.  *See Allen*, 2011 WL 1706778, at *9.  In order to meet the typicality requirement, "[t]he claims need not be identical, but must derive from 'the same general, over-all course of fraudulent conduct.'"  *Gerber*, 1995 WL 228388, at *3; *see also Oxford*, 191 F.R.D. at 375 (holding that "[t]ypicality does not require that the situations of the named representatives and the class members be identical"); *Darquea*, 2008 WL 622811, at *3 (holding that "[a] claim is typical where 'each class member's claim arises from the same course of events, and each class member make similar legal arguments to prove the defendant's liability'").

Lead Plaintiffs' claims are not only similar to, but virtually identical to, those of the members of the Class.[11]  All Class Members seek to prove that Settling Defendants made materially false and

---

[10]   The Supreme Court has noted that the "commonality and typicality requirements of Rule 23(a) tend to merge."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *accord Ohman v. Kahn*, No. 87 Civ. 7117 (JFK), 1990 WL 97756, at *4 (S.D.N.Y. June 27, 1990) ("The typicality requirement of Rule 23(a)(3) is a close cousin of the commonality requirement.").  Accordingly, inasmuch as commonality has been established, typicality is also established.

[11]   Reflecting the composition of the Class, DSM and Indiana Treasurer purchased the Senior Notes, and Mr. Crawford purchased OSG common stock.

misleading statements in the Registration Statement and during the Class Period.  As such, Lead Plaintiffs and the other members of the Class have allegedly been injured by the same course of conduct by the Settling Defendants.  Moreover, the damages that they seek arise from the purchase or acquisition of OSG common shares or Senior Notes at prices that were purportedly artificially inflated as a result of Settling Defendants' allegedly false and misleading statements, and the subsequent declines in the prices of those securities following adverse disclosures.  Thus, Lead Plaintiffs stand in precisely the same position as other purchasers of OSG securities during the Class Period. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) ("[T]he element of typicality is met because the class members have been allegedly harmed by the same course of conduct (the distribution of false and misleading information which artificially inflated the stock of [the company]).").

### 4.    Lead Plaintiffs and Their Counsel Have Fairly and Adequately Represented the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This requirement is met if a plaintiff does not have interests that are antagonistic to those of the class, and his chosen counsel is qualified, experienced, and generally able to conduct the litigation. *Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000).  "'The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class.'"  *Platinum*, 2014 WL 3500655, at *10.

Lead Plaintiffs satisfy both prongs of the adequacy test.  Indeed, they have successfully represented the interests of the proposed Class and demonstrated their adequacy to prosecute this Action.  Moreover, none of Lead Plaintiffs' interests are antagonistic to those of the Class.  All members of the Class allege claims arising from the same wrongful conduct and are based on the same legal theories as the claims advanced by Lead Plaintiffs.  Lead Plaintiffs are committed to the

- 18 -

vigorous prosecution of this Action.  The interests of the other members of the Class, therefore, will be protected by Lead Plaintiffs.

As to the second prong regarding adequacy of counsel, Lead Plaintiffs have retained the law firm of Robbins Geller as Lead Counsel for the proposed Class, a firm that has substantial experience in the prosecution of securities class actions.  For example, among other noteworthy securities fraud cases, Robbins Geller served as sole lead counsel in the *Enron* litigation, in which it obtained recoveries which collectively represent the largest recovery ever obtained in a putative shareholder class action.[12]  Specifically, the court stated:

> The firm is comprised of probably the most prominent securities class action attorneys in the country.  It is not surprising that Defendants have not argued that counsel is not adequate.  Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities is evident throughout this suit.

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006).

### D.    Lead Plaintiffs Satisfy the Rule 23(b)(3) Requirements

In addition to meeting the requirements of Rule 23(a), the requirements of Rule 23(b)(3) are met; *i.e.*, common questions of law or fact predominate over any questions affecting only individual members, and a class action is superior to other available means of adjudication.

