UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re OSG SECURITIES LITIGATION

This Document Relates To:

    ALL ACTIONS.

x
:
:
:
:
:
:
:
:
x

Civil Action No. 1:12-cv-07948-SAS

<u>CLASS ACTION</u>

LEAD COUNSEL'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND
EXPENSES AND REIMBURSEMENT OF
LEAD PLAINTIFFS' EXPENSES

1087004_1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.    PRELIMINARY STATEMENT .............................................................................. 1

III.    HISTORY AND BACKGROUND OF THE ACTION ........................................... 4

IV.    ARGUMENT ........................................................................................................... 4

    A.    Lead Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund .................................................................. 4

    B.    The Court Should Award a Reasonable Percentage of the Common Fund ............ 5

    C.    The Relevant Factors Confirm that the Requested Fee Is Reasonable ................... 8

        1.    The Time and Labor Expended by Counsel ................................................. 9

        2.    The Risks of the Litigation ........................................................................ 10

            a.    The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee ........................................................... 10

            b.    Litigation Risks ................................................................................ 12

            c.    Risk as to Damages .......................................................................... 14

        3.    The Magnitude and Complexity of the Litigation ..................................... 14

        4.    The Quality of Representation ................................................................... 16

        5.    Public Policy Considerations ..................................................................... 17

        6.    Second Circuit Precedent Supports the 30% Fee as a Reasonable Percentage of the Total Recovery ............................................................. 18

        7.    A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request ..................................................................................................... 20

        8.    The Class' Reaction to the Fee Request .................................................... 22

V.    PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION ...................... 23

VI.    LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE TIME AND EXPENSES ...................................................................................... 24

- i -

**Page**

VII.   CONCLUSION..............................................................................................................25

- ii -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ....................................................................12

*Aponte v. Comprehensive Health Mgmt.*,
  No. 10 Civ. 4825 (JLC), 2013 WL 1364147
  (S.D.N.Y. Apr. 2, 2013)........................................................................7, 10

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)..................................................................................17

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)..............................................................................5, 17

*Blum v. Stenson*,
  465 U.S. 886 (1984)..................................................................................18

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)....................................................................................4

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988) ....................................................................6

*Chatelain v. Prudential-Bache Sec.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) ......................................................14, 18

*City of Providence v. Aéropostale, Inc.*,
  No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494
  (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) ..............................................................7, 20

*Clark v. Ecolab Inc.*,
  No. 07 Civ. 8623 (PAC), 2010 WL 1948198
  (S.D.N.Y. May 11, 2010)...........................................................................19

*Collins v. Olin Corp.*,
  No. 3:03-cv-945 (CFD), 2010 WL 1677764
  (D. Conn. Apr. 21, 2010) ...........................................................................19

*Cornwell v. Credit Suisse Grp.*,
  No. 08-cv-03758 (VM), slip op.
  (S.D.N.Y. July 18, 2011) ............................................................................21

- iii -

Page

*Davis v. J.P. Morgan Chase & Co.*,
    827 F. Supp. 2d 172 (W.D.N.Y. 2011) ...........................................................................6, 21

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...........................................................................................10

*Elliot v. Leatherstocking Corp.*,
    No. 3:10-CV-0934, 2012 WL 6024572
    (N.D.N.Y. Dec. 4, 2012) .................................................................................................8

*Faught v. Am. Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2011) .......................................................................................6

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ...................................................................................... *passim*

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ...........................................................................................6

*Hayes v. Harmony Gold Mining Co.*,
    509 F. App'x 21 (2d Cir. 2013) .......................................................................................5

*Hicks v. Morgan Stanley*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792
    (S.D.N.Y. Oct. 24, 2005) ............................................................................................7, 24

*Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) .......................................................................................12

*In re Am. Bank Note Holographics*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ....................................................................7, 8, 10

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    No. 04 Civ. 8141 (DAB), 2010 WL 5060697
    (S.D.N.Y. Dec. 2, 2010) ................................................................................................24

*In re Amaranth Nat. Gas Commodities Litig.*,
    No. 07 Civ. 6377(SAS), 2012 WL 2149094
    (S.D.N.Y. June 11, 2012) ...............................................................................................19

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    No. MDL 1500, 2006 WL 903236
    (S.D.N.Y. Apr. 6, 2006) .................................................................................................15

- iv -

**Page**

*In re AremisSoft Corp. Sec. Litig.*,
 210 F.R.D. 109 (D.N.J. 2002) ................................................................21

*In re Bayer AG Sec. Litig.*,
 No. 03 Civ. 1546 (WHP), 2008 WL 5336691
 (S.D.N.Y. Dec. 15, 2008) ......................................................................15

*In re Bisys Sec. Litig.*,
 No. 04 Civ. 3840 (JSR), 2007 WL 2049726
 (S.D.N.Y. July 16, 2007) ........................................................7, 16, 20, 21

*In re Brown Co. Sec. Litig.*,
 355 F. Supp. 574 (S.D.N.Y. 1973) ........................................................15

*In re Camelot Info. Sys. Inc. Sec. Litig.*,
 No. 1:12-cv-00086-PGG, slip op.
 (S.D.N.Y. July 1, 2015) .........................................................................19

*In re Celestica Inc. Sec. Litig.*,
 No. 07-CV-00312-GBD, slip op.
 (S.D.N.Y. July 28, 2015) .......................................................................19

*In re China Sunergy Sec. Litig.*,
 No. 07 Civ. 7895 (DAB), 2011 WL 1899715
 (S.D.N.Y. May 13, 2011) .......................................................................23

*In re Comverse Tech.*,
 No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354
 (E.D.N.Y. June 24, 2010) ................................................................10, 21

*In re Cont'l Ill. Sec. Litig.*,
 962 F.2d 566 (7th Cir. 1992) .................................................................10

*In re Flag Telecom Holdings*,
 No. 02-CV-3400 (CM)(PED), 2010 WL 4537550
 (S.D.N.Y. Nov. 8, 2010) ...............................................................16, 23, 25

*In re Global Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................7, 23

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
 55 F.3d 768 (3d Cir. 1995) .....................................................................6