### 1.    Common Questions of Law or Fact Predominate

It is well established that in determining whether common questions predominate, a court's inquiry should be directed primarily toward whether the issue of liability is common to members of the class.  "Generally, the "'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *IPO Preliminary Approval*, 260 F.R.D. at 92. Indeed, "resolution of some of the legal or factual questions that qualify each class member's case as

---

[12]    The firm résumé of Robbins Geller is attached hereto as Exhibit A.

a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

The Supreme Court has noted that the predominance requirement "is a test readily met in certain cases alleging consumer or securities fraud." *Amchem*, 521 U.S. at 625. Common issues of law and fact will generally predominate in actions alleging that materially false representations were made to large groups of investors. *See, e.g.*, *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 WL 1021819, at *10 (E.D.N.Y. Apr. 27, 1999) ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues."). Where, as here, a complaint alleges that the defendants have made uniform false and misleading representations, the issues of law and fact that flow from that conduct predominate over any individual issues, rendering class treatment appropriate. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

As noted in the discussion of commonality, above, the nature of this case and the elements of Lead Plaintiffs' claims involve issues primarily focusing on Settling Defendants' alleged misrepresentations and false statements in the Registration Statement for the Senior Notes and during the Class Period – in short, Settling Defendants' liability to the proposed Class. *Darquea*, 2008 WL 622811, at *5 ("each class member, if they were to bring individual actions, would be required to prove the existence of the alleged activities of the Defendants in order to prove liability"). Thus, all members of the Class are substantially – if not identically – situated with respect to the alleged claims. In this case, it is difficult to discern any liability issues that are not common to the claims of each member of the Class. Once common questions of liability are

- 20 -

resolved, all that remains is the ministerial act of computing the amount of damages suffered by each Class Member. Thus, the predominance requirement is satisfied.

> **2. A Class Action Is Superior to Other Available Methods for the Efficient Adjudication of This Controversy**

Not only do common questions predominate in the present litigation, but, as further required by Rule 23(b)(3), "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3) identifies factors to be considered in making a "superiority" determination: (a) the interest of members of the class in individually controlling the prosecution of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by members of the class; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action.

In this litigation, the interest of Class Members in individually controlling the prosecution of separate actions is minimal, because the cost and expense of individual actions, when weighed against the individual recoveries potentially obtainable, would be prohibitive. Thus, the first superiority factor is satisfied. *See Blech*, 187 F.R.D. at 107 (superiority requirement satisfied as "[m]ultiple lawsuits would be costly and inefficient"). Likewise, there is no dispute that this Court is a desirable forum for concentrating the litigation of Class Members' claims. *In re AMF Bowling Sec. Litig.*, No. 99 Civ. 3023 (DC), 2002 WL 461513, at *8 (S.D.N.Y. Mar. 26, 2002) ("For each investor to litigate individually 'would risk disparate results among those seeking redress, . . . would exponentially increase the costs of litigation for all, and would be a particularly inefficient use of judicial resources.'"); *Arakis Energy*, 1999 WL 1021819, at *11 ("In addition, were plaintiffs required to bring individual actions, the potential for duplicative litigation and consequent waste of judicial and party resources would be significant.").

- 21 -

Finally, Lead Plaintiffs do not envision any difficulties likely to be encountered in the management of this case as a class action or the administration of the proposed Partial Settlement. This Action embodies all of the hallmarks of the types of securities actions that are routinely certified in this Circuit and elsewhere. Thus, a class action is superior to other available methods – particularly duplicative individual lawsuits – for the fair and efficient adjudication of a controversy affecting a large number of securities holders injured by violations of the federal securities laws:

> [A] class action [in a federal securities action] may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf.

*Green*, 406 F.2d at 296.