1087004_1

**Page**

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) ...................................................................................8

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)............................................................................15, 22

*In re IMAX Sec. Litig.*,
    No. 06 Civ. 6128 (NRB), 2012 WL 3133476
    (S.D.N.Y. Aug. 1, 2012) .............................................................................................7

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003)......................................................................23

*In re Interpublic Sec. Litig.*,
    No. 02 Civ. 6527 (DLC), 2004 WL 2397190
    (S.D.N.Y. Oct. 26, 2004) ............................................................................................5

*In re Ivan F. Boesky Sec. Litig.*,
    888 F. Supp. 551 (S.D.N.Y. 1995) ...........................................................................20

*In re JAKKS Pac., Inc. S'holders Class Action Litig.*,
    No. 04-CV-8807 (RJS), slip op.
    (S.D.N.Y. Oct. 28, 2010) ..........................................................................................19

*In re JDS Uniphase Corp. Sec. Litig.*,
    No. C-02-1486 CW (EDL), 2007 WL 4788556
    (N.D. Cal. Nov. 27, 2007)........................................................................................12

*In re L.G. Philips LCD Co., Ltd. Sec. Litig.*,
    No. 1:07-cv-00909-RJS, slip op.
    (S.D.N.Y. Mar. 17, 2011) .........................................................................................19

*In re LaBranche Sec. Litig.*,
    No. 03-CV-8201(RWS), slip op.
    (S.D.N.Y. Jan. 22, 2009)...........................................................................................19

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ..............................................................................16

*In re Med. X-Ray Film Antitrust Litig.*,
    No. CV-93-5904, 1998 WL 661515
    (E.D.N.Y. Aug. 7, 1998)...........................................................................................17

- vi -

**Page**

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 WL 313474
   (S.D.N.Y. Feb. 1, 2007) ..................................................................................21

*In re Oracle Corp. Sec. Litig.*,
   No. C 01-00988-SI, 2009 WL 1709050
   (N.D. Cal. June 19, 2009), *aff'd*,
   627 F.3d 376 (9th Cir. 2010) ..........................................................................12

*In re Payment Card Interchange Fee & Merch. District Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) .....................................................6, 20, 21

*In re Pfizer Inc. Sec. Litig.*,
   No. 4-CV-9866-LTS-HBP, 2014 WL 3921230
   (S.D.N.Y. July 8, 2014) ...................................................................................12

*In re Prudential Sec. Ltd. P'ships Litig.*,
   985 F. Supp. 410 (S.D.N.Y. 1997) ..................................................................10

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ............................................................................22

*In re Sadia S.A. Sec. Litig.*,
   No. 08 Civ. 9528 (SAS), 2011 WL 6825235
   (S.D.N.Y. Dec. 28, 2011) ......................................................................7, 11, 24

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) .................................................................8

*In re Telik*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) .........................................................10, 21

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995) ................................................................................6

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115808
   (S.D.N.Y. Nov. 7, 2007) ....................................................................4, 7, 16, 25

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom.*
   *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) .................................................................................7

- vii -

**Page**

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985),
*aff'd*, 798 F.2d 35 (2d Cir. 1986) ................................................................18, 20

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)...................................................................18

*J. I. Case Co. v. Borak*,
377 U.S. 426 (1964)................................................................................................5

*Johnston v. Comerica Mortg. Corp.*,
83 F.3d 241 (8th Cir. 1996) ...................................................................................6

*Khait v. Whirlpool Corp.*,
No. 06-6381 (ALC), 2010 WL 2025106
(E.D.N.Y. Jan. 20, 2010) .....................................................................................19

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................... *passim*

*Mathes v. Roberts*,
85 F.R.D. 710 (S.D.N.Y. 1980) ...........................................................................15

*McMahon v. Olivier Cheng Catering & Events, LLC*,
No. 08 Civ. 8713 (PGG), 2010 WL 2399328
(S.D.N.Y. Mar. 3, 2010) ......................................................................................19

*Menkes v. Stolt-Nielsen S.A.*,
No. 3:03CV00409(DJS), 2011 U.S. Dist. LEXIS 7066
(D. Conn. Jan. 25, 2011) ......................................................................................19

*Missouri v. Jenkins*,
491 U.S. 274 (1989)........................................................................................18, 21

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
___ U.S. ___, 135 S. Ct. 1318 (2015)..................................................................13

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) .................................................................................6

*Rawlings v. Prudential-Bache Props.*,
9 F.3d 513 (6th Cir. 1993) .....................................................................................6

- viii -

**Page**

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992).........................................................................................17

*Reyes v. Buddha-Bar NYC*,
    No. 08 Civ. 02494 (DF), 2009 WL 5841177
    (S.D.N.Y. May 28, 2009).....................................................................................................20

*Robbins v. Koger Props.*,
    116 F.3d 1441 (11th Cir. 1997) ..........................................................................................12

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999)...............................................................................................4, 6

*Schnall v. Annuity & Life Re (Holdings), Ltd.*,
    No. 02 CV 2133 (EBB), slip op.
    (D. Conn. Jan. 21, 2005).....................................................................................................19

*Silverberg v. People's Bank*,
    23 F. App'x 46 (2d Cir. 2001) ............................................................................................18

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ..............................................................................................6

*Stefaniak v. HSBC Bank USA, N.A.*,
    No. 1:05-CV-720 S, 2008 WL 7630102
    (W.D.N.Y. June 28, 2008)...................................................................................................20

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ................................................................................................6

*Taft v. Ackermans*,
    No. 02 Civ. 7951 (PKL), 2007 WL 414493
    (S.D.N.Y. Jan. 31, 2007).....................................................................................................19

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
    No. 01-CV-11814 (MP), 2004 WL 1087261
    (S.D.N.Y. May 14, 2004)................................................................................................10, 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...........................................................................................................5, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005)................................................................................................5, 21

1087004_1

Page

*Waterford Township Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
   No. 1:10-cv-00864-SLT-RER, slip op.
   (E.D.N.Y. Sept. 28, 2015) ....................................................................................................19