## V.    THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE FORM OF THE PROOF OF CLAIM ARE APPROPRIATE

### A.    The Scope of the Notice Program Is Adequate

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement. Rather, when measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules, the court should look to its reasonableness. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007). It is clearly established that "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id*. In fact, notice programs such as the one proposed by Lead Counsel have been approved as adequate under the Due Process Clause and Rule 23 in a multitude of class action settlements. *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2007 WL 1191048, at *11 (E.D.N.Y. Apr. 19, 2007) (approving proposed notice program where

- 22 -

notice mailed to shareholders of record listed on transfer records and to "more than 2500 of the largest banks, brokerages, and other nominees"); *In re Prudential Sec. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y.) (approving proposed notice and noting mailing of notice to each identifiable class member's last known address is "a procedure that has been given wide-spread approval in other class actions"), *aff'd sub nom. Toland v. Prudential Sec. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996). Here, despite OSG's bankruptcy, through OSG's transfer agent, Lead Counsel are ensuring that every known avenue for obtaining the identity of Class Members is being utilized to disseminate the Notice. Therefore, it is reasonable to conclude that the Notice will reach the vast majority of the Class Members, is adequate and should be approved by the Court.

### B. The Content of the Notice Is Adequate

The content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), 2006 WL 3498590, at *6 (S.D.N.Y. Dec. 4, 2006); *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (the notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings'").

Specifically with respect to cases filed under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), notices of settlements must state (i) the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis; (ii) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiff prevailed, a statement from each party concerning the issue(s) on which the parties disagree; (iii) a statement indicating which parties or counsel intend to make an application for an award of attorneys' fees and costs (including the amount of such fees and costs determined on

- 23 -

an average per share basis), and a brief explanation supporting the fees and costs sought; (iv) the name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement published or otherwise disseminated to the class; (v) a brief statement explaining the reasons why the parties are proposing the settlement; and (vi) such other information as may be required by the court. *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed Notice contains all of the information required by the PSLRA. *See* Notice, Exhibit A-1 to the Stipulations. The information is also provided in a format that is accessible to the reader. In addition, the Notice advises recipients that they have the right to exclude themselves from the Partial Settlement, or to object to any aspect thereof. Furthermore, the Notice provides recipients with the contact information for the Claims Administrator, Gilardi & Co. LLC, and Lead Counsel. Finally, the proposed format is the same or similar to formats that have been approved by many other courts in this jurisdiction, including this Court. Therefore, Lead Counsel respectfully submit that the Court should approve the form of notice.

## VI.   PROPOSED SCHEDULE

If the Court grants preliminary approval of the proposed Partial Settlement, the parties respectfully submit the following procedural schedule for the Court's review:

| Event | Time for Compliance |
| --- | --- |
| Deadline for mailing the Notice and Proof of Claim and Release form to Class Members (the "Notice Date") | 21 business days after entry of the preliminary approval orders |
| Deadline for publishing the Summary Notice | 7 calendar days after the Notice Date |
| Deadline for filing Proof of Claim and Release forms | 90 calendar days after the Notice Date |

- 24 -

| Event | Time for Compliance |
|---|---|
| Deadline for submitting exclusion requests or objections | 21 calendar days before the Settlement Hearing |
| Filing of memoranda in support of approval of the Partial Settlement and Plan of Allocation, and in support of application for attorneys' fees and expenses | 28 calendar days before the Settlement Hearing |
| Filing of reply memoranda | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | Approximately 100 days following entry of the preliminary approval orders, at the Court's convenience |

## VII.  CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court preliminarily approve the Partial Settlement and enter the preliminary approval orders.

DATED:  August 6, 2015                     Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
ROBERT R. HENSSLER JR.


s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
bhenssler@rgrdlaw.com

- 25 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
ALAN I. ELLMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
aellman@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

- 26 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 6, 2015, I caused the foregoing Lead Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Settlement to be served electronically on all ECF participants.

s/ Ellen Gusikoff Stewart

ELLEN GUSIKOFF STEWART

1043372_1