*Westerfield v. Wash. Mut. Bank*,
   No. 06-CV-2817 (JMA), 2009 WL 5841129
   (E.D.N.Y. Oct. 8, 2009) ........................................................................................................19

*Zerkle v. Cleveland-Cliffs Iron Co.*,
   52 F.R.D. 151 (S.D.N.Y. 1971) ............................................................................................15

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §77k ............................................................................................................................................3
   §77z-1(a)(4) ............................................................................................................................24
   §77z-1(a)(6) .........................................................................................................................3, 7
   §78j(b) .......................................................................................................................................2
   §78u-4(a)(4) ...........................................................................................................................24
   §78u-4(a)(6) ........................................................................................................................3, 7

**SECONDARY AUTHORITIES**

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
*Federal Practice and Procedure* (3d ed. 2005)
   §1803 .........................................................................................................................................4

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
*Securities Class Action Settlements: 2014 Review and Analysis*
(Cornerstone Research 2015) ....................................................................................................3

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*,
   108 F.R.D. 237 (Oct. 8, 1985) ..................................................................................................6

1087004_1

## I.    INTRODUCTION

Lead Counsel Robbins Geller Rudman & Dowd LLP have obtained recoveries for the Class that exceed $31 million – an outstanding result, achieved in spite of serious obstacles to recovery in the Action.[1]   In addition to this substantial cash component, Lead Counsel also negotiated that the Class is to receive 15% of the net recovery from OSG's malpractice lawsuit against Proskauer Rose LLP, its former legal counsel (together with the cash recovery, the "Settlements").   Lead Counsel now respectfully move this Court for an award of attorneys' fees in the amount of 30% of the Settlements.   Lead Counsel also respectfully request $338,918.76 in expenses that were reasonably and necessarily incurred in prosecuting and resolving the Action against Defendants and obtaining these Settlements for the benefit of the Class, and awards to the three Lead Plaintiffs (Stichting Pensioenfonds DSM Nederland ("DSM"), Indiana Treasurer of State ("Indiana Treasurer"), and Lloyd Crawford) for their service to the Class in the aggregate amount of $26,250.[2]

## II.    PRELIMINARY STATEMENT

The $31.676 million total recovery obtained by Lead Counsel is an excellent result for the Class and represents the culmination of more than three years of litigation in this Court and the

---

[1]    Capitalized terms used herein are defined and have the meanings contained in the Stipulations of Settlement, the accompanying Declaration of David A. Rosenfeld in Support of Lead Plaintiffs' Motion for Final Approval of Settlements and Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Reimbursement of Lead Plaintiffs' Expenses (the "Rosenfeld Decl."), and in Lead Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Settlements and Plan of Allocation ("Settlement Memorandum"), submitted concurrently herewith.

[2]    The Notice mailed to potential Class Members stated that Lead Counsel would apply to the Court for attorneys' fees not to exceed 30% of the Settlement Fund, expenses not to exceed $400,000, plus interest thereon, to be paid from the Settlement Fund, and a maximum of $10,000 to each of the Lead Plaintiffs.

- 1 -

Bankruptcy Court, and arm's-length negotiations in a case that presented complex factual and legal issues.[3]

Lead Counsel performed an extensive investigation into OSG's business in connection with framing and analyzing Plaintiffs' claims, creatively resolved the Class' claim in the Bankruptcy Court, and conducted extensive fact discovery following denial of Defendants' motions to dismiss. *See* Rosenfeld Decl., ¶6.  It was only through the diligent efforts of Plaintiffs and Lead Counsel that the members of the Class will be receiving compensation for Defendants' alleged wrongdoing.

Even though Plaintiffs believed in the strength of their claims, they faced substantial risks to continued litigation.  Plaintiffs may not have obtained class certification, and there were additional risks that the case could be summarily disposed of after years of litigation upon Defendants' motions for summary judgment following the close of fact discovery, or at trial.[4]  Plaintiffs also faced difficult legal challenges in proving falsity, materiality, scienter, and loss causation with respect to Defendants' statements.  Plaintiffs' core theory of the case was OSG's compliance with Section 956 of the tax code.  Whether Plaintiffs could establish that Defendants acted knowingly, recklessly, or negligently with respect to this "notoriously esoteric" provision was uncertain.  The success of any of the asserted defenses would affect the amount of damages the Class could potentially recover.  If any or all of Defendants' positions prevailed, or if the Class Period was shortened, liability would not have been established and/or damages could have been significantly less than Lead Counsel's damages expert had calculated.  Plaintiffs' expert calculated a maximum of $41 million in §10(b)

---

[3]   The $31.676 million is broken down as follows: $10.5 million from the Individual Defendants; $4 million from the Underwriter Defendants; $1.75 million from PwC; and $15.426 million from the Bankruptcy Court Settlement.

[4]   In fact, the Court granted defendant Ernst & Young's motion for summary judgment earlier this year.  Rosenfeld Decl., ¶¶70-72.

damages and $24 million in §11 damages based on the decline following the October 22, 2012 announcement that ended the Class Period. Rosenfeld Decl., ¶97. The proposed settlement allocates a minimum of $20.9 million to the §11 claims – a phenomenal recovery, and well above the average recovery when compared to actual investor losses. *See id*.; Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2014 Review and Analysis*, at 9 (Cornerstone Research 2015).

For their efforts and the risks and contingencies they faced over the last three years, Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 30% of the Settlements, plus expenses in the amount of $338,918.76, plus interest on both amounts at the same rate that is earned on those amounts.[5] This fee request has the full support of each of the Lead Plaintiffs. *See* Declaration of Ger Van Neer as representative of DSM ("Van Neer Decl."), ¶¶15-19, Declaration of Jillean Battle as representative of Indiana Treasurer ("Battle Decl."), ¶¶15-19, and Declaration of Lloyd Crawford ("Crawford Decl."), ¶¶14-18, filed herewith. Following an extensive Court-ordered notice program, not a single Class Member has objected to the maximum amount of fees and expenses set forth in the Notice, and Lead Counsel respectfully submit that the requested amounts are fair and reasonable under the circumstances.[6] Finally, Lead Plaintiffs DSM, Indiana Treasurer, and Lloyd Crawford seek awards of $10,000, $7,250, and $9,000, respectively, for their

---

[5]   Under the PSLRA, fees and expenses awarded to counsel for the class include "prejudgment interest actually paid to the class." 15 U.S.C. §77z-1(a)(6); 15 U.S.C. §78u-4(a)(6).

[6]   As of the date of this fee memorandum, which is before the November 10, 2015 deadline for filing objections, Lead Counsel have not received any objections to the fee request. Pursuant to the Court's Notice Orders, copies of the Notice were mailed to more than 65,900 potential members of the Class and nominees, advising them that Lead Counsel intended to apply to the Court for an award of attorneys' fees not to exceed 30% of the total recovery, plus expenses of no greater than $400,000, plus interest on both amounts, and awards to each of the Lead Plaintiffs. If any timely objections are received from Class Members, Lead Counsel will address them in a reply brief, which will be filed with the Court no later than November 24, 2015.

- 3 -

time and expenses incurred in representing the Class.  Van Neer Decl., ¶¶20-21; Battle Decl., ¶¶20-21; and Crawford Decl., ¶¶19-20.

## III.   HISTORY AND BACKGROUND OF THE ACTION

The Court is respectfully referred to the accompanying Rosenfeld Declaration for a full discussion of, *inter alia*, the factual background and procedural history of the Action, the litigation efforts of Lead Counsel, the significant risks of continued litigation, and a discussion of the negotiations leading to the Settlements.

## IV.   ARGUMENT

### A.   Lead Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *Savoie v. Merchs. Bank*, 166 F.3d 456, 459-60 (2d Cir. 1999).  "The court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts."  7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1803, at 325 (3d ed. 2005).  The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf.  *See also Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See, e.g.*, *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002). Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

Courts in this Circuit have consistently adhered to these teachings. *See In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'") (citation omitted). The "[d]etermination of 'reasonableness' is within the discretion of the district court." *Id.*

## B. The Court Should Award a Reasonable Percentage of the Common Fund

Most courts find that the percentage-of-the-fund method, under which counsel is awarded a percentage of the fund that they created, is the preferred means to determine a fee because it "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 122 (2d Cir. 2005);[7] *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d

---

[7]    Citations are omitted throughout, unless otherwise indicated.

Cir. 2013) ("[A]s the district court recognized, the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class."). The percentage approach also recognizes that the quality of counsel's services is measured best by the results achieved and is most consistent with the system typically used in the marketplace to compensate attorneys in non-class contingency cases.[8]

The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *See Goldberger*, 209 F.3d at 48-49 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Savoie*, 166 F.3d at 460 (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases");[9] *see also* Report

---

[8]    *See, e.g.*, *In re Payment Card Interchange Fee & Merch. District Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work. . . .  The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel."); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (the "advantages of the percentage method . . . are that it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made, and that it is consistent with the system typically used by individual clients to compensate their attorneys").

[9]    All federal Courts of Appeal to consider the matter have approved the percentage method, with two circuits requiring its use in common fund cases.  *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).  The Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases. *See Faught*, 668 F.3d at 1242; *Swedish Hosp.*, 1 F.3d at 1271.

- 6 -

of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 254-59 (Oct. 8, 1985) (recognizing the many shortfalls of the lodestar method and unequivocally recommending that courts use the percentage method in common fund cases).[10]

The trend among district courts in this Circuit, although not uniform, is to award fees using the percentage-of-the-fund method, rather than the lodestar approach. *See, e.g.*, *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494, at *10-*11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *Aponte v. Comprehensive Health Mgmt.*, No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at *6 (S.D.N.Y. Apr. 2, 2013) ("The Court finds that the amount of fees requested is fair and reasonable using the 'percentage-of-recovery' method, which is consistent with the 'trend in this Circuit.'"); *In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2012 WL 3133476, at *5 (S.D.N.Y. Aug. 1, 2012) ("'the percentage method continues to be the trend of district courts in th[e Second] Circuit'"); *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *3 (S.D.N.Y. Dec. 28, 2011); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *2 (S.D.N.Y. July 16, 2007); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005) ("The trend in the Second Circuit recently has been to use the percentage method."); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003) (trend in this Circuit is to award attorneys' fees using the percentage method), *aff'd sub nom. Wal-Mart Stores, Inc. v.*

---

[10]   The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §77z-1(a)(6); 15 U.S.C. §78u-4(a)(6) (emphasis added). Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions. *See Veeco*, 2007 WL 4115808, at *3; *Maley*, 186 F. Supp. 2d at 370; *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 465-66 (S.D.N.Y. 2004).

*Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005); *Maley*, 186 F. Supp. 2d at 370 (trend in this Circuit is to use the percentage method); *see also In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (stating that "[c]ourts increasingly have come to recognize the shortcomings of the lodestar/multiplier method as a universal rule for compensation"); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992) (holding that "the lodestar formula is undesirable if an alternative is available").

Given the language of the PSLRA, the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger*, and the trend among the district courts in this Circuit, the Court should award Lead Counsel attorneys' fees based on a percentage of the fund. The percentage approach not only directly aligns the interests of counsel and the class (*Elliot v. Leatherstocking Corp.*, No. 3:10-CV-0934 (MAD/DEP), 2012 WL 6024572, at *5 (N.D.N.Y. Dec. 4, 2012)), it also recognizes that the quality of counsel's services is measured best by the results achieved, and "can serve as a proxy for the market in setting counsel fees." *Am. Bank Note*, 127 F. Supp. 2d at 432.

**C.    The Relevant Factors Confirm that the Requested Fee Is Reasonable**

In *Goldberger*, the Second Circuit explained that whether the court uses the percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including:

- the time and labor expended by counsel;

- the risks of the litigation;

- the magnitude and complexity of the litigation;

- the requested fee in relation to the settlement;

- the quality of representation; and

- public policy considerations.

*Goldberger*, 209 F.3d at 50.  Consideration of these factors demonstrates that the requested fee is fair and reasonable.

### 1.     The Time and Labor Expended by Counsel

Plaintiffs' Counsel, which includes Lead Counsel, bankruptcy counsel, and an additional firm that performed work for the Class at Lead Counsel's direction, have expended substantial time and effort pursuing the Action on behalf of the Class.  Since the Action commenced over three years ago, Plaintiffs' Counsel and their paraprofessionals devoted over 12,900 hours to prosecuting the Class' claims in this Court and in the Bankruptcy Court.  As discussed more fully above and in the Rosenfeld Declaration, submitted herewith, Lead Counsel: investigated the facts and transactions giving rise to this Action to develop the detailed factual allegations necessary to comply with the PSLRA; drafted several amended complaints; successfully opposed Defendants' four motions to dismiss; filed a claim in OSG's bankruptcy proceeding and successfully negotiated a creative resolution of that claim that provides a substantial cash benefit to Class Members, as well as a contingent right to a portion of the proceeds of OSG's lawsuit against Proskauer Rose LLP; obtained and analyzed over two million pages of documents from Defendants and third parties, including OSG; responded to discovery requests propounded by Defendants; took or defended ten fact witness depositions; engaged in extensive meet and confers with Defendants and third parties concerning discovery disputes and the production of evidence; retained experts who consulted on issues of income taxation, accounting, materiality, loss causation, and damages; and mediated the resolution of the case with Judge Phillips.  Rosenfeld Decl., ¶¶6, 27-69, 77-83.  Moreover, Lead Counsel, with the assistance of their damages expert, calculated the estimated damages suffered by the Class and prepared the proposed Plan of Allocation.  Lead Counsel's work in the Action will not end with the Court's approval of the Settlements.  Additional hours and resources will necessarily be expended

- 9 -

assisting members of the Class with the completion and submission of their Proof of Claim forms, shepherding the claims process, and responding to Class Member inquiries. *See Aponte*, 2013 WL 1364147, at *6. The significant amount of time and effort devoted to this case by Lead Counsel to obtain a combined $31.676 million recovery confirms that the 30% fee request is reasonable.

### 2.  The Risks of the Litigation

#### a.  The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee

The risk undertaken in the litigation is often considered the most important *Goldberger* factor. *Goldberger*, 209 F.3d at 54; *In re Comverse Tech.*, No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010); *In re Telik*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008). The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *Am. Bank Note*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."). This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account

- 10 -

for, among other things, risk of underpayment to counsel).  When considering the reasonableness of attorneys' fees in a contingency action, the court should consider the risks of the litigation at the time the suit was brought.  *Goldberger*, 209 F.3d at 55; *Sadia*, 2011 WL 6825235, at *3.

The reasonableness of the requested fee is also supported by an evaluation of the risks undertaken by Lead Counsel in prosecuting this class action.  Lead Counsel undertook this Action on a wholly-contingent fee basis, investing a substantial amount of time and money to prosecute this Action without a guarantee of compensation or even the recovery of expenses.  Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel have not been compensated for any time or expenses since this case began in 2012, and would have received no compensation or even payment of their expenses had this case not been successful.

From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for investing the time and money the case would require.  In undertaking that responsibility, Lead Counsel were obligated to assure that sufficient attorney and paraprofessional resources were dedicated to prosecuting the Action and that funds were available to compensate staff and to pay for the considerable costs which a case such as this entails.  Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

In addition to advancing litigation expenses over the past three years, Lead Counsel faced the possibility that they would receive no attorneys' fees.  It is wrong to presume that a law firm handling complex contingent litigation always wins.  There are numerous instances where in

- 11 -

contingent cases such as this one, plaintiff's counsel have expended thousands of hours without receiving any compensation.[11]

Losses in contingent fee litigations, especially those brought under the PSLRA, are exceedingly expensive.  As a result, the fees that are awarded in successful litigations are used to cover expenses incurred during the course of the litigation and are taxed by federal, state, and local authorities.

### b.    Litigation Risks

While Plaintiffs remain confident in their ability to prove their claims, including that the risks of "joint and several" liability were well-known within OSG, PwC failed to conduct any audit of OSG's Section 956 liability, the Individual Defendants acted with scienter, as well as that the Individual Defendants and Underwriter Defendants failed to conduct adequate due diligence prior to the Senior Notes Offering, and to rebut Defendants' defenses such as negative causation, they recognize that their ability to prove liability was far from certain.  As detailed in the Rosenfeld Declaration and in the Settlement Memorandum, Defendants raised numerous challenges to the

---

[11]    The risk of no recovery in complex cases of this type is real, and is heightened when lead counsel press to achieve the very best result for those they represent.  There are numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration despite their diligence and expertise.  *See, e.g.*, *In re Pfizer Inc. Sec. Litig.*, No. 4-CV-9866-LTS-HBP, 2014 WL 3921230 (S.D.N.Y. July 8, 2014) (dismissing ten-year-old litigation based on a *Daubert* ruling just before trial); *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 725 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor); *In re Oracle Corp. Sec. Litig.*, No. C 01-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (court granted summary judgment for defendants after eight years of litigation, after plaintiffs' counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *Robbins v. Koger Props.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion).

falsity, materiality, scienter, and causation elements of Lead Plaintiffs' claims under the federal securities laws. For example, this Court observed Section 956 "is notoriously esoteric, even among tax lawyers," Rosenfeld Decl., ¶87, and Defendants had vigorously argued that they could not be expected to understand its implications for OSG's tax liability. *Id*. Defendants further contended that they could not have been expected to identify this arcane issue when dozens of experts failed to do so, including OSG's tax and accounting professionals, several prominent law firms, and two auditing firms – all of whom affirmatively and repeatedly assured the Individual Defendants that OSG was in compliance with the same tax and accounting laws, rules and regulations that gave rise to OSG's restatement. *Id*., ¶88. Plaintiffs faced the further risk that PwC's audit opinion could be found to be an inactionable opinion, based on the recent *Omnicare* decision issued by the Supreme Court. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, ___ U.S. ___, 135 S. Ct. 1318 (2015). Therefore, there was significant doubt that Plaintiffs would ultimately prove that Defendants acted knowingly, recklessly or negligently, as required by the various statutes. Indeed, Defendants would never concede their liability and would continue to press these defenses at summary judgment and trial.

Plaintiffs would face practical difficulties if the case even made it to trial. The Class Period began more than eight years ago. The addition of the "joint and several" liability provision was added to OSG's credit agreements over 15 years ago. If trial witnesses could be located, their memories would likely have faded, and their testimony would likely be presented in videotaped deposition form. Rosenfeld Decl., ¶90. On the other hand, Defendants were more likely to be able to present their favorable witnesses live at trial. *Id*., ¶91.

- 13 -

### c.       Risk as to Damages

Whether Plaintiffs could prove damages also was unsettled.  Defendants strenuously disagreed with Plaintiffs' damage theories and estimates.  Among other things, the parties disagreed about whether partial disclosures not identified in the Third Amended Complaint constituted loss-causing events; whether Plaintiffs could recover damages under a "materialization of the risk" theory of loss causation; and whether confounding events would reduce recoverable damages.  Rosenfeld Decl., ¶89.  Moreover, Defendants have argued that a portion of the October 22, 2012 stock price decline resulted from non-fraud-related events.  *Id.*, ¶97.  Furthermore, by March 20, 2013, the Senior Notes had fully rebounded from their decline, and OSG's confirmed bankruptcy plan made whole those investors who held their notes until that time.  *Id.*, ¶99.  Therefore, note holders who held their notes on March 20, 2013 have suffered zero damages.  *Id.*  In order for the Class to recover damages at the level estimated by Lead Counsel's internal damages expert, they would need to prevail on each and every one of the claims alleged, for the entirety of the Class Period as alleged by Plaintiffs.  The damage assessments of the parties' respective trial experts would be sure to vary substantially, and trial would become a "battle of experts."  The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for the Defendants to minimize the Class' losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions.  Thus, even if Plaintiffs prevailed as to liability at trial, the judgment obtained could well have been only a fraction of the damages claimed.

### 3.       The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel.  *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992).  It is widely recognized that "shareholder actions are

- 14 -

notoriously complex and difficult to prove." *See In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 (WHP), 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008); *see also Mathes v. Roberts*, 85 F.R.D. 710, 713-14 (S.D.N.Y. 1980); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971). "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation."). As described in greater detail in the accompanying Settlement Memorandum and the Rosenfeld Declaration, this Action involved difficult and complex issues concerning Section 956 liability, the undisclosed risks of "joint and several" liability with respect to OSG's $4.5 billion in credit agreements, and the due diligence conducted with respect to OSG's Senior Notes Offering. Rosenfeld Decl., ¶¶85-88. Lead Counsel undertook their investigation on a contingent basis. Completing fact and expert discovery regarding events that occurred nearly a decade ago would have taken a very large investment of additional time, and would have cost several hundred thousand dollars more, at a minimum.

The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditures of judicial resources. In addition, this Action was expected to be vigorously contested, pitting not only Plaintiffs against Defendants, but Defendants against the other defendants, and each of those Defendants are represented by very experienced and qualified attorneys. *See In re Brown Co. Sec. Litig.*, 355 F. Supp. 574, 592-93 (S.D.N.Y. 1973) (standing of

- 15 -

opposing counsel underscores complexity of litigation and challenges faced by class counsel). Accordingly, these factors support the conclusion that the requested fee is reasonable and fair.

### 4.   The Quality of Representation

The quality of the representation by Plaintiffs' Counsel and the standing of that counsel at the bar are important factors that support the reasonableness of the requested fee.  The quality of the representation here is best evidenced by the quality of the result achieved.  *See In re Flag Telecom Holdings*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *28 (S.D.N.Y. Nov. 8, 2010); *Bisys*, 2007 WL 2049726, at *3.  It took a great deal of skill to achieve a settlement at this level in this particular case.  Plaintiffs' Counsel are nationally known leaders in the fields of securities class actions and complex litigation, including bankruptcy law.  The favorable Settlements are attributable to the diligence, determination, hard work, and reputation of counsel, who developed, litigated, and successfully negotiated the Settlements of this Action and obtained the creative Bankruptcy Court Settlement and a substantial immediate cash recovery in a very difficult case, without the risk of further litigation.  *See Teachers' Ret. Sys.*, 2004 WL 1087261, at *6.

Finally, courts repeatedly recognize that the quality of the opposition faced by plaintiffs' counsel should also be taken into consideration in assessing the quality of counsel's performance. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing Plaintiffs' efforts further provides the caliber of representation that was necessary to achieve the Settlement."); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms").  Here, Defendants are represented by highly respected law firms whose individual attorneys presented a very skilled defense and spared no effort in representing their clients.  Notwithstanding this formidable opposition, Plaintiffs' Counsel's ability to present a strong

- 16 -

case and to demonstrate their willingness to continue to vigorously prosecute the Action through trial and then inevitable appeals enabled Plaintiffs' Counsel to achieve very favorable Settlements for the benefit of the Class.

### 5. Public Policy Considerations

The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988). The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman*, 472 U.S. at 310; *Tellabs*, 551 U.S. at 319 (noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions). Plaintiffs' counsel in these types of cases typically are retained on a contingent basis, largely due to the huge commitment of time and expense required. The typical class representative is unlikely to be able to pursue long and protracted litigation at his or her own expense, particularly with the knowledge that others similarly situated will be able to "free ride" on these efforts at no cost or risk to themselves. Furthermore, the significant expense combined with the high degree of uncertainty of ultimate success means that contingent fees are virtually the only means of recovery in such cases. Indeed, lawyers that pursue private suits such as this on behalf of investors augment the overburdened SEC by "acting as 'private attorneys general.'" *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992). Thus, "public policy favors the granting of [attorney] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions." *Id.*[12]

---

[12] *See also Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *8 (E.D.N.Y. Aug. 7, 1998) (awarding

- 17 -

Because actionable securities fraud exists and society benefits from strong advocacy on behalf of securities holders, public policy favors the granting of the fee and expense application. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").

### 6. Second Circuit Precedent Supports the 30% Fee as a Reasonable Percentage of the Total Recovery

Regardless of which method a court uses to award attorneys' fees, the award must be reasonable under the circumstances of the particular case. *Goldberger*, 209 F.3d at 47. In selecting an appropriate fee award, the Supreme Court recognizes that a fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *Blum v. Stenson*, 465 U.S. 886, 903* (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).

On a percentage basis, the compensation requested here is well within the range of percentage fee awards within the Second Circuit. *See Silverberg v. People's Bank*, 23 F. App'x 46, 47-49 (2d Cir. 2001) (affirming district court order awarding attorneys' fees and expenses of nearly one-third of settlement fund). Indeed, the requested fee is consistent with what courts in this Circuit

---

fee of 33-1/3% because it "furthers the public policy of encouraging private lawsuits"); *Chatelain*, 805 F. Supp. at 216 (determining that "an adequate award furthers the public policy of encouraging private lawsuits in pursuance of the remedial federal securities laws"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985) (observing that "[f]air awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

commonly award in common fund cases. *See Waterford Township Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 1:10-cv-00864-SLT-RER, slip op. at 1 (E.D.N.Y. Sept. 28, 2015) (awarding 30% of $1.95 million fund); *In re Celestica Inc. Sec. Litig.*, No. 07-CV-00312-GBD, slip op. at 2 (S.D.N.Y. July 28, 2015) (awarding 30% of $30 million fund); *In re Camelot Info. Sys. Inc. Sec. Litig.*, No. 1:12-cv-00086-PGG, slip op. at 1-2 (S.D.N.Y. July 1, 2015) (awarding 30% of $2.75 million fund); *In re Amaranth Nat. Gas Commodities Litig.*, No. 07 Civ. 6377(SAS), 2012 WL 2149094, at *2 (S.D.N.Y. June 11, 2012) (awarding 30% of $77.1 million fund); *Westerfield v. Wash. Mut. Bank*, No. 06-CV-2817 (JMA), 2009 WL 5841129, at *4 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million fund); *In re L.G. Philips LCD Co., Ltd. Sec. Litig.*, No. 1:07-cv-00909-RJS, slip op. at 1 (S.D.N.Y. Mar. 17, 2011) (awarding 30% of $18 million fund); *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409(DJS), 2011 U.S. Dist. LEXIS 7066, at *18-*19 (D. Conn. Jan. 25, 2011) (awarding 33-1/3% of $2 million fund); *In re JAKKS Pac., Inc. S'holders Class Action Litig.*, No. 04-CV-8807 (RJS), slip op. at 5 (S.D.N.Y. Oct. 28, 2010) (awarding 30% of $3.925 million fund); *Schnall v. Annuity & Life Re (Holdings), Ltd.*, No. 02 CV 2133 (EBB), slip op. at 8-9 (D. Conn. Jan. 21, 2005) (awarding 33-1/3% of $16.5 million fund); *In re LaBranche Sec. Litig.*, No. 03-CV-8201(RWS), slip op. at 1 (S.D.N.Y. Jan. 22, 2009) (awarding 30% of $13 million fund); *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *11 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.175 million fund); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010) (awarding fees of one-third of settlement); *Collins v. Olin Corp.*, No. 3:03-cv-945 (CFD), 2010 WL 1677764, at *7 (D. Conn. Apr. 21, 2010) (awarding one-third of settlement fund as attorneys' fees); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713 (PGG), 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 3, 2010) (awarding fees of one-third of settlement fund); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *8

- 19 -

(E.D.N.Y. Jan. 20, 2010) (awarding fees of one-third of settlement fund); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 02494 (DF), 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009) (awarding fees of one-third of settlement fund); *Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720 S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of the fund, finding it "typical in class action settlements in the Second Circuit"); *Bisys*, 2007 WL 2049726, at *3 (awarding fee of 30% of $65,870,000 settlement, plus expenses); *Maley*, 186 F. Supp. 2d at 374 (awarding 33-1/3% of settlement fund).[13]

### 7.   A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, a district court may cross check the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50; *Payment Card Interchange Fee*, 991 F. Supp. 2d at 447-48. "Under the lodestar method, the court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work." *Aéropostale*, 2014 WL 1883494, at *13. "Calculation of the lodestar, however, is simply the beginning of the analysis." *Warner Commc'ns*, 618 F. Supp. at 747; *In re Ivan F. Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995). Performing the lodestar cross-check here confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Plaintiffs' Counsel and their paraprofessionals have spent, in the aggregate, 12,914.50 hours in the prosecution of this case. *See* the accompanying Declaration of David A. Rosenfeld Filed on

---

[13]   All unreported authorities are attached hereto as Exhibits 1 through 8.

Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys'
Fees and Expenses ("Robbins Geller Decl."), Declaration of Jeremy A. Lieberman Filed on Behalf
of Pomerantz LLP in Support of Application for Award of Attorneys' Fees and Expenses
("Pomerantz Decl."), and Declaration of Michael S. Etkin Filed on Behalf of Lowenstein Sandler
LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Lowenstein Decl.").
The resulting lodestar is $6,563,933.75.[14] The amount of attorneys' fees requested by Lead Counsel
herein, 30%, or $9,502,800, plus interest, represents a slight multiplier of 1.38 to counsel's aggregate
lodestar.[15]  In complex contingent litigation, lodestar multipliers between 2 and 5 are commonly
awarded.  *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal);
*Payment Card Interchange Fee*, 991 F. Supp. 2d at 448 (awarding fee representing a multiplier of
3.41, which was "comparable to multipliers in other large, complex cases"); *Davis*, 827 F. Supp. 2d
at 185 (awarding fee representing multiplier of 5.3, which was "not atypical" in similar cases);
*Cornwell v. Credit Suisse Grp*., No. 08-cv-03758 (VM), slip op. at 4 (S.D.N.Y. July 18, 2011)
(awarding fee representing a multiplier of 4.7); *Comverse*, 2010 WL 2653354, at *5 (awarding fee
representing 2.78 multiplier); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar
multiples of over 4 are routinely awarded by courts, including this Court."); *Bisys*, 2007 WL
2049726, at *3 (awarding 30% fee representing a 2.99 multiplier and finding that the multiplier
"falls well within the parameters set in this district and elsewhere"); *In re AremisSoft Corp. Sec.*

---

[14]   In determining whether the rates are reasonable, the Court should take into account the attorneys'
professional reputation, experience, and status.  Plaintiffs' Counsel are among the most prominent,
experienced, and well-regarded securities and bankruptcy practitioners in the nation.  Therefore, the
hourly rates are reasonable here.  *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
No. 02 MDL 1484 (JFK), 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (approving counsel's
hourly rates)

[15]   The Supreme Court and other courts have held that the use of current rates is proper since such
rates compensate for inflation and the loss of use of funds.  *See Jenkins*, 491 U.S. at 283-84.

*Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (4.3 multiplier was appropriate in light of the contingency risk and the quality of the result achieved); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country").

The lodestar/multiplier is to be used merely as a cross-check on reasonableness. To find otherwise undermines the principles supporting the percentage approach and encourages needless lodestar building litigation. *See also Ikon*, 194 F.R.D. at 196 ("The court will not reduce the requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request of thirty percent."). Plaintiffs' Counsel invested substantial time and effort prosecuting this Action against the Defendants to a successful completion. The requested fee, therefore, is manifestly reasonable, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar.

## 8.  The Class' Reaction to the Fee Request

To date, the Claims Administrator has sent copies of the Notice to over 65,900 potential Class Members and nominees informing them, *inter alia*, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund, plus expenses not to exceed $400,000, plus interest on both amounts. The time to object to the fee request expires on November 10, 2015. To date, only a few weeks before the objection deadline, not a single objection to the fee and expense amounts set forth in the Notice has been received. Such a "low level of objection is a 'rare phenomenon.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). Moreover, "a significant number of investors in the class were 'sophisticated' institutional investors that had considerable financial incentive to object [to the settlement] had they believed [the settlement was unfair or] the requested fees were excessive." *Id.* Additionally, each of

the Lead Plaintiffs supports the fee request.  *See Van Neer Decl.*, ¶¶15-19; *Battle Decl.*, ¶¶15-19; and *Crawford Decl.*, ¶¶14-18.  The fact that no objections were received is compelling evidence of the fairness of the fee request.

## V.   PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION

Plaintiffs' Counsel also respectfully request an award of $338,918.76 in expenses incurred while prosecuting the Action.  Counsel have submitted declarations regarding these relatively modest expenses, which are properly recovered by counsel.  *See* Robbins Geller Decl., Ex. B, Pomerantz Decl., Ex. B, and Lowenstein Decl., Ex. B.  *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "'for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation"'"); *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable expenses necessary to the representation of the class).  Counsel's expenses include the costs of hiring experts, consultants and investigators, document database management, travel, transcription services, mediating the Class' claims, and computerized research.  These expenses were critical to Plaintiffs' success in achieving the Settlements.  *See Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys . . . [f]or this reason, they are properly chargeable to the Settlement fund.").  Not a single objection to the expense amount set forth in the Notice has

- 23 -

been received.  Accordingly, Lead Counsel respectfully request payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlements.

## VI.    LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE TIME AND EXPENSES

Lead Counsel also seek approval for an award of $10,000, $7,250, and $9,000 to compensate Lead Plaintiffs DSM, Indiana Treasurer, and Lloyd Crawford, respectively, for the time they spent directly relating to their representation of the Class.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. §77z-1(a)(4); 15 U.S.C. §78u-4(a)(4).  Numerous courts, including this Court, have approved such awards under the PSLRA to compensate class representatives for the time and effort they spent on behalf of the class.  *See Sadia*, 2011 WL 6825235, at *4 (awarding $14,177.50 to class representatives for "responding to document requests and interrogatories, producing responsive documents, reviewing filings, and communicating regularly with Class Counsel"); *Hicks*, 2005 WL 2757792, at *10 ("Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.").

Lead Plaintiffs took an active role in the prosecution of the Action, reviewing pleadings, motion and other documents filed in the case, supervising the production of discovery, preparing/providing deposition testimony, and consulting with Lead Counsel concerning the settlement negotiations.  *See* Van Neer Decl., ¶¶7-13; Battle Decl., ¶¶7-13; Crawford Decl., ¶¶6-12. These are precisely the types of activities that courts have found to support awards to class representatives.  *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2010 WL

- 24 -

5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award of $30,000 to institutional lead plaintiffs "to compensate them for the time and effort they devoted on behalf of a class"); *Flag Telecom*, 2010 WL 4537550, at *31 (approving award of $100,000 to Lead Plaintiff for time spent in the litigation); *Veeco*, 2007 WL 4115808, at *12 (characterizing such awards as "routine[]" in this Circuit).

The Notice sufficiently informed potential Class Members that such expenses would be sought.  Sylvester Decl., Ex. A at 2.  The modest requests by Lead Plaintiffs are supported by declarations, are reasonable and fully justified under the PSLRA, and should be granted.  There have been no objections to these requests.

## VII.   CONCLUSION

Based on the foregoing and the entire record herein, Lead Counsel respectfully request that the Court award attorneys' fees of 30% of the total $31.676 million recovery, plus expenses in the amount of $338,918.76, plus interest on both amounts, and $10,000 to Lead Plaintiff DSM, $7,250 to Lead Plaintiff Indiana Treasurer, and $9,000 to Lead Plaintiff Lloyd Crawford for the time they spent representing the Class.

DATED:  November 3, 2015                  Respectfully submitted,

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          ELLEN GUSIKOFF STEWART
                                          ROBERT R. HENSSLER JR.

                                                  s/ Ellen Gusikoff Stewart
                                          ELLEN GUSIKOFF STEWART

                                          655 West Broadway, Suite 1900
                                          San Diego, CA  92101
                                          Telephone:  619/231-1058
                                          619/231-7423 (fax)
                                          elleng@rgrdlaw.com
                                          bhenssler@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
ALAN I. ELLMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
aellman@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2015, I caused the foregoing Lead Counsel's Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses and Reimbursement of Lead Plaintiffs' Expenses to be served electronically on all ECF participants.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

- 1 